IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMETRIUS ROSS, *on behalf of himself and all others similarly situated*,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>GREG GOSSETT, *et al.*,<br><br>　　　　　Defendants. | Case No. 15-cv-309-SMY-PMF |

### ORDER

This matter is before the Court on the Motion to Dismiss (Doc. 51) filed by Defendants Parks and Williams, which incorporates by reference the memorandum (Doc. 47) filed in support of the motion at Doc. 46.  Defendants seek dismissal of Plaintiff's Complaint pursuant to F.R.C.P. Rules 12(b)(1) and 12(b)(6).  Plaintiff responded (Doc. 59).  For the following reasons, the motion is **GRANTED** in part and **DENIED** in part.

*Background*

Plaintiff Demetrius Ross, an inmate at Illinois River Correctional Center, claims that in late April 2014 the Illinois Department of Corrections (IDOC) Special Operations Response Team, commonly known as "Orange Crush", conducted a shakedown of cells for the sole purpose of causing humiliation and pain, in violation of the Eighth Amendment and 42 U.S.C. § 1983.  He has filed suit on behalf of himself and "all others similarly situated".

In his Complaint, Plaintiff makes the following allegations.  On the date in question, Orange Crush officers entered each wing of the facility yelling loudly and making "whooping" noises while hitting their batons on walls, tables, doors and railings.  The officers ordered inmates to "get asshole naked", turn around, bend over and spread their buttocks in front of the

officers (some of whom were female). Next, inmates were ordered to turn around and face the officers, lift their genitals and open their mouths with their fingers. Inmates who asked to wash their hands before putting them into their mouths were told to "shut the fuck up" and were threatened with segregation if they did not comply. Inmates were not allowed to put on underwear when redressing.

After the strip search, officers ordered the inmates to face the wall and keep their heads down. The inmates were then handcuffed behind their backs with the palms of their hands facing outward and their thumbs pointed upward (regardless of whether inmates had a "front-cuff" permit for medical reasons). This was a particularly painful handcuff position and the handcuffs were extremely tight. Any complaints by inmates or requests for medical staff were met with threats of segregation and orders to "shut the fuck up" and "keep [your] fucking head down!"

Officers then ordered the inmates to line up and keep their heads down. Officers lined up next to prisoners, hit their batons in their hands and chanted "punish the inmate" for several minutes. Officers then grabbed the back of each inmate's head and slammed it violently into the back of the prisoner in front of him. The inmates were ordered to stand in such a way that their genitals were in direct contact with the buttocks of the inmate ahead of them—a position known as "nuts to butts." Plaintiff's head was slammed down so violently that his glasses were broken and he became dizzy and lightheaded.

Once the inmates were in the "nuts to butts" position, officers shoved their batons between each inmate's legs and jerked upwards, forcing the inmate to straighten his legs while keeping his back bent at a 90-degree angle onto the inmate in front of him. The inmates were forced to hold this formation and to keep their genitals and buttocks in contact with the inmates

2

in front and behind them while being marched from the housing wings to the gym. The march was long and painful. If an inmate raised his head, officers would either slam his head back down or violently yank him from line, choke him and pull him to the ground.

At the gym, inmates remained handcuffed and were forced to face the wall with their heads down and to remain in this "stress position" for several hours. Defendant Albrecht[1] stayed in the gym with the inmates. During this time, he yelled at the inmates, "This is punishment for all your sins!" He instructed the inmates not to ask for water, medical attention or to use the bathroom. After several hours, inmates were again marched in "nuts to butts" formation back to their housing wing. During the marches to and from the gym, officers laughed at and taunted the inmates.

Upon returning to their cells, inmates found that they had been "tossed" and that non-contraband items such as items purchased from the commissary and legal documents had been seized. Required "shakedown slips" which are intended to provide documentation of seized property were either not provided to the inmates or were inaccurate. Officers' names were obscured on the slips to conceal the identity of those who participated in the shakedown. When inmates requested to see the warden, the officers laughed. As a result of the shakedown, inmates suffered physical injuries as a result of the shakedown, including back pain, neck pain, blurred vision, headaches, dizziness and lightheadedness. They were denied medical attention and told instead to file a grievance.

Orange Crush officers carried out the same shakedown at other IDOC facilities including Menard (early April 2014), Big Muddy River (May 2014) and Lawrence (July 2014). The shakedowns were executed pursuant to a policy implemented by IDOC supervisors including

---

[1] Plaintiff names Steven Albrecht as a defendant, but uses the name "Albright" on page 16 of the Complaint. No defendant "Albright" has otherwise been named. Accordingly, the Court infers that the allegations on page 16 refer instead to Defendant Albrecht.

Defendants Yurkovick (Chief of Operations for IDOC) and Wardens Gossett, Roeckeman, Duncan and Butler. Inmates continue to be subjected to the shakedown procedure described above. Plaintiff brings Eighth Amendment and 42 U.S.C. § 1983 claims for cruel and unusual punishment (Count I), conspiracy (Count II), failure to intervene (Count III), violation of the Prison Rape Elimination Act (Count IV) and intentional infliction of emotional distress (Count V).

*Discussion*

Defendants request general dismissal of the Eighth Amendment and § 1983 claims for failure to state a claim pursuant to F.R.C.P. 12(b)(6). Specifically, Defendants contend that Plaintiff's Complaint fails to describe any individual who may be responsible for the alleged conduct with reasonable particularity and instead, seeks to hold all 236 named individuals jointly liable. Defendants also move for specific dismissal of Count II pursuant to Rule 12(b)(6) for failure to adequately state a claim for conspiracy.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all allegations in the Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th

Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Here, Plaintiff acknowledges that he cannot yet identify which officers were present at which housing units, "primarily because Defendants purposefully concealed their identities to evade responsibility for their misconduct…" (Doc. 59, p. 14). However, Plaintiff argues that it is permissible under the Federal Rules of Civil Procedure to plead allegations regarding defendants' conduct as a group pending pretrial discovery. Plaintiff further argues that it is sufficient at this stage to allege that every officer used excessive force against one class member and that each Defendant failed to intervene. The Court agrees.

Correctional officers may not benefit from a plaintiff's inability to identify particular officers who were involved in an alleged violation of inmate rights. *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) (reversing a dismissal of claims where the prisoner plaintiff had been unable to identify defendants and remanding for finding of facts). As the Seventh Circuit Court has noted, "[I]dentification of the responsible party may be impossible without pretrial discovery." *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995). Accordingly, at this juncture, Plaintiff's inability to identify individual defendants is not grounds for dismissal.

Defendants' argument for dismissal of Count II likewise fails. *Twombly* does, as Defendants correctly state, require more than a bare assertion of conspiracy. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level" (*Id* at 555) and must *plausibly* suggest an agreement between the defendants (*Id* at 557). However, *Twombly* does not limit the Court's examination of the sufficiency of the allegations to those within the conspiracy count alone. Rather, the Court may

look to the allegations of the Complaint in its entirety in making its determination. Here, the Court finds that the allegations as a whole plausibly suggest an agreement between the defendants and, are therefore sufficient to survive Defendants' 12(b)(6) motion.

Next, Defendants assert that Plaintiff lacks standing to bring claims arising from the alleged shakedowns at facilities other than Illinois River and therefore, dismissal is appropriate pursuant to F.R.C.P. 12(b)(1). The Seventh Circuit has addressed the ability of a plaintiff to bring an action under these circumstances and held, "If all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy,… it is appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact" pursuant to the juridical link doctrine. *Payton v. Cnty. of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (emphasis in original). As the Court has determined the allegations of conspiracy are sufficient to plausibly suggest an agreement between the defendants, consistent with *Payton,* discovery with respect to class certification issues is necessary before the Court may properly assess the standing of the putative class representative. Accordingly, Plaintiff's Complaint survives 12(b)(1) dismissal at this stage.

Finally, Defendants contend that Plaintiff's intentional infliction of emotional distress claim is barred by sovereign immunity and because the Illinois Court of Claims has exclusive jurisdiction to hear claims against the state, this Court lacks jurisdiction over Plaintiff's state law claim. However, [A] state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case." *Fields v. Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012) (citing *Rodriguez v. Cook County, Illinois*, 664 F.3d 627 (7th Cir.2011)). Therefore, the Court will not dismiss Count V for lack of jurisdiction. Additionally, "Sovereign immunity affords no protection… when it is alleged that the State's agent acted in violation of statutory or

constitutional law or in excess of his authority…."*Healy v. Vaupel*, 548 N.E.2d 1240,1247 (Ill. 1990). As Plaintiff's Complaint specifically alleges Defendants acted in violation of constitutional law, dismissal of Count V is not substantiated.

For the foregoing reasons, Defendants' motion is **DENIED** in its entirety.

**IT IS SO ORDERED.**

**DATE: January 28, 2015**   　　　　　　　　　　　　　　**s/ *Staci M. Yandle*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　STACI M. YANDLE
　　　　　　　　　　　　　　　　　　　　　　　　　　　　DISTRICT JUDGE**