**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| DEMETRIUS ROSS, #K-52284, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 15-309 |
| | ) | |
| GREG GOSSETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ANSWER AND AFFIRMATIVE DEFENSES**</u>

The Defendants: MICHAEL GILREATH[1] and BROOKE ARMSTRONG[2], by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, provide the following answer with affirmative defenses directed to Plaintiff's complaint [d/e 1]:

**Introduction**

1.     In late April 2014, the "Orange Crush" conducted a shakedown of cells at Illinois River Correctional Center (Illinois River). Rather than pursue this shakedown as a legitimate security procedure, however, Defendants beat, sexually humiliated, and otherwise abused Mr. Ross (and hundreds of other prisoners), destroyed his property, and otherwise gratuitously inflicted punishment for the sole purpose of causing humiliation and needless pain. Plaintiff seeks damages for his injuries (and those of other similarly abused prisoners), and an injunction prohibiting Defendants from inflicting such abuse during future searches.

---

[1] This is Michael Gilreath's answer for <u>Verser v. Duncan et al.</u>, USDC-SDIL Case No. 15-1263. Pursuant to the Court's Order following consolidation, Defendant responds to the complaint filed in <u>Ross v. Gossett et al.</u>, USDC-SDIL Case No. #15-309.

[2] This is Brooke Armstrong's answer for <u>Verser v. Duncan et al.</u>, USDC-SDIL Case No. 15-1263. Pursuant to the Court's Order following consolidation, Defendant responds to the complaint filed in <u>Ross v. Gossett et al.</u>, USDC-SDIL Case No. #15-309.

**RESPONSE:  Defendants deny that there is a unit titled "Orange Crush" within the Illinois Department of Corrections.  Defendants admit shakedowns of cells within Illinois River Correctional Center were conducted in late April 2014.  Defendants deny the remaining allegations contained in paragraph 1.**

2.      For example, Mr. Ross and other prisoners at Illinois River were subject to: a humiliating strip search in front of female officers and orders to prisoners to touch their genitals and then use the same hand to open their mouths; painfully tight handcuffing with their palms outward; orders to march from their housing units to the gym at the facility with their heads on the backs of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks (referred to by the Orange Crush team as "Nuts to Butts"); violent attacks by Defendant Orange Crush Officers when prisoners broke that formation; and orders to stand in a stress position for several hours. Throughout the entire shakedown, Defendant Orange Crush Officers hurled epithets at the prisoners, chanted "punish the inmate," and told them that this was punishment for their sins.

**RESPONSE:  Defendants deny the allegations contained in paragraph 2.**

3.      Defendants' conduct at Illinois River was not an aberration. Rather, "Orange Crush" has conducted similar abusive strip searches and shakedowns at other Illinois Department of Corrections (IDOC) facilities, including Menard Correctional Center (Menard), Big Muddy River Correctional Center (Big Muddy River), and Lawrence Correctional Center (Lawrence). All of these shakedowns are the direct result of unconstitutional policies and practices in place at the IDOC to conduct periodic Orange Crush shakedowns so as to inflict pain and humiliation on prisoners entrusted to its care.

2

**RESPONSE:  Defendants deny there is a unit titled "Orange Crush" within the Illinois Department of Corrections.   Defendants admit that that members of the Tactical Unit performed searches at other Illinois Department of Corrections in similar manners to the searches at Illinois River Correctional Center; however, Defendants deny that all Defendants participated and deny that the searches were conducted in the manner claimed by Plaintiff. Defendants deny that the searches were unconstitutional and deny the remaining allegations contained in paragraph 3.**

4.       The painful and humiliating shakedowns inflicted physical injuries—including headaches, dizziness, wrist pain, and lower back pain—and emotional injuries—including severe embarrassment, fear, stress, trauma, and humiliation.

**RESPONSE:  Defendants deny the allegations contained in paragraph 4.**

**Jurisdiction and Venue**

5.       This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

**RESPONSE:   Defendants admit this Court has jurisdiction over the Plaintiff's individual constitutional claims, but deny this Court has jurisdiction over the state law claims and deny that Plaintiff has standing to litigate on behalf of inmates at other institutions.**

6.       Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

**RESPONSE:  Defendants admit that one or more Defendants reside in the Southern District of Illinois and that Plaintiff's complaint claims that conduct occurred in the**

Southern District of Illinois.  Defendants deny venue is proper if the instant litigation is denied class certification.

## Parties

7.      Plaintiff Demetrius Ross is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Ross was housed at Illinois River. Mr. Ross brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Ross suffered.

**RESPONSE:   Defendants admit that Demetrius Ross is an inmate in the custody of the Illinois Department of Corrections and was housed at Illinois River in April 2014.  Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so. Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence were subjected to the shakedowns described by Plaintiff.  Defendants deny the remaining allegations contained in paragraph 7.**

8.      Defendants Brian Piper, Brendan Ankrom, Justin Hammers, Brad Johnson, Fred Williams, Frank Thompson, Derek Smith, Steve Albrecht, Robert Adams, Sarah Arnett, Bryan Bailey, Shawn Baiffiez, Andrew Bottrell, Larry Boyd, Douglas Brown, Dennis Bucco, Vincent Cogdal, Nick Conklin, Jason Dams, Robert Dorethy, Olin Eldridge, Lisa Effinger, Curtis Jenkins, Scott Lamb, Chris Luker, Canduce Morrill, Andrew Moser, William Myers, Lee Parker, Chad Sappington, Ron Shoultz, Jamie Skaggs, Cally Stein, Mike Stufflebeam, Ashley Thompson, Steve Wilcoxen, Drew Derenzy, Justin Dircks, David English, M. Fluder, Joseph France, Jason Jester, Loretta Joachim, Nick Lohnes, Robert Passmore, Andy Phelps, Sam Taylor, Tammy Thousand, and Cayd Walljasper, are all employees of the IDOC, and all members of the IDOC Special Operations

4

Response Team (SORT) (commonly referred to as Orange Crush) assigned to Illinois River. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants Ankrom, Joachim, Parker, and Thompson deny they were members of the IDOC Special Operations Response Team (SORT) at the times at issue in this suit.  Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team. Defendants Ankrom, Joachim, and Parker deny that they acted under the color of law or as employees of IDOC during the time; Defendant Thompson admits that he was employed by IDOC and any actions taken as part of his employment were taken under color of state law. The remaining Defendants named above admit they were employed at Illinois River Correctional Center and acted under color of state law and within the scope of their employment with the IDOC when performing their duties on behalf of IDOC and were members of the Tactical Unit.**

9.      Defendants Chris White, Keneth Finney, David Hermetz, Robert Walsh, Ryan Davis, James Bruce, Matt Dees, Donald Pulliam, Jeremy McBride, Nick Nalley, Gary Stark, William Hughey, Ayla Heinzmann, Kenny Brown, Randy Smith, Shane Smith, Robert Rivett, Larry Provence, Kyle Massey, DaWayne Cotton, Bradley Herzog, Dale Martin, Pat Anderson, Dwight Dilg, Rene DeGroof, Angela Craddock, Sierra Tate, John Mohr, John Jones, Doug Mason, Justin Johnson, Khorey Anderton, Matt Cannon, James Johnson, John Maragni, Mike Bowers, Blake Elliot, Ray McCann, Brice Wilson, Josh Curry, Kendall Harris, Eric Shelton, Rene Waters, and Stephanie Beasley are all employees of the IDOC, and all members of the Orange Crush team. assigned to Big Muddy River. At all times relevant to the events at issue in this case,

these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  The above-named Defendants admit they were employees of the IDOC assigned to Big Muddy River and acted under color of law and within the scope of their employment with IDOC when performing their duties on behalf of IDOC.  Defendants deny that they were members of an "Orange Crush team."**

10.     Defendants Michael Gilreath, Jason Zollars, Jerry Tanner, Andy Stout, Dale Monical, Ben Lewis, Brad Yonaka, Kevin W. Johnson, Marcus Jenkins, Janet Carle, Bud Brown, Stephen Sawyer, Walter McCormick, Jerry Harper, Jason Ginder, Jeremiah Patterson, James Berry, Randy Baylor, Bill Carroll, Brad Stuck, Eric Weber, Lance Wise, Daniel Dust, Steven Conrad, Jarrod Carter, Timothy McAllister, Noble Harrington, Samuel Shehorn, Jeffrey Kidd, Ben Vaughn, Travis Ochs, Brian Livingston, Robert Kamp, Anthony Senn, Trent Ralston, Maury Goble, Bradley Ausbrook, Seth Hough, Christopher Brant, Ethan Clary, Matthew Winka, Michael Dean, Nicholas Lampley, Dallas Willis, Timothy Conrad, Christopher Cales, James Gosnell, Alexander Lockhart, Matthew Tribble, Andrew Gangloff, MaryEllen Thomason, Justin Eckelberry, Doug Line, Jacob Milam, Zachariah Buchanan, Akeem Hamilton, Andrew Volk, Gary Perkins, Kyle Brooks, John Chenault, Jr., Dan Mullin, Andrew Mays, and Brandon Richey are all employees of the IDOC, and all members of the Orange Crush team assigned to Lawrence. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants Cales, Lockhart, Ritchey, Thomason, and Volk deny that they were certified members of the Tactical Team at Lawrence Correctional Center.  The remaining Defendants named above admit they were employees of the IDOC assigned to Big**

**Muddy River and acted under color of law and within the scope of their employment with IDOC when performing their duties on behalf of IDOC. Defendants deny that they were members of an "Orange Crush team."**

11.   Defendants Jerry Witthoft, Frank Eovaldi, Mark Bower, Fredrick Carter, Kevin Cartwright, Nathan Berry, Chase Caron, Kyle Donjon, Justin Engelage, Wesley Engelage, Charles Fricke, Jason Furlow, Brian Guetersloh, Shane Gregson, Mark Hanks, Joel Hepp, Kevin Hirch, Anthony Jones, Tyler Jones, Brian Kulich, Jason Lane, Jay McMillan, Alex Moll, Wesley Monroe, Jared Phillips, Kenny Porter, Rory Renk, Minh Scott, James Watkins, Eric Wenzel, Aaron Westerman, Carson Winter, Caleb Zang, Gene Bailey, Derek Baylon, David Brock, Benny Davis, Bryan Easton, Richard Harris, Shayne Howell, Brandon Hunter, Michael Laminack, James Lloyd, Lucas Mennerich, Jason Migneron, Jason Morris, John Restoff, Steven Richard, Tyson Shurtz, Ryan Ziegler, Trevor Rowland, David Holder, Scott Ebers, Mike Baughman, Hubert Brace, James Cissell, Bradley Clark, Charles Compton, Dustin Harmon, John Koch, Brandon Lloyd, Kenneth Smith, Nathan Ward, Mitch Simmons, Michael Jones, Tracy Heiman, Aaron Campbell, Edwin Gladney, Kyle Hughhey, Erik Krammer, Wendy Parks, and James Rigdon are all employees of the IDOC, and all members of the Orange Crush team assigned to Menard. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants Cissell and Koch deny that they were members of the Tactical Team at Menard Correctional Center during the time relevant to this suit. Defendant Cissell denies that he was employed by IDOC at the time relevant to this suit or that he acted under color of law.  The remaining Defendants named above admit they were employees of the IDOC assigned to Menard Correctional Center and acted under color of law**

and within the scope of their employment with IDOC when performing their duties on behalf of IDOC. Defendants deny that they were members of an "Orange Crush team."

12. Defendants Unknown Members of Tactical Team Known as "Orange Crush" are all employees of the IDOC, and all members of the Orange Crush team. Upon information and belief, they travel from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. At all times relevant to the events at issue in this case, Defendant Unknown Members of Tactical Team Known as "Orange Crush" were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants deny there is an "Orange Crush team" within the Illinois Department of Corrections. Defendants deny that there is an "Orange Crush" team that travels from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12.**

13. Defendant Greg Gossett is the Warden at Illinois River, and an employee of the IDOC. On information and belief, Defendant Gossett is responsible for the supervision of the shakedowns at Illinois River. At all times relevant to the events at issue in this case, Defendant Gossett was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendants deny that Greg Gossett is presently the Warden at Illinois River Correctional Center but admit that he held that position in April 2014. Defendants admit that Defendant Gossett acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC. Defendant Gossett denies that he was responsible for supervising the shakedowns at Illinois River.**

14.     Defendant Zach Roeckeman is the Warden at Big Muddy River, and an employee of the IDOC. On information and belief, Defendant Roeckeman is responsible for the supervision of the shakedowns at Big Muddy River. At all times relevant to the events at issue in this case, Defendant Roeckeman was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE:  Defendants deny that Zach Roeckeman is presently the Warden at Big Muddy River Correctional Center but admit he held that position in April 2014.  Defendants admit that Defendant Roeckeman acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC.  Defendant Roeckeman denies that he was responsible for supervising the shakedowns at Big Muddy River.**

15.     Defendant Stephen Duncan is the Warden at Lawrence, and an employee of the IDOC.  On information and belief, Defendant Duncan is responsible for the supervision of the shakedowns at Lawrence. At all times relevant to the events at issue in this case, Defendant Duncan was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE:   Defendants admit that Stephen Duncan is presently the Warden at Lawrence Correctional Center.  Defendants admit that Defendant Duncan acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC.  Defendant Duncan denies that he was responsible for supervising the shakedowns at Lawrence.**

16.     Defendant Kim Butler is the Warden at Menard, and an employee of the IDOC. On information and belief, Defendant Butler is responsible for the supervision of the shakedowns at Menard. At all times relevant to the events at issue in this case, Defendant Butler was acting under color of law and within the scope of her employment with the IDOC.

9

**RESPONSE:  Defendants admit that Kim Butler is presently the Warden at Menard Correctional Center.  Defendants admit that Defendant Butler acted under the color of law and within her employment with the IDOC when performing her duties on behalf of IDOC.  Defendant Butler denies that she was responsible for supervising the shakedowns at Menard.**

17.    Defendant Joseph Yurkovich is the Chief of Operations for the IDOC, and is responsible for the supervision of all SORT (Orange Crush) units and the implementation, oversight, and supervision of policies and practices executed by Orange Crush members. At all times relevant to the events at issue in this case, Defendant Yurkovich was acting under color of law and within the scope of his employment with the IDOC.

**Response:  Defendants deny that Joseph Yurkovich is presently the IDOC Chief of Operations, but admit that he held that position in the past.  Defendants admit that Defendant Yurkovich acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC.  Defendant Yurkovich admits that he oversaw the SORT units and shakedowns in the facilities.  Defendant denies he oversaw a unit titled "Orange Crush" while employed as Chief of Operations.  Defendant denies shakedowns were conducted in the manner described within this complaint.**

18.    Defendant Donald Stolworthy is the current Acting Director of the IDOC. He is sued in his official capacity as Director of the IDOC. Plaintiff, on behalf of himself and all others similarly situated, asserts only claims for injunctive relief against Defendant Stolworthy. As the Acting Director of the IDOC, 'Defendant Stolworthy acts under color of law.

**Response:  Defendants deny Donald Stolworthy is presently the Acting Director of IDOC.  Defendants deny that Plaintiff is entitled to injunctive relief.  Defendants admit**

10

that Stolworthy acted under the color of state law in his role as Acting Director when performing his duties on behalf of IDOC.

<u>Allegations</u>

19.     In late April 2014, Illinois River was put on lockdown for approximately one week. During the lockdown, Defendant Orange Crush Officers conducted a shakedown of each house at the facility.

**Response:  Defendants admit that Illinois River was put on lockdown for several days beginning April 21, 2014, and that some Tactical Members from the SORT team conducted shakedowns at Illinois River in April 2014 but deny that all listed Defendants participated.  Defendants deny there is a unit within IDOC titled "Orange Crush" and deny being members of "Orange Crush".  Defendants deny the remaining allegations contained in paragraph 19.**

20.     Upon entering each wing of the facility, Defendant Orange Crush Officers would yell loudly and began making loud "whooping" noises, and hitting their batons on the walls, tables, doors, and railings in the wing.

**Response:  Defendants deny being members of a non-existent group titled "Orange Crush."  Defendants admit generally that the Tactical Unit made noises as they entered the wings of the facility, but deny that Plaintiff accurately describes the actions of each member of the Tactical Team.**

21.     Two of the Orange Crush officers lined up in front of each cell in the wing, and yelled at the men in the wing to "get asshole naked!" Once the prisoners were undressed, they ordered each man to come out of his cell, one at a time. They ordered each prisoner to bend over

11

while facing their cell (leaving their backs to the officers), and spread their buttocks and lift each foot off the ground.

**Response: Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 21.**

22.   Defendant Orange Crush Officers then ordered the men to turn around to face the officers, and to lift their genitals. Next, they were ordered to open their mouths with their fingers, using the same hands that they had just used to touch their genitals and buttocks. Prisoners who asked to wash their hands before putting them into their mouths were told to "shut the fuck up!" and were threatened with segregation if they did not comply. Some of the Defendant Orange Crush Officers present in the housing unit during the strip search were female.

**Response: Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 22.**

23.   When Defendant Orange Crush Officers finished strip searching the first group of prisoners in the cells, they ordered them to return to their cell and to get dressed in pants, overshirts, and shoes. They were told that they could not put on any underwear. While those men were putting on the permitted clothing, Defendant Orange Crush Officers repeated the same process with the other men in the cells.

**Response: Defendants admit the SORT tactical unit limits offenders to pants, overshirts, and shoes for legitimate security reasons. Defendants admit members of the SORT tactical unit searched all offenders before each offender exited his cell. Defendants deny being members of a non-existent group titled "Orange Crush" and deny the remaining allegations in paragraph 23.**

24.     Once all of the strip searches were completed, Defendant Orange Crush Officers ordered the men to face the wall (with their backs to the officers) and to "keep [their] fucking heads down!" Any prisoner who looked at the officers was slammed into the wall and told to "put [his] fucking head down!" Defendant Orange Crush Officers then handcuffed all of the men in a particularly painful way—with the palms of their hands facing outwards and their thumbs pointed up to the sky. The handcuffs were also extremely tight, causing injuries to the prisoners' wrists, and eliciting complaints from the prisoners. They were told to "shut the fuck up!" and to "keep [their] fucking head[s] down!" and were threatened with segregation if they did not comply. Some of the prisoners asked to see a nurse or other medical staff. Their requests received the same response. All of the prisoners were handcuffed in the same way, regardless of whether they had a "front cuff" permit issued by medical staff (a medical order requiring correctional officers to handcuff men with their hands in front of them, rather than behind).

**Response:  Defendants deny being members of a non-existent group titled "Orange Crush."  Defendants admit that the Tactical Unit would have generally ordered inmates to keep their heads down and to face the wall; however, Defendants deny the remaining allegations contained in paragraph 24.**

25.     The men were ordered to line up and told to keep their heads down. Defendant Orange Crush Officers then lined up next to the prisoners, hitting their batons in their hands, and chanting "punish the inmate." This went on for several minutes.

**Response:   Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 25.**

26.     Once the chanting stopped, Defendant Orange Crush Officers grabbed the back of each prisoner's head and slammed it violently into the back of the prisoner ahead of him in line.

Defendant Orange Crush Officers ordered the prisoners to stand in such a way that one man's genitals were in direct contact with the buttocks of the man ahead of him in line—referred to by Defendant Orange Crush Officers as "Nuts to Butts." Mr. Ross's head was slammed down so violently that his glasses broke and fell from his face. He suffered extreme dizziness and lightheadedness as a result.

  **Response:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 26.**

  27. Defendant Orange Crush Officers then shoved their batons in between each prisoner's legs and jerked upwards, forcing the prisoner to straighten his legs while keeping his back bent over at a 90-degree angle onto the prisoner in front of him. This had the effect of forcing the men to place their genitals directly against the buttocks of the men in front of them. The officers then ordered the prisoners, using several epithets, to march in that formation from their housing wing to the gym at the facility. As the men began marching, the officers yelled that they didn't "want to see any fucking daylight" between any of the prisoners in line.

  **Response:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 27.**

  28. The march from the housing wing to the gym was long and painful. Every time that a prisoner's head came off of the back of the prisoner in front of him, officers responded with violence. Defendant Orange Crush Officers would slam the prisoner's head into the back of the prisoner in front of him. Some, like Mr. Ross, were violently yanked out of the line, and choked and pulled to the ground while other officers jabbed them in their backs with batons. Each time this occurred, the line would stop moving. The frequent starts and stops of the procession, as well as the inherent difficulty that prisoners had maintaining perfect contact with the prisoner ahead of

them in line, forced several prisoners to break contact with the prisoner in front of them, causing them to be attacked by the officers.

**Response:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 28.**

29.     When the procession of prisoners arrived at the gym, Defendant Orange Crush Officers ordered them to stand facing the wall with their heads down. They remained handcuffed. Many of the officers then left the gym to return to the housing wing. Defendant Albright, however, remained in the gym with the prisoners.

**Response:  Defendants deny being members of a non-existent group titled "Orange Crush."  Defendant Albright admits being assigned to the tactical unit that performed shakedowns at Illinois River in April 2014.  Defendants admit that members of the Tactical Unit returned to the housing wing to search the cells, but Defendants deny the remaining allegations contained in paragraph 29.**

30.     The prisoners remained standing in this stress position for several hours. During that time, Defendant Albright yelled at the prisoners: "This is punishment for all your sins!" He ordered the prisoners not to ask for medical attention because none would be provided, not to ask for water because none would be given, and not to ask to use the bathroom because they would be denied. He further told the prisoners that if their handcuffs were too tight, they would have to "be a man and take it or get dragged to seg!"

**Response:  Defendants deny the allegations contained in paragraph 30.**

31.     After several hours, the other Defendant Orange Crush Officers returned. They lined up the prisoners in the same formation as before, and again slammed their heads into the backs of the prisoners in front of them. They again ordered the prisoners to march in that

formation back to their housing wing. Just as before, if a prisoner broke the line by lifting his head off the back of the person in front of him, Defendant Orange Crush Officers reacted with violence.

**Response:  Defendants deny being members of a non-existent unit titled "Orange Crush" and deny the allegations contained in paragraph 31.**

32.    Defendant Orange Crush Officers laughed at and taunted the prisoners throughout the entire march to and from the gym.  When they at last returned to their housing wing, the prisoners found their cells had been "tossed." Many of the prisoners found that non-contraband items had been taken, including legal documents and property that they had legitimately purchased from the commissary at the facility. Although IDOC policies require staff to complete "shakedown slips" to document any property taken from a prisoner, many prisoners did not receive any shakedown slips at all. Those prisoners who did receive "shakedown slips" found that they contained an inaccurate account of what had been taken and also that the slips obscured the officers' names who had confiscated the property. Upon information and belief, this was done intentionally, as policy, to conceal the identity of Defendant Orange Crush Officers who had participated in the shakedown.

**Response:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 33.**

33.    One of the prisoners asked an officer to get the warden, Defendant Greg Gossett. In response, the officer laughed and told him that the warden already knew all about what was happening at the facility.

**Response:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.**

16

34.     The prisoners suffered physical injuries as a result of the shakedown at the facility, including severe headaches, dizziness, lightheadedness, blurred vision, and severe pain in their neck and back from the march. Many prisoners complained about these injuries to the officers during the shakedown and march, and upon return to their cells. They were all denied medical attention. Officers instead told them to "submit a grievance like you inmates always do."

**Response: Defendants deny the allegations contained in paragraph 35.**

35.     This was neither the first nor the last such shakedown conducted by IDOC officials. In early April 2014, Defendant Orange Crush Officers executed the same shakedown at Menard. In mid May 2014, they carried out the same shakedown at Big Muddy River. In July 2014, they targeted Lawrence. At each of these facilities, Defendant Orange Crush Officers conducted the same humiliating strip search in front of female members of the Orange Crush team. At each of these facilities, they forced prisoners to march out of their housing units in a "Nuts to Butts" procession. Every time any prisoner in these facilities failed to comply with Defendant Orange Crush Officers' unreasonable demands, Defendants reacted with violence. Throughout all of the shakedowns, Defendant Orange Crush Officers taunted, yelled at, and violently attacked prisoners solely to harass and humiliate them.

**Response:   Defendants deny there is a unit titled "Orange Crush" within the Illinois Department of Corrections.   Defendants deny being members of a non-existent unit titled "Orange Crush".   Defendants admit a shakedown was conducted at Menard Correctional Center in April 2014.   Defendants admit a shakedown of Big Muddy River Correctional Center was conducted in May 2014.   Defendants admit a shakedown of Lawrence Correctional Center was conducted in July 2014.   Defendants deny the shakedowns were conducted by a unit titled "Orange Crush."   Defendants deny that the**

searches were conducted in the manner alleged by the Plaintiff.  Defendants deny the remainder of the allegations contained in paragraph 36.

37.     On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown procedures at Illinois River, Big Muddy River, Lawrence, and Menard in 2014 pursuant to a policy or practice implemented, overseen, and encouraged by IDOC supervisors, including Defendants Yurkovich, • Gossett, Roeckeman, Duncan, and Butler.

**Response:  Defendants deny the allegations contained in paragraph 37.**

38.     To this day, IDOC prisoners—including prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard—continue to be subjected to shakedown procedures like the ones described in this Complaint. Despite several prisoners' repeated requests for the abuse by Defendants to stop, Defendants continue to maintain and encourage the above-described policy or practice.

**Response:  Defendants deny the allegations contained in paragraph 38.**

**Class Allegations**

39.     Named Plaintiff Demetrius Ross seeks to pursue claims both for himself individually and for a class of others similarly situated (the Class) pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

**Response:  Defendants deny that this suit should be certified as a class action.**

40.     Named Plaintiff Demetrius Ross seeks to represent a class consisting of the following people: All individuals housed at Illinois River, Big Muddy River, Lawrence, and Menard who were subjected to the 2014 shakedowns, and all prisoners confined to those facilities presently or who may be so confined in the future.

**Response:   Defendants deny that Plaintiff has standing to represent inmates from other facilities and deny that this suit should be certified as a class action.**

41.     The individuals in this class are so numerous that joinder of all members is impractical. According to the IDOC's website, on July 1, 2014, there were 2,073 men housed at Illinois River, 1,878 men housed at Big Muddy River, 2,367 men housed at Lawrence, and 3,757 men housed at Menard.

**Response:  Defendants deny that this suit should be certified as a class action. Defendants deny any offender was subjected to the type of shakedown outlined or described in this complaint, and therefore deny there is a class of individuals so numerous that joinder is impractical. Defendants lack knowledge at this time to admit or deny the allegations regarding the number of offenders housed within the stated facilities on July 1, 2014.**

42.     There are questions of law and fact common to the claims of the Class. Among these common questions are:

a.     Whether the strip search as conducted as Illinois River violated prisoners' rights under the Eighth Amendment;

b.     Whether Defendants violated the constitutional rights of the prisoners by forcing them to march with their heads on the backs or buttocks of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks;

c.     Whether Defendants violated the constitutional rights of the prisoners by violently forcing their heads into the backs of the prisoners ahead of them in line; and

d.     Whether forcing prisoners to stand in stress positions for several hours constituted cruel and unusual punishment.

**Response:  Defendants deny that this suit should be certified as a class action. Defendants state the instant claim requires significant individualized assessments of facts as applied to each purported class member.  Defendants deny common questions of law or fact predominate among the purported class members.  Defendants deny the searches were conducted in the manner alleged within this complaint as inferred in paragraph 42. Defendants deny any of the statements in subparts (a), (b), (c), or (d) present common questions of law or fact.**

43.     Demetrius Ross's claims are typical of the claims of the Class. Mr. Ross was a prisoner at Illinois River and was subjected to the abusive and inhumane shakedown executed by Defendant Orange Crush Officers. His treatment during the shakedown in late April 2014 is typical of other prisoners throughout Illinois River, and at the other facilities where the Orange Crush team conducted these abusive shakedowns. He seeks to prove that the tactics employed by Defendants in conducting the shakedown violated the constitutional rights of the Class, and to obtain an injunction prohibiting Defendants from inflicting that abuse during future searches.

**Response:  Defendants deny the allegations in paragraph 43.  Defendants deny that this suit should be certified as a class action.**

44.     Demetrius Ross will fairly and adequately represent the interests of the Class. He has retained skilled counsel with experience in class actions, and constitutional and prisoners' rights litigation.

**Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 44 regarding the stated skill of Plaintiff's counsel.  Defendants deny the remainder of the allegations in paragraph 44.**

20

45.     The questions of law and fact common to the Class predominate over any individual issues. In addition, a class action would be the fairest and most efficient way to adjudicate the Class members' claims.

**Response:  Defendants deny the allegations contained in paragraph 45.**

### COUNT I

**42 U.S.C. § 1983 — Cruel & Unusual Punishment (Eighth Amendment)**

46.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**Response:  Defendants re-state and incorporate the responses provided to each paragraph of the complaint.**

47.     As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on Mr. Ross and other prisoners similarly situated to him. They did so intentionally, wantonly, and/or with malice.

**Response:  Defendants deny the allegations contained in paragraph 47.**

48.     Alternatively, Defendants knew the risk of harm that their misconduct posed to those prisoners and nevertheless acted with deliberate indifference in executing the shakedowns at Illinois River, Big Muddy River, Lawrence, and Menard.

**Response:  Defendants deny the allegations contained in paragraph 48.**

49.     As a result of Defendants' unjustified and unconstitutional conduct, Mr. Ross and other prisoners similarly situated to him suffered pain, emotional distress, and injuries.

**Response:  Defendants deny the allegations contained in paragraph 49.**

50.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to the rights of Mr. Ross and other prisoners similarly situated to him.

**Response:  Defendants deny the allegations contained in paragraph 50.**

51.    The injuries of Mr. Ross and other prisoners similarly situated to him were proximately caused by the policies and practices of the IDOC Defendants.

**Response:  Defendants deny the allegations contained in paragraph 51.**

52.    On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown at Illinois River pursuant to a policy or practice implemented and overseen by Defendant Yurkovich and other IDOC supervisors regarding shakedowns at IDOC facilities. Accordingly, Defendant Yurkovich, who was responsible for supervision and oversight of the Orange Crush team, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of Defendant Orange Crush Officers, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Yurkovich violated the rights of Mr. Ross, and other prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

**Response:  Defendants deny that the allegations contained in paragraph 52.**

53.    On information and belief, Defendants Greg Gossett, Zach Roeckeman, Stephen Duncan, Kim Butler, and Joseph Yurkovich had notice of widespread policies and practices of Defendant Orange Crush Officers and other members of the Orange Crush team, pursuant to which prisoners were subjected to unconstitutional and tortious acts of violence and humiliation, as described more fully above. Despite knowledge of these problematic policies and practices, Defendants Gossett,  Roeckeman, Duncan, Butler, and Yurkovich did nothing to ensure that the prisoners at their facilities were treated humanely and in accordance with the rights afforded to them

by the United States Constitution. These widespread policies and practices were allowed to flourish because Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of Orange Crush team members. In this way, Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich violated the rights of Mr. Ross, and other prisoners similarly situated to him, by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

**Response:  Defendants deny the allegations contained in paragraph 53.**

54.     The above-described policies and practices were able to exist and thrive because Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich were deliberately indifferent to the problem, thereby effectively ratifying it.

**Response:  Defendants deny the allegations contained in paragraph 54.**

55.     The injuries of Mr. Ross and those similarly situated to him were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

**Response:  Defendants deny the allegations contained in paragraph 55.**

56.     Defendants continue to this day to perform shakedowns at IDOC facilities, including Illinois River, Big Muddy River, Lawrence, and Menard, using the unconstitutional and cruel methods described more fully above. Accordingly, Mr. Ross, on behalf of himself and all others similarly situated to him, seeks injunctive relief from this Court to stop the continuing constitutional violation.

**Response:  Defendants deny the allegations contained in paragraph 56.**

57.     Mr. Ross, on behalf of himself and all similarly situated prisoners, also seeks actual and punitive damages.

**Response:  Defendants deny that they are liable to Plaintiff or any other inmates for damages.**

## COUNT II

### 42 U.S.C. § 1983 — Conspiracy

58.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**Response:  Defendants re-state and incorporate their answers to each paragraph of the complaint.**

59.     Defendants reached an agreement among themselves to deprive the prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard (including Mr. Ross) of their constitutional rights and to protect one another from liability for depriving the prisoners of their rights, all as described in the various paragraphs of this Complaint.

**Response:  Defendants deny the allegations contained in paragraph 59.**

60.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**Response:  Defendants deny the allegations contained in paragraph 60.**

61.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to the rights of Mr. Ross and other prisoners similarly situated to him.

**Response:  Defendants deny the allegations contained in paragraph 61.**

62.     As a direct and proximate result of the illicit prior agreement referenced above, the rights of the prisoners at Illinois River, Big Muddy River, Lawrence, and Menard (including

Mr. Ross) were violated and they suffered injuries, including pain, suffering, and emotional distress.

**Response:  Defendants deny the allegations contained in paragraph 62.**

63.   These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

**Response:  Defendants deny the allegations contained in paragraph 63.**

64.   Defendants continue to this day to conspire to deprive Mr. Ross, and other prisoners similarly situated to him, of their constitutional rights and to protect one another from liability for the deprivation of those rights, all as described in the various paragraphs of this Complaint. Accordingly, Mr. Ross, on behalf of himself and all others similarly situated to him, seeks injunctive relief from this Court to stop the continuing constitutional violation.

**Response:  Defendants deny the allegations contained in paragraph 64.**

65.   Mr. Ross, on behalf of himself and all similarly situated prisoners, also seeks actual and punitive damages.

**Response:  Defendants deny the allegations contained in paragraph 65.**

### COUNT III

### 42 U.S.C. § 1983 — Failure to Intervene (Eighth Amendment)

66.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**Response:   Defendants re-state and incorporate their responses to each paragraph of the complaint.**

67.   As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of the constitutional rights of the prisoners housed at Illinois River, Big Muddy

River, Lawrence, and Menard (including Mr. Ross) as set forth above had they been so inclined. They failed to do so.

**Response:  Defendants deny the allegations contained in paragraph 67.**

68.     Defendants' actions were undertaken intentionally, with malice, and/or with reckless indifference to the rights of the prisoners housed at these facilities.

**Response:  Defendants deny the allegations contained in paragraph 68.**

69.     As a direct and proximate result of Defendants' misconduct, the rights of Mr. Ross, and other prisoners similarly situated to him, were violated and they suffered injuries, including pain, suffering, and emotional distress.

**Response:  Defendants deny the allegations contained in paragraph 69.**

70.     Mr. Ross's injuries, and the injuries of those prisoners similarly situated to him, were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

**Response:  Defendants deny the allegations contained in paragraph 70.**

71.     Mr. Ross, on behalf of himself and all similarly situated prisoners, seeks actual and punitive damages for Defendants' violation of the constitutional rights of the prisoners at Illinois River, Big Muddy River, Lawrence, and Menard.

**Response:  Defendants deny they are liable to Plaintiff or any other prisoner.**

## COUNT IV

### 42 U.S.C. § 1983 — Prison Rape Elimination Act

Count IV was dismissed by the Court on January 28, 2016.  [d/e 76].  No response to this Count is required.  To the extent a response is necessary, Defendants deny the allegations in Count IV.

## COUNT V

### Intentional Infliction of Emotional Distress

82.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**Response:   Defendants re-state and incorporate their responses to each paragraph of the complaint.**

83.    In the manner described more fully above, Defendants engaged in extreme and outrageous conduct. Those actions were rooted in an abuse of power or authority.

**Response:  Defendants deny the allegations contained in paragraph 83.**

84.    Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

**Response:  Defendants deny the allegations contained in paragraph 84.**

85.    Defendants' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to the rights of the prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard.

**Response:  Defendants deny the allegations contained in paragraph 85.**

86.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment.

**Response:  Defendants deny the allegations contained in paragraph 86.**

87.    As a direct and proximate result of this misconduct, Mr. Ross, and other prisoners similarly situated to him experienced injuries, severe emotional distress, and suffering.

**Response:  Defendants deny the allegations contained in paragraph 87.**

**Response to Plaintiff's Prayer for Relief**

Defendants deny that Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, attorneys' fees, costs, or to any other possible relief.

**Affirmative Defenses**

**A.      Qualified Immunity**

At all times relevant to Plaintiffs' claims, the Defendants acted in good faith in the performance of their official duties without violating clearly established constitutional rights. Defendants are protected from liability by the doctrine of qualified immunity.

**B.      Eleventh Amendment Sovereign Immunity**

Plaintiff's claims for money damages against Defendants in their official capacities are precluded by the Eleventh Amendment, which bars a damages action in federal court against a State or a State official sued in his or her official capacity.

Plaintiffs' requests for injunctive relief are also barred by the Eleventh Amendment, which precludes the award of injunctive relief against a state actor absent a showing of an ongoing constitutional violation.

**C.      Exhaustion**

Plaintiff filed this lawsuit concerning prison conditions while in the custody of the Illinois Department of Corrections and failed to properly exhaust administrative remedies as to all claims prior to filing his suit.  Plaintiff is therefore barred from continuing with certain claims by 42 U.S.C. 1997e(a).

### D.      State Sovereign Immunity

Because Defendants acted in the performance of their official duties, within the scope of their employment, and without malicious intent, Plaintiff's state law tort claims are barred by sovereign immunity in Federal Court and are required to be brought in the Illinois Court of Claims.

### E.      Public Official Immunity

Because, at all times relevant to Plaintiff's complaint, Defendants were performing uniquely governmental duties without malice, Defendants are entitled to public official immunity for claims based on conduct that was a good-faith exercise of governmental or discretionary duties.

### Jury Demand

Defendants demand a trial by jury on all triable issues.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and deny all relief sought by Plaintiff.

Respectfully submitted,

MICHAEL GILREATH
and BROOKE ARMSTRONG,

Defendants,

LISA MADIGAN, Attorney General
for the State of Illinois,

Attorney for Defendants,

Robert L. Fanning #6296345
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 782-2077
E-Mail: rfanning@atg.state.il.us
  Of Counsel.

BY:     s/ Robert L. Fanning
          Robert L. Fanning
          Assistant Attorney General

29

## CERTIFICATE OF SERVICE
### No. 15-309

I hereby certify that on March 14, 2016, I electronically filed ANSWER AND

AFFIRMATIVE DEFENSES with the Clerk of the Court using the CM/ECF system which will

send notification of such filing(s) to the following:

Sarah Grady, Mike Kanovitz
 and Jon Loevy
Loevy & Loevy
312 North May St., Suite 100
Chicago, IL.  60607
(312) 243-5900
jon@loevy.com
mike@loevy.com
sarah@loevy.com

Alan Mills and Nicole Schult
Uptown People's Law Center
4413 North Sheridan Rd.
Chicago, IL.  60640
(773) 769-1410
alanmills@comcast.net


  s/ Robert L. Fanning
Robert L. Fanning #6296345
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706
(217) 782-2077 Phone
(217) 782-8767 Fax
E-Mail: rfanning@atg.state.il.us