## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JONATHAN TOLLIVER, #R05836, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-00130-SMY |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| SALVADOR GODINEZ, | ) | |
| BARR, | ) | |
| IDOC, | ) | |
| KIMBERLY BUTLER, | ) | |
| LINDA CARTER, | ) | |
| C/O HAMILTON, | ) | |
| C/O CROSS, | ) | |
| LT. WALLER, | ) | |
| C/O SKIDMORE, | ) | |
| NURSE MOLDENHAUER, | ) | |
| TROST, | ) | |
| UNKNOWN PARTY, and | ) | |
| INTERNAL AFFAIRS UNIT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jonathan Tolliver, an inmate currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The Complaint arises out of events that occurred in April 2014. Plaintiff alleges that his rights were violated during a strip search and cell shakedown conducted by the Orange Crush Tactical Team at Menard in April 2014 and by prison staff and officials' alleged deliberate indifference to his medical needs following the shakedown.

## Merits Review Under 28 U.S.C. § 1915A

The Complaint is before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## The Complaint

On April 8, 2014, Menard was on lockdown and Plaintiff's housing unit was searched by the Orange Crush Tactical Team (Doc. 1, p. 11). No members of the team were wearing a name badge. *Id*. The search began with officers yelling and rapping their batons on the cell bars as they entered the housing unit (*Id*. at 12). Plaintiff, along with all of the other inmates on the unit, was then subjected to a strip search and placed in handcuffs with his arms behind his back in an uncomfortable position (*Id.*).

Following the strip search, Plaintiff was ordered walk with his back straight while

looking down to the ground. *Id*.  The inmates were then ordered to line up so that their genitals came in contact with the buttocks of the man in front of them  (*Id*. at 14).  This lasted for hours (*Id.*).

When Plaintiff returned to his cell, he began to stretch his arm through the chuckhole into the cell in order to relieve his pain (*Id.* at 14-15).  As he was doing this, an officer pulled his arm back through the chuckhole, hitting it on the cell's steel bars (*Id.* at 15). The officer hit Plaintiff's arm on the bars and said "don't move again motherfucker or I'll break your fucking arm." The officer pulled Plaintiff's arms further through the chuckhole, causing him to bend his back in a painful manner. The pain was such that it brought tears to his eyes (*Id.* at 15).

The tactical officer eventually released his arms, uncuffed him and ordered him to face the wall at the end of the cell while he uncuffed his cellmate. Plaintiff's hand had at this point "swoll[en] up like a balloon." He asked for medical attention, but "was told to turn the fuck back around or he was gonna have more than his hand to worry about." His hand had swollen twice its normal size and although he asked every officer that passed by, including defendants C/O Hamilton and Lt. Waller, for medical aid, his requests were denied (*Id.* at 16).

Plaintiff put in several sick call requests.  However, because Wexford Health Sources, Inc. ("Wexford"), the Illinois Department of Corrections ("IDOC") and Menard have a policy of cancelling medical passes during lockdowns, his requests were ignored (*Id.* at 17).

Plaintiff's hand had become black and remained badly bruised. On April 16, 2014, he was finally seen by a prison nurse who told him his hand was not broken. Two days later, he was seen by Defendant Moldenhauer, a nurse practitioner, who also told him his hand was not broken. She said she would order an x-ray, however (*Id.* at 18).  Plaintiff let Moldenhauer know that the Tylenol he had previously been given was not effective in reducing his pain (*Id.* at 18).

She told him that Wexford has a policy of only providing Tylenol, Motrin or Ibuprofen to patients, and nothing stronger (*Id.* at 19). The nurse scheduled a follow-up in a week.

Plaintiff's x-ray showed that his hand was swollen and on April 21, 2014, he was scheduled to see Defendant Dr. Trost, Wexford's medical director (*Id.* at 21). Dr. Trost was unavailable, however, so he saw Moldenhauer. She told him he would receive a cast once Wexford approved the procedure.

Plaintiff eventually underwent surgery on May 1, 2014—21 days after injuring his hand (*Id.*). He was prescribed strong pain medication by a physician at the hospital in which he received the surgery, but Wexford and Dr. Trost gave him Ibuprofen instead, which did not remedy his pain (*Id.* at 22). Plaintiff also claims that Dr. Barr, who treated Plaintiff post-surgery, and Nurse Skidmore failed to provide him with adequate care. (*Id.* at 25.)

A few days previous, on April 28, 2014, Plaintiff filed an emergency grievance (*Id.*). The grievance officer (Linda Carter) denied the grievance. Plaintiff wrote letters to Carter, Warden Butler, Dr. Trost and Director Godinez (then-Director of IDOC), complaining of his pain and treatment and of the fact that Menard does not offer physical therapy (*Id.* at 23). The recipients did not respond to his complaints. Additionally, Plaintiff claims that he filed a report about the excessive force used against him with Internal Affairs, but that Internal Affairs did not investigate the matter (*Id.* at 25-26).

## Discussion

The Court will begin with a preliminary note concerning the handling of Orange Crush cases in the Southern District of Illinois. Plaintiff's Complaint raises allegations similar to the pleading in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, which was filed in this Court on March 19, 2015. The plaintiff in *Ross* is seeking injunctive relief and damages on behalf of

himself and a class of prisoners who were subjected to similar strip searches while incarcerated at Illinois prisons during 2014.  Should the *Ross* class be certified, Plaintiff could potentially be a member of that class.  Due to the similarities between the two cases and the need to consolidate judicial resources, Plaintiff's case was transferred to the undersigned judge.

With the above in mind, the Court will evaluate Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A.  In his Complaint, Plaintiff lists the following discrete causes of action.

**COUNT 1:** **Eighth Amendment claim against Defendants Unknown Party, Godinez, Butler, and IDOC for the infliction of excessive force upon Plaintiff during the strip search and shakedown;**

**COUNT 2:** **Eighth Amendment claim for failure to prevent the violation of Plaintiff's constitution right of protection from excessive force against IDOC, Godinez, and Butler.**

**COUNT 3:** **Eighth Amendment claim for failure to prevent the violation of Plaintiff's constitutional right of protection from deliberate indifference of his serious medical needs against IDOC, Godinez, Butler, and Wexford.**

**COUNT 4:** **Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendants Barr, Butler, Godinez, Carter, Hamilton, Cross, Waller, Skidmore, Moldenhauer, Unknown Party, IDOC, and Wexford.**

**COUNT 5:** **Fourteenth Amendment claim for failure to investigate against Defendant Internal Affairs Unit.**

Given the similarity between Plaintiff's Complaint and the Complaint in *Ross* (as regards his Orange Crush-related allegations), the fact that the Complaint in *Ross* was permitted through screening and the fact that a motion to dismiss was recently denied in *Ross* (as to Counts 1, 2, 3, and 5) (*see Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, [Doc. 76]), the Court is of the opinion that Counts 1 and 2 cannot be dismissed in this case at this time.

Count 3 may also proceed. Plaintiff's allegations of systematic issues with Menard's health care unit, which implicates senior level staff within IDOC, and the failure of such staff to

intervene on Plaintiff's behalf are sufficient to state arguable claims for failure to intervene against IDOC, Godinez, Butler and Wexford. Therefore, Count 3 survives preliminary review.

Count 4 also survives preliminary review. To state a medical claim under the Eighth Amendment, a plaintiff must show that his condition "was objectively serious," and that officials acted with the requisite intent towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Here, the Complaint alleges an objectively serious medical condition.  Plaintiff asserts he has experienced severe and persistent pain in his hand which was as broken due to the actions of an Orange Crush tactical unit officer. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) ("[T]he presence of a medical condition that significantly affects an individual's daily activities . . . or the existence of chronic and substantial pain" indicate the presence of a serious medical condition.) (internal quotation marks and citations omitted). Plaintiff's claim also passes the subjective hurdle. Allegations of a failure to treat or intervene on a prisoner's behalf in the face of an objectively serious medical condition can constitute indifference, depending on the circumstances. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010).  Further, a prisoner's correspondence to a prison supervisor may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Count 3, therefore, shall proceed against Defendants Barr, Butler, Godinez, Carter, Hamilton, Cross, Waller, Skidmore, Moldenhauer and Unknown Party.

Count 5, however, shall not proceed. The Complaint offers no basis for a claim against staff of the Internal Affairs Unit or any other defendant based on an alleged failure to investigate the April 8, 2014 incident at Plaintiff's urging. The failure to investigate a prisoner's complaints

simply does not make an official liable for damages under § 1983. *See George v. Smith,* 507 F.3d 605, 609 (7th Cir.2007) ("Only persons who cause or participate in the violations are responsible."). Rather, the official must have personally participated in the constitutional deprivation. Plaintiff's Complaint does not suggest that members of the Internal Affairs Unit had any personal involvement in the April 2014 incident. Therefore, Count 4 fails to state a claim upon which relief may be granted and shall be dismissed without prejudice.

It should be noted that Plaintiff cannot pursue a claim for money damages against IDOC as it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir.2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.,* 56 F.3d 785, 788 (7th Cir.1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.,* 931 F.2d 425, 427 (7th Cir.1991) (same); *Santiago v. Lane,* 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). So far as Plaintiff seeks injunctive relief against at IDOC, however, Plaintiff shall be permitted to proceed in that regard.

All claims asserted against Wexford also survive threshold review. Wexford is a corporate entity and is therefore treated as a municipality for purposes of § 1983 liability. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Plaintiff implicates Wexford in, as a matter of policy,

deliberately understaffing its health care unit in Menard, prohibiting all medical care during lockdowns no matter the severity of an individual injury and requiring nurses to handle cases and make decisions that are outside of their scope of professional competence. Plaintiff also alleges that these policies caused his alleged constitutional injuries. Therefore, all claims against Wexford survive preliminary review.

## <u>Disposition</u>

**IT IS ORDERED** that Plaintiff may proceed on **COUNTS 1**, **2**, **3**, and **4** against Defendants **GODINEZ**, **IDOC**, **BARR**, **BUTLER**, **CARTER**, **HAMILTON**, **CROSS**, **WALLER**, **SKIDMORE**, **MOLDENHAUR**, **TROST**, **WEXFORD**, and **UNKNOWN PARTY**.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** without prejudice. Defendant **INTERNAL AFFAIRS UNIT** is **DISMISSED** without prejudice from this action.

**IT IS FURTHER ORDERED** that **COUNTS 1** and **2** shall be **SEVERED** from this action into a new case, which shall be **CONSOLIDATED** with *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW for all further proceedings. *Ross v. Gossett* shall be the lead case. All future pleadings shall be filed in *Ross v. Gossett* and contain case number 15-cv-309-SMY-SCW. The Clerk of Court is **DIRECTED** to let the record in *Ross v. Gossett* reflect this consolidation. An additional filing fee will not be assessed.

**IT IS FURTHER ORDERED** that, as to **COUNTS 3** and **4**, which shall proceed as Case No. 16-cv-00130-SMY**,** the Clerk of Court shall prepare for Defendants **GODINEZ**, **IDOC**, **BARR**, **BUTLER**, **CARTER**, **HAMILTON**, **CROSS**, **WALLER**, **SKIDMORE**, **MOLDENHAUR**, **WEXFORD**, and **TROST,**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is

**DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

      **IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2** the Clerk of Court shall prepare for Defendants **IDOC**, **GODINEZ**, **BUTLER**, and **WEXFORD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, a copy of this Memorandum and Order, and a copy of the complaint in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

      Service shall not be made on Defendant **UNKNOWN PARTY** until such time as Plaintiff has identified these defendants in the complaint by filing a motion to substitute Defendant **UNKNOWN PARTY** with the names of these individuals in the caption and, where applicable, throughout the complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

      With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Williams** for further pre-trial proceedings, including discovery aimed at identifying Defendant **UNKNOWN PARTYY** and a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 21, 2016**

s/ STACI M. YANDLE
**STACI M. YANDLE**
**United States District Judge**