# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

DEMETRIUS ROSS, #K52284,      )
            )
        Plaintiff,      )
            )
    -vs-            )       No. 15-309-SMY-SCW
            )
GREG GOSSETT, et al.,       )
            )
        Defendants.     )

## ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, ADAMS, ROBERT; ALBRECHT, STEVE; ANDERSON, PAT;

ANDERTON, KHOREY; ANKROM, BRENDAN; ARNETT, SARAH; AUSBROOK,

BRADLEY; BAILEY, BRYAN; BAILEY, GENE; BAILLIEZ, SHAWN; BAUGHMAN,

MIKE; BAYLON, DEREK; BAYLOR, RANDY; BEASLEY, STEPHANIE; BERRY, JAMES;

BERRY, NATHAN; BOTTRELL, ANDREW; BOWERS, MARK; BOWERS, MIKE; BOYD,

LARRY; BRACE, HUBERT; BRANT, CHRISTOPHER; BROCK, DAVID; BROOKS, KYLE;

BROWN, BUD; BROWN, DOUGLAS; BROWN, KENNY; BRUCE, JAMES; BUCCO,

DENNIS; BUCHANAN, ZACHARIAH; BUTLER, KIM; CALES, CHRISTOPHER;

CAMPBELL, AARON; CANNON, MATT; CARON, CHASE; CARTER, FREDRICK;

CARTER, JARROD; CARTWRIGHT, KEVIN; CHENAULT, JR., JOHN; CISSELL, JAMES;

CLARK, BRADLEY; CLARY, ETHAN; COGDAL, VINCENT; COMPTON, CHARLES;

CONKLIN, NICK; CONRAD, STEVEN; CONRAD, TIMOTHY; COTTON, DAWAYNE;

CRADDOCK, ANGELA; CURRY, JOSH; DAMS, JASON; DAVIS, BENNY; DAVIS, RYAN;

DEAN, MICHAEL; DEES, MATT; DEGROOF, RENE; DERENZY, DREW; DILG, DWIGHT;

DIRCKS, JUSTIN; DONJON, KYLE; DOROTHY, ROBERT; DUNCAN, STEPHEN; DUST,

DANIEL; EASTON, BRYAN; EBERS, SCOTT; ECKELBERRY, JUSTIN; ELDRIDGE,

OLIN; ELLINGER, LISA; ELLIOT, BLAKE; ENGELAGE, JUSTIN; ENGELAGE, WESLEY; ENGLISH, DAVID; EOVALDI, FRANK; FINNEY, KENETH; FLUDER, MATT; FRANCE, JOSEPH; FRICKE, CHARLES; FURLOW, JASON; GANGLOFF, ANDREW; GILREATH, MICHAEL; GINDER, JASON; GLADNEY, EDWIN; GOBLE, MAURY; GOSNELL, JAMES; GOSSETT, GREG; GREGSON, SHANE; GUETERSLOH, BRIAN; HAMILTON, AKEEM; HAMMERS, JUSTIN; HANKS, MARK; HARMON, DUSTIN; HARPER, JERRY; HARRINGTON, NOBLE; HARRINGTON, RICHARD; HARRIS, KENDALL; HARRIS, RICHARD; HEIMAN, TRACY; HEINZMANN, AYLA; HEPP, JOEL; HERMETZ, DAVID; HERZOG, BRADLEY; HIRCH, KEVIN; HOLDER, DAVID; HOUGH, SETH; HOWELL, SHAYNE; HUGHEY, KYLE; HUGHEY, WILLIAM; HUNTER, BRANDON; JENKINS, CURTIS; JENKINS, MARCUS; JESTER, JASON; JOACHIM, LORETTA; JOHNSON, BRAD; JOHNSON, JAMES; JOHNSON, JUSTIN; JOHNSON, KEVIN W.; JONES, ANTHONY; JONES, JOHN; JONES, MICHAEL; JONES, TYLER; KAMP, ROBERT; KIDD, JEFFREY; KOCH, JOHN; KRAMMER, ERIK; KULICH, BRIAN; LAMB, SCOTT; LAMINACK, MICHAEL; LAMPLEY, NICHOLAS; LEWIS, BEN; LINE, DOUG; LIVINGSTON, BRIAN; LLOYD, BRANDON; LLOYD, JAMES; LOCKHART, ALEXANDER; LOHNES, NICK; LUKER, CHRISTOPHER; MARAGNI, JOHN; MARTIN, DALE; MASON, DOUG; MASSEY, KYLE; MAYS, ANDREW; MCALLISTER, TIMOTHY; MCBRIDE, JEREMY; MCCANN, RAY; MCCORMICK, WALTER; MCMILLAN, JAY; MENNERICH, LUCAS; MIGERON, JASON; MILAM, JACOB; MOHR, JOHN; MOLL, ALEX; MONICAL, DALE; MONROE, WESLEY; MOORE, ROGER; MORRILL, CANDUCE; MORRIS, JASON; MOSER, ANDREW; MULLIN, DAN; MYERS, WILLIAM; NALLEY, NICK; OCHS, TRAVIS; PARKER, LEE; PARKS, WENDY; PASSMORE, ROBERT; PATTERSON, JEREMIAH; PERKINS, GARY; PHELPS, ANDY; PHILLIPS,

JARED; PIPER, BRIAN; PORTER, KENNY; PROVENCE, LARRY; PULLIAM, DONALD; RALSTON, TRENT; RENK, RORY; RESTOFF, JOHN; RICHARD, STEVEN; RICHEY, BRANDON; RIGDON, JAMES; RIVETT, ROBERT; ROECKEMAN, ZACH; ROWLAND, TREVOR; SAPPINGTON, CHAD; SAWYER, STEPHEN; SCOTT, MINH; SENN, ANTHONY; SHEHORN, SAMUEL; SHELTON, ERIC; SHOULTZ, RON; SHURTZ, TYSON; SIMMONS, MITCH; SKAGGS, JAMIE; SMITH, DEREK; SMITH, KENNETH; SMITH, RANDY; SMITH, SHANE; STARK, GARY; STEIN, CALLY; STOUT, ANDY; STUCK, THOMAS (BRAD); STUFFLEBEAM, MIKE; TANNER, JERRY; TATE, SIERRA; TAYLOR, SAM; THOMASON, MARYELLEN; THOMPSON, ASHLEY; THOMPSON, FRANK; THOUSAND, TAMMY; TRIBBLE, MATTHEW; VAUGHN, BEN; VOLK, ANDREW; WALLJASPER, CAYD; WALSH, ROBERT; WARD, NATHAN; WATERS, RENE; WATKINS, JAMES; WEBER, ERIC; WENZEL, ERIC; WESTERMAN, AARON; WHITE, CHRIS; WILCOXEN, STEVE; WILLIAMS, FRED; WILLIS, DALLAS; WILSON, BRICE; WINKA, MATTHEW; WINTERS, CARSON; WISE, LANCE; WITTHOFT, JERRY; YONAKA, BRAD; YURKOVICH, JOSEPH; ZANG, CALEB; ZIEGLER, RYAN; and ZOLLARS, JASON; by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, state the following for their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint [d/e 197]

### Introduction

1.      In late April 2014, the "Orange Crush" conducted a shakedown of cells at Illinois River Correctional Center (Illinois River). Rather than pursue this shakedown as a legitimate security procedure, however, Defendants beat, sexually humiliated, and otherwise abused Mr. Ross (and hundreds of other prisoners), destroyed his property, and otherwise gratuitously inflicted punishment for the sole purpose of causing humiliation and needless pain. Plaintiffs

seek damages for their injuries (and those of other similarly abused prisoners), and an injunction prohibiting Defendants from inflicting such abuse during future searches.

**RESPONSE: Defendants deny that there is a unit titled "Orange Crush" within the Illinois Department of Corrections. Defendants admit shakedowns of cells within Illinois River Correctional Center were conducted in late April 2014. Defendants deny the remaining allegations contained in paragraph 1.**

2.      For example, Mr. Ross and other prisoners at Illinois River were subject to: a humiliating strip search in front of female officers and orders to prisoners to touch their genitals and then use the same hand to open their mouths; painfully tight handcuffing with their palms outward; orders to march from their housing units to the gym at the facility with their heads on the backs of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks (referred to by the Orange Crush team as "Nuts to Butts"); violent attacks by Defendant Orange Crush Officers when prisoners broke that formation; and orders to stand in a stress position for several hours. Throughout the entire shakedown, Defendant Orange Crush Officers hurled epithets at the prisoners, chanted "punish the inmate," and told them that this was punishment for their sins.

**RESPONSE: Defendants deny the allegations contained in paragraph 2.**

3.      Defendants' conduct at Illinois River was not an aberration. Rather, "Orange Crush" has conducted similar abusive strip searches and shakedowns at other Illinois Department of Corrections (IDOC) facilities, including Menard Correctional Center (Menard), Big Muddy River Correctional Center (Big Muddy River), and Lawrence Correctional Center (Lawrence). All of these shakedowns are the direct result of unconstitutional policies and practices in place at the IDOC to conduct periodic Orange Crush shakedowns so as to inflict pain and humiliation on prisoners entrusted to its care.

**RESPONSE:  Defendants deny there is a unit titled "Orange Crush" within the Illinois Department of Corrections.  Defendants admit that that members of the Tactical Unit performed searches at other Illinois Department of Corrections in similar manners to the searches at Illinois River Correctional Center; however, Defendants deny that all Defendants participated and deny that the searches were conducted in the manner claimed by Plaintiff.  Defendants deny that the searches were unconstitutional and deny the remaining allegations contained in paragraph 3.**

4.      The painful and humiliating shakedowns inflicted physical injuries— including headaches, dizziness, wrist pain, and lower back pain—and emotional injuries—including severe embarrassment, fear, stress, trauma, and humiliation.

**RESPONSE:  Defendants deny the allegations contained in paragraph 4.**

**Jurisdiction and Venue**

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

**RESPONSE:  Defendants admit this Court has jurisdiction over the Plaintiff's individual constitutional claims, but deny this Court has jurisdiction over the state law claims and deny that Plaintiff has standing to litigate on behalf of inmates at other institutions.**

6.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

**RESPONSE:  Defendants admit that one or more Defendants reside in the Southern District of Illinois and that Plaintiff's complaint claims that conduct occurred in the Southern District of Illinois.  Defendants deny venue is proper if the instant litigation is denied class certification.**

**Parties**

7.      Plaintiff Demetrius Ross is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Ross was housed at Illinois River. Mr. Ross brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Ross suffered.

**RESPONSE:  Defendants admit that Demetrius Ross is an inmate in the custody of the Illinois Department of Corrections and was housed at Illinois River in April 2014.  Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so. Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence were subjected to the shakedowns described by Plaintiff.  Defendants deny the remaining allegations contained in paragraph 7.**

8.      Plaintiff Jonathan Tolliver is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Tolliver was housed at  Menard. Mr. Tolliver brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Tolliver suffered.

**RESPONSE:  Defendants admit that Jonathon Tolliver is an inmate in the custody of the Illinois Department of Corrections and was housed at Menard in April 2014.  Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so. Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence**

were subjected to the shakedowns described by Plaintiff.  Defendants deny the remaining allegations contained in paragraph 8.

9.      Plaintiff Kevin Hamilton is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Hamilton was housed at Big Muddy. Mr. Hamilton brings this action on behalf of himself and all others similarly situated to him— namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Hamilton suffered.

**RESPONSE:  Defendants admit that Kevin Hamilton is an inmate in the custody of the Illinois Department of Corrections and was housed at Big Muddy River in May 2014. Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so.  Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence were subjected to the shakedowns described by Plaintiff.  Defendants deny the remaining allegations contained in paragraph 9.**

10.      At all times relevant to the events at issue in this case, Plaintiff Glen Verser was a prisoner in the custody of the IDOC, and was housed at Lawrence.  Mr. Verser brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Verser suffered.

**RESPONSE:  Defendants admit that Glen Verser was housed at Lawrence in July 2014.  Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so.  Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and**

Lawrence were subjected to the shakedowns described by Plaintiff. Defendants deny the remaining allegations contained in paragraph 10.

11. Plaintiff Zachary Watts is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Watts was housed at Big Muddy. Mr. Watts brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Watts suffered.

**RESPONSE: Defendants admit that Zachary Watts is an inmate in the custody of the Illinois Department of Corrections and was housed at Big Muddy River in May 2014. Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so. Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence were subjected to the shakedowns described by Plaintiff. Defendants deny the remaining allegations contained in paragraph 11.**

12 Plaintiff James Dunmore is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Dunmore was housed at Lawrence. Mr. Dunmore brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Dunmore suffered.

**RESPONSE: Defendants admit that James Dunmore is an inmate in the custody of the Illinois Department of Corrections and was housed at Lawrence in July 2014. Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so.**

**Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence were subjected to the shakedowns described by Plaintiff. Defendants deny the remaining allegations contained in paragraph 12.**

13.     Plaintiff Ronald Smith is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Smith was housed at Menard. Mr. Smith brings this action on behalf of himself and all others similarly situated to him—namely, other prisoners housed at Illinois River, Menard, Big Muddy River, and Lawrence from 2014 to the present, all of whom were subjected to the same shakedown procedures that Mr. Smith suffered.

**RESPONSE: Defendants admit that Ronald Smith is an inmate in the custody of the Illinois Department of Corrections and was housed at Menard in April 2014. Defendants admit Plaintiff purports to bring a class action but deny that he has standing to do so. Defendants deny prisoners within Illinois River, Menard, Big Muddy River, and Lawrence were subjected to the shakedowns described by Plaintiff. Defendants deny the remaining allegations contained in paragraph 13.**

14.     Defendants Robert Adams, Rachelle Aiken, Steve Albrecht, Richard Allen, Ashley Alvey, Brendan Ankrom, Robert Arnett, Sarah Arnett, Bryan Bailey, Ryan Bailey, Shawn Bailliez, Dustin Bayler, Paul Blacwell (aka Blackwell), Andrew Bottrell, Larry Boyd, Douglas Brown, Chris Brubaker, Zachary Buchenau, Dennis Bucco, Derrick Caudle, Vincent Cogdal, Nick Conklin, Adrian Corley, Joe Curry, Jason Dams, Troy Davis, Drew Derenzy, Rod Dial, Micah Dillon, Samuel Dillon, Justin Dircks, Vince Diveley, Samuel Dixon, Robert Dorethy (aka Dorety), Jerry Dronenberg, Olin Eldridge, Lisa Ellinger, David English, Tim Feurer, Paul Fletcher, M. Fluder, Chris Forbes, Joseph France, Anton Frazier, Wes Fuchs, Douglas Gellner,

John Green, Shannon Kelly, Walter Kling, Eric Kohl, Ryan Kram, Greg Krause, Preston Krausharr, Steven Kretschumer, Justin Hammers, Kelly Higgins, Bill Hopkins, Curtis Jenkins, Jason Jester, Loretta Joachim, Brad Johnson, Scott Lamb, Chris Leipold, Jacob Liles, Romelle Lipscomb, Nick Lohnes, Chris Luker, Meredith Manning, Allison Mathis, Canduce Morrill, Andrew Moser, William ("Bill") Myers, Myron Neisler, Lee Parker, Robert Passmore, Andy Phelps, Brian Piper, Bryan Posey, Jacob Pyle, Abby Roberts, Kent Robinson, Chad Sappington, Ashley Schafer, Thomas Scott, Ron Shoultz, Jamie Skaggs, Bruce Settles, Todd Sexton, Ronnie Sherrock, Derek Smith, Cally Stein, Mike Stufflebean, T.J. Swarts, Sam Taylor, Frank Thompson, Ashley Thompson, Tammy Thousand, Steven Tutoky, Nick Ulery, Dennis Urhig, John Vroman, Cayd Walljasper, John Whitlow, Steve Wilcoxen, Fred Williams, and William Zimmerman, were all, at the time of the events at issue in this complaint, IDOC employees; members of the IDOC Special Operations Response Team (SORT) (commonly referred to as Orange Crush); and participants in the shakedowns that occurred at Illinois River. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team. Defendants deny Defendants Ankrom, Derenzy, Dillon, Dickers, Eldridge, English, Fluder, France, Kohl, Hammers, Jester, Joachim, Johnson, Lohnes, Parker, Passmore, Phelps, Sappington, Shoultz, Smith, Taylor, Frank Thompson, Ashley Thompson, Thousand, Walljasper, Wilcoxen, and Fred Williams were members of the IDOC SORT team and defendants deny they were participants in the shakedowns that occurred at Illinois River. Defendants Ankrom, Joachim, and Parker deny that they acted**

under the color of law or as employees of IDOC during the time; Defendants Derenzy, Dillon, Dickers, Eldridge, English, Fluder, France, Kohl, Hammers, Jester, Johnson, Lohnes, Passmore, Phelps, Sappington, Shoultz, Smith, Taylor, Frank Thompson, Ashley Thompson, Thousand, Walljasper, Wilcoxen, and Williams admit employment IDOC and any actions taken as part of their employment were under color of state law.

The remaining Defendants named above admit they were employed at Illinois River Correctional Center and acted under color of state law and within the scope of their employment with the IDOC when performing their duties on behalf of IDOC and were members of the Tactical Unit.

15.     Defendants Robert Adams, Nathan Anderson, Khorey Anderton, Pat Anderson, Robert Arnett, Mike Austin, Brian Bailey, Shawn Bailliez, Chris Barber, Stephen Bayer, Stephanie Beasley, Chad Belcher, David Bogart, Andy Bottel, Stephen Boyle, Mike Bowers, Tim Bowen, David Brock, Kenny ("Kenneth") Brown, David Browning, James Bruce, Jon Burrow, Jonah Butler, Matt Cannon, Fred Carter, Mike Clark, Mike Chekevida, Tod Childers, Trevor Chitwood, DaWayne Cotton, Nathan Courtright, Angela Craddock, Josh Curry, Benn Davis, Ryan Davis, Elliot Daymon, Matt Dees (aka Dess), Rene DeGroof, Dwight Dilg, Kyle Donjon, Robert Dorety (aka Dorethy), Wes Dothager, Terry Douglas, Brad Duckworth, Ryan Dumstroff (aka Dumstorff), Mica Dunn, Mike Dunning, Dwayne Durham, ScottEbers, Blake Elliot, Jason Engelage, Justin Engelage, Frank Eovaldi, Steven Estes, Keneth ("Kenneth") Finney, Cory Fuqua, Jason Furlow, Pete Geppert, Brian Guetersloh, Michael Gilreath, Jason Ginder, Charles Hahn, Jared Hankinds, Jacob Harris, Kendall Harris, Ayla ("Alya") Heinzmann, Mark Heinzmann, LarryHenderson, David Hermetz, Bradley Herzog, Dustin Hewitt, Tyler Holland,

William Hughey, Brandon Hunter, Joseph Jackson, M.H. Jansen, Curtis Jenkins, Marcus Jenkins, James Johnson, Justin Johnson, Matt Johnson, John Jones, Chris Kamp, Brian Kauling, Clarence Kellerman, Dan Korte, Brian Kulich, Scott Lamb, Mike Laminack, Brian Livingston, Leslie Lockwood, Amanda Lohman, Randy Lohman, Chris Luker, John Maragni, Dale Martin, Doug Mason, Kyle Massey, Jeremy McBride, Timmy McAllister, Ray McCann, Jason McCarty, Jullian McCarty, Ryan McClellan, Brad McCuan, Josh McDonald, Jay McMillan, Josh Mensing, Justin Miller, John Mohr, David Moore, Zach Moore, Canduce Morrill, Andy Moser, Dan Moyers, Nathan Musgrave, Barry Myers, Nick Nalley, Matt Newbury, Travis Ochs, Zach Oglesby, Zach Payne, Sam Peradotta, Scott Petijean, Jared Phillips, Brian Piper, Matt Plummer, Jon Pochie, Larry Provence, Donald Pulliam, Rory Renk, Robert Rivett, Jason Robinson, Jeff Roelandt, Jesse Rosenberger, James Russell, Zach Sarver, Marcus Sawyer, Steven Sawyer, Anthony Scoles, Jared Selby, Chris Sexton, Todd Shefler (aka Sheffler), Samuel Shehorn, Eric Shelton, Chris Sherrod, Wes Shirley, Bruce Sisney, Jamie Skaggs, Johnnie Smith, Randy Smith, Robert Smith, Shane Smith, Tom Smith, Quinton Smothers, Scott Snider, Nicholas Sroka, Mike Stanart, Gary Stark, Nick Steele, Callie Stein, Steve Strickell, Mike Stufflebean, Roger Sullivan, Mike Swetland, Jerry Tanner, Sierra Tate, David Teske, Martin Tovar, Benjamin Vaughn, Robert Walsh, Eric Ward, Luke Waters, Rene Waters, James Watkins, Eric Wenzel, Aaron Westerman, Chris White, Jerry Witthoft, Tony Whitten, Trevor Wilkinson, Brice Wilson, Tim Winans, Troy Winker, Carson Winters, Lance Wise, Cody Wittinghill, Jon Wolfe, Tim Worker, Scott Workman, Brad Yonaka, Jason Zollars, and Jason Zurliene were all, at the time of the events at issue in this complaint, IDOC employees; members of the IDOC Special Operations Response Team (SORT) (commonly referred to as Orange Crush); and participants in the shakedowns that occurred at Big

Muddy. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team. Defendants deny Defendants Adams, Anderton, Anderson, Arnett, Bailey, Bailliez, Beasley, Bottel, Bruce, Cannon, Cotton, Craddock, Curry, DeGroof, Dorety, Elliot, Harris, Herzog, Jenkins, John Jones, Lamb, Luker, Maragni, Martin, Mason, Mohr, Morrill, Moser, Piper, Shelton, Skaggs, Stark , Stein, Stufflebaum, Tate, Rene Waters, White, and Wilson were participants on the Tactical Team that performed the shakedowns at Big Muddy River, but defendants admit any act taken pursuant to their employment with IDOC is taken under color of law. The remaining Defendants named above admit they were employed at Big Muddy River Correctional Center and acted under color of state law and within the scope of their employment with the IDOC when performing their duties on behalf of IDOC and were members of the Tactical Unit.**

16. Defendants Jeremy Alwerdt, Nathan Anderson, Bradley Ausbrook, Randy Baylor, James Berry, Jimmy Bonner, Christopher Brant, Scott Britton, Kyle Brooks, Kenny Brown, Bud Brown, David Browning, Zachariah Buchanan, Jeff Bundren, John Burrow, Christopher Cales, Janet Carle, Bill Carroll, Jarrod Carter, John Chenault Jr., Trevor Chitwood, Ethan Clary, Steven Conrad, Timothy Conrad, Nathan Courtright, Angela Craddock, Benny Davis, Ryan Davis, Michael Dean, Terry Douglas, Brian Dowdy, Daniel Dust, Justin Eckelberry, Justin Engelage, Wesley Engelage, Frank Eovaldi, Kenneth Finney, Andrew Gangloff, Michael Gilreath, Jason Ginder, Edwin Gladney, Maury Goble, James Gosnell, James Gray, Akeem Hamilton, Jerry Harper, Noble Harrington, Jake Harris, Richard Harris, Tracy Heiman, Ayla Heinzmann, Jeff Hill, Seth Hough, Matthew H. Jansen, Marcus Jenkins, Kevin W. Johnson, Robert Kamp, Josh Kapper,

Josh Keener, Jeffrey Kidd, Daniel Korte, Michael Laminack, Nicholas Lampley, Ben Lewis, Doug Line, Brian Livingston, Alexander Lockhart, Amanda Lohman, Randy Lohman, Todd Manker, Dale Martin, Doug Mason, Andrew Mays, Timothy McAllister, Jason McCarty, Brad McCuan, Carl McFarland, Walter McCormick, Jay McMillan, Travis McReynolds, Josh Mensing, Jacob Milam, Kevin Miller, Dale Monical, David Moore, Zach Moore, Dan Mullin, Barry Myers, Rich Nidey, Travis Ochs, Zach Oglesby, Lareese Olinger, Jeremiah Patterson, Gary Perkins, Gerhard Poettker, Don Pulliam, Trent Ralston, Kris Reynolds, Brandon Richey, Robert Rivett, Jesse Rosenberger, Trevor Rowland, Chris Sanders, Stephen Sawyer, Ashley Sears, Anthony Senn, Samuel Shehorn, Chris Sherrod, Tyson Shurtz, Clint Sigrist, Tom Smith, Quinton Smothers, Jonathon Staley, Jesse Stephens, Andy Stout, Brad Stuck, Roger Sullivan, Jerry Tanner, MaryEllen Thomason, Matthew Tribble, Ben Vaughn, Andrew Volk, Robert Walsh, Eric Wangler, Eric Ward, Luke Waters, Eric Weber, Caleb Wesley, Chris White, Tony Whitten, Dallas Willis, Matthew Winka, Troy Winkler, Lance Wise, Jerry Witthoft, Cody Wittinghill, Scott Workman, Brad Yonaka, Dustin York, and Jason Zollars were all, at the time of the events at issue in this complaint, IDOC employees; members of the IDOC Special Operations Response Team (SORT) (commonly referred to as Orange Crush); and participants in the shakedowns that occurred at Lawrence. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team. Defendants deny Defendants Baylor, Brant, Brown, Cales, Carle, Carroll, Carter, Chenault, Conrad, Benny Davis, Gangloff, Ginder, Gosnell, Hamilton, Harper, Hough, Kevin Johnson, Lockhart, Manker, Mays, McCormick, McMillan, Milam, Monical, Mullin, Patterson, Perkins, Richey, Stout, Stuck, Tanner, Thomason, Tribble, Vaughn, Volk, Weber, Willi, and Willis Wilson were participants on the Tactical Team that**

performed the shakedowns at Lawrence, but defendants admit any act taken pursuant to their employment with IDOC is taken under color of law. The remaining Defendants named above admit they were employed at Lawrence Correctional Center and acted under color of state law and within the scope of their employment with the IDOC when performing their duties on behalf of IDOC and were members of the Tactical Unit.

17.     Defendants Charles Antry, Gene Bailey, Mike Baughman, Derek Baylon, Nathan Berry, Mark Bower, Hubert Brace, David Brock, Aaron Campbell, Chase Caron, Fredrick Carter, Kevin Cartwright, James Cissell, Bradley Clark, Charles Compton, Benny Davis, Kyle Donjon, Bryan Easton, Scott Ebers, Justin Engelage, Wesley Engelage, Frank Eovaldi, Charles Fricke, Jason Furlow, Edwin Gladney, Shane Gregson, Brian Guetersloh, Mark Hanks, Dustin Harmon, Richard Harris, Benjamin Haynes, Tracy Heiman, Joel Hepp, Kevin Hirch, David Holder, Shayne Howell, Kyle Hughhey, Brandon Hunter, Anthony Jones, Tyler Jones, Michael Jones, John Koch, Erik Krammer, Brian Kulich, Michael Laminack, Jason Lane, James Lloyd, Brandon Lloyd, Jay McMillan, Lucas Mennerich, Jason Migneron, Alex Moll, Wesley Monroe, Jason Morris, Wendy Parks, Jared Phillips, Kenny Porter, Rory Renk, John Restoff, Steven Richard, James Rigdon, Trevor Rowland, Minh Scott, Tyson Shurtz, Mitch Simmons, Kenneth Smith, Nathan Ward, James Watkins, Eric Wenzel, Aaron Westerman, Carson Winter, Jerry Witthoft, Caleb Zang, and Ryan Ziegler were all, at the time of the events at issue in this complaint, IDOC employees; members of the IDOC Special Operations Response Team (SORT) (commonly referred to as Orange Crush); and participants in the shakedowns that occurred at Menard. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants deny that "Orange Crush" is the name of any IDOC**

**group or tactical team. Defendants deny Defendants Berry, Bower, Campbell, Cissell, Easton, Harris, Hepp, Hirch, Holder, Howell, Tyler Jones, Michael Jones, Koch, Krammer, Lames Lloyd, Mennerich, Migneron, Monroe, Morris, Parks, Scott Simmons, and Ward were members of the IDOC SORT team and were participants in the shakedowns that occurred at Menard Correctional Center; they admit they were employees of IDOC and actions taken pursuant to their employment were under the color of state law. Defendant Cissell denies that he was employed by IDOC at the time relevant to this suit or that he acted under color of law.**

**The remaining Defendants named above admit they were employed by IDOC and acted under color of state law and within the scope of their employment with the IDOC when performing their duties on behalf of IDOC and were members of the Tactical Unit.**

18.     Defendants William Rees, David Childers, James Best, Robert Hughes, George Holton, Terry Clements, Kent Brookman, John Tourville, Richard Moore, Kevin Page, Beau Purtle, Patrick Trokey, Jeffrey Marnati, Raymond Allen, James Powell, Bill Westfall, John Mich, Roger Waller, John Hoffman, Raymond Groves, David Evelsizer, Sean Smolak, Michael Samuel, George Welborn, Christopher Bradley, Tony Payne, Jr., Michael Monje, Tracy Lee, John Carter, and Alexander Jones, were all, at the time of the events at issue in this complaint, IDOC supervisors; members or supervisors of the IDOC Special Operations Response Team (SORT) (commonly referred to as Orange Crush); and participants in the shakedowns that occurred at Menard. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team. The above-captioned defendants lack knowledge or information**

sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore deny the same.

19.     Defendants Daniel Monti, Louis Browder, Ventures Jackson, Denise  Minor, Jacob Null, Daniel Sullivan, Jack Townely, Harold Schuler, Jeffrey Julius,  Richard Lynch, Michael Grisham, Michael Durbin, Dennis Followell, Danny Britton, George Davis, Kevin Chamness, Charles Hayden, James Studer, Robin Cherim, Scott Partee, Robert Craig, and Eric Plott, were all, at the time of the  events at issue in this complaint, IDOC supervisors; members or supervisors of the  IDOC Special Operations Response Team (SORT) (commonly referred to as Orange  Crush); and participants in the shakedowns that occurred at Big Muddy. At all  times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team.  The above-captioned defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore deny the same.**

20.     Defendants Bret Robison, John Burle, Ron Beebe, Bruce Fisher, Bruce Hagaman, Bruce Sanders, Dale Massey, Eric Welsh, Gordon Belless, Lonn Howarter, Mike Keithley, Trent Birchfield, Rick Yocum, Kerrye Annable, Christopher Quigley, Marc Coufal, Paul Chapin, and Stephanie Dorethy, were all, at the time of the events at issue in this complaint, IDOC supervisors; members or supervisors of the IDOC Special Operations Response Team (SORT) (commonly referred to as Orange Crush); and participants in the shakedowns that occurred at Illinois River. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team.  The above-captioned defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore deny the same.**

21.     Defendants Thomas Stuck, Chad Jennings, Gregory Sorensen, Chris  Pitts, Russell Goins, Lisa Harris, Ryan Erickson, Randall Bayler, Leif McCarthy,  Chad Ray, Arnold Steber, Donald Harris, James Whelan, Earl Dixon, Alan Dallas,  Martin Buchner, Robert Boldrey, Lisa Tarr, Matt Freeman, James Ochs, and  Richard Moore, were all, at the time of the events at issue in this complaint, IDOC  supervisors; members or supervisors of the IDOC Special Operations Response  Team (SORT) (commonly referred to as Orange Crush); and participants in the  shakedowns that occurred at Lawrence. At all times relevant to the events at issue  in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants deny that "Orange Crush" is the name of any IDOC group or tactical team.  The above-captioned defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore deny the same.**

22.     Defendants Unknown Members of Tactical Team Known as "Orange Crush" are all employees of the IDOC, and all members of the Orange Crush team. Upon information and belief, they travel from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. At all times relevant to the events at issue in this case, Defendant Unknown Members of Tactical Team Known as "Orange Crush" were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants deny there is an "Orange Crush team" within the Illinois Department of Corrections. Defendants deny that there is an "Orange Crush" team that travels from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22.**

23.     At the time of events at issue in Plaintiffs' complaint, Defendant Greg Gossett was the Warden at Illinois River, and an employee of the IDOC. On information and belief, Defendant Gossett was responsible for the supervision of the shakedowns at Illinois River. At all times relevant to the events at issue in this case, Defendant Gossett was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendants deny that Greg Gossett is presently the Warden at Illinois River Correctional Center but admit that he held that position in April 2014. Defendants admit that Defendant Gossett acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC. Defendant Gossett denies that he was responsible for supervising the shakedowns at Illinois River.**

24.     At the time of events at issue in Plaintiffs' complaint, Defendants Robert Arnett, T.J. Swarts, Robert Blackwell, and Rodney Brady commanded and supervised the tactical team members during the shakedowns at Illinois River. At all times relevant to the events at issue in this case, Defendants Arnett, Swarts, Blackwell, and Brady were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE: Defendants admit Defendants Arnett, Swarts, and Blackwell supervised part of the tactical team members during the shakedowns at Illinois River. Defendants admit Defendants Arnett, Swarts, and Blackwell were acting under color of law and within the scope of their employment with the IDOC. Defendants lack knowledge or**

information sufficient to form a belief about the truth of the allegations regarding Rodney Brady.

25.     At the time of events at issue in Plaintiffs' complaint, Defendant Zach Roeckeman was the Warden at Big Muddy River, and an employee of the IDOC. On information and belief, Defendant Roeckeman was responsible for the supervision of the shakedowns at Big Muddy River. At all times relevant to the events at issue in this case, Defendant Roeckeman was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE:  Defendants deny that Zach Roeckeman is presently the Warden at Big Muddy River Correctional Center but admit he held that position in April 2014.  Defendants admit that Defendant Roeckeman acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC.  Defendant Roeckeman denies that he was responsible for supervising the shakedowns at Big Muddy River.**

26.     At the time of events at issue in Plaintiffs' complaint, Defendants Eric Wangler, Brad McCuan, Tony Whitten, Jerry Witthoft, Nathan Anderson, Stephen Boyle, David Hermetz, Jason Robinson, and Robert Arnett commanded and supervised the tactical team members during the shakedowns at Big Muddy. At all times relevant to the events at issue in this case, Defendants Wangler, McCuan, Whitten, Witthoft, Anderson, Boyle Hermetz, Robinson, and Arnett were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants admit Defendants Wangler, McCuan, Whitten, Whitthoft, Anderson, Boyle, Hermetz, and Robinson supervised part of the tactical team members during the shakedowns at Big Muddy River, and admit they were acting under color of law and within the scope of their employment with the IDOC.  Defendant denies Robert Arnett supervised any part of the tactical team members during the shakedowns at Big Muddy**

River, but admits actions taken pursuant to his employment within the IDOC are under color of law.

27.    At the time of events at issue in Plaintiffs' complaint, Defendant Stephen Duncan was the Warden at Lawrence, and an employee of the IDOC. On information and belief, Defendant Duncan was responsible for the supervision of the shakedowns at Lawrence. At all times relevant to the events at issue in this case, Defendant Duncan was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE:  Defendants deny that Stephen Duncan is presently the Warden at Lawrence Correctional Center, but admit he held that position in July 2014.  Defendants admit that Defendant Duncan acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC.  Defendant Duncan denies that he was responsible for supervising the shakedowns at Lawrence.**

28.    At the time of events at issue in Plaintiffs' complaint, Defendants Stephen Boyle, Eric Wangler, Jerry Witthoft, Nathan Anderson, Tony Whitten, Brad McCuan, and Kevin Miller commanded and supervised the tactical team members during the shakedowns at Lawrence. At all times relevant to the events at issue in this case, Defendants Boyle, Wangler, Witthoft, Anderson, Whitten, McCuan, and Miller were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants admit Defendants Boyle, Wangler, Whitthoft, Anderson, Whitten, McCuan, and Miller supervised part of the tactical team members during the shakedowns at Lawrence, and admit they were acting under color of law and within the scope of their employment with the IDOC.**

29. At the time of the events at issue in Plaintiffs' complaint, Defendant Richard Moore was the Assistant Warden of Operations at Lawrence, and an employee of the IDOC. On information and belief, Defendant Moore was responsible for the supervision of the shakedowns at Lawrence and a supervisor in the operations chain of command during the Lawrence shakedowns. At all times relevant to the events at issue in this case, Defendant Moore was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendants deny that Richard Moore is presently the Assistant Warden of Operations at Lawrence Correctional Center, but admit he held that position in July 2014. Defendants admit that Defendant Moore acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC. Defendants deny that Richard Moore was responsible for supervising the shakedowns at Lawrence.**

30. At the time of events at issue in Plaintiffs' complaint, Defendant Anthony McAllister was the Southern Region Tactical Commander for IDOC, and an employee of the IDOC. On information and belief, Defendant McAllister was responsible for the supervision of the shakedowns at Lawrence and a supervisor in the operations chain of command during the Lawrence shakedowns. On information and belief, Defendant McAllister also served as a supervisor during the other shakedowns described in Plaintiffs' complaint. At all times relevant to the events at issue in this case, Defendant McAllister was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendant McAllister admits he was the Southern Regional Tactical Commander for IDOC in 2014, and an employee of IDOC. Defendant McAllister denies he is responsible for the supervision of shakedowns for which he is not present. Defendant McAllister lacks knowledge or information sufficient to form a belief about the truth of the**

**allegations concerning his presence at all of the shakedowns alleged in the Complaint. Defendant admits actions taken within the scope of his employment with IDOC are under color of state Law.**

31.     At the time of events at issue in Plaintiffs' complaint, Defendant Kim Butler and/or Richard Harrington was the Warden at Menard, and an employee of the IDOC. On information and belief, Defendant Butler and/or Harrington was responsible for the supervision of the shakedowns at Menard. At all times relevant to the events at issue in this case, Defendant Butler and/or Harrington was acting under color of law and within the scope of her employment with the IDOC.

**RESPONSE:  Defendants deny Defendants Butler and Harrington were both the Warden of Menard for all times of events at issue in plaintiffs' complaint, but admit they were employees of IDOC, and that actions taken within the scope of their employment are under color of state law.  Defendants deny Butler and Harrington were responsible for the supervision of the shakedowns at Menard.**

32.     At the time of events at issue in Plaintiffs' complaint, Defendants Jerry Witthoft, Scott Snider, Kevin Cartwright, Eric Wangler, David Hermetz, and David White commanded and supervised the tactical team members during the shakedowns at Menard. At all times relevant to the events at issue in this case, Defendants Witthoft, Snider, Cartwright, Wangler, Hermetz, and White were acting under color of law and within the scope of their employment with the IDOC.

**RESPONSE:  Defendants admit Defendants Witthoft, Snider, and Hermetz, supervised part of the tactical team members during the shakedowns at Menard, and that**

**actions taken within the scope of their employment with the IDOC are under color of law. Defendants deny Cartwright supervised any part of the tactical team during the shakedowns, but admits actions taken pursuant to his employment with IDOC are under color of law. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Defendant White.**

33. Defendant Joseph Yurkovich is the Chief of Operations for the IDOC, and is responsible for the supervision of all SORT (Orange Crush) units and the implementation, oversight, and supervision of policies and practices executed by Orange Crush members. At all times relevant to the events at issue in this case, Defendant Yurkovich was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendant Yurkovich denies he is presently the IDOC Chief of Operations, but admits that he held that position in the past. Defendants admit that Defendant Yurkovich acted under the color of law and within his employment with the IDOC when performing his duties on behalf of IDOC. Defendant Yurkovich admits that he oversaw the SORT units and shakedowns in the facilities. Defendant denies he oversaw a unit titled "Orange Crush" while employed as Chief of Operations. Defendant denies shakedowns were conducted in the manner described within this complaint.**

34. Defendant Michael Atchison is the former Deputy Chief of the Operations Division of IDOC, and acted as Command Staff with supervisory responsibilities during the Lawrence and, on information and belief, the other shakedowns described in Plaintiffs' complaint. At all times relevant to the events at issue in this case, Defendant Atchison was acting under color of law and within the scope of his employment with the IDOC**.**

**RESPONSE: Defendant Atchison admits he is the former Deputy Chief of Operations of IDOC, and that acts taken pursuant to his employment with IDOC are under color of law. Defendant Atchison admits that he held some supervisory responsibilities with SORT units and shakedowns in the facilities, but lacks knowledge sufficient to form a belief about the truth of whether he was present at any of the searches at issue.**

35.     Defendant Randy Davis is the former Southern Region Deputy Director for IDOC, and acted as Command Staff with supervisory responsibilities during the Lawrence Correctional Center shakedowns and, on information and belief, the other shakedowns described in Plaintiffs' complaint. At all times relevant to the events at issue in this case, Defendant Davis was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations directed toward Randy Davis.**

36.     At all times relevant to Plaintiffs' complaint, Defendant Donald Gaetz was the Southern Deputy Director for the IDOC, and acted as Command Staff with supervisory responsibilities during the Menard shakedowns and, on information and belief, the other shakedowns described in Plaintiffs' complaint. At all times relevant to the events at issue in this case, Defendant Gaetz was acting under color of law and within the scope of his employment with the IDOC.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations directed toward Donald Gaetz.**

37.     Defendant Unknown Supervisors are the unknown supervisors responsible for overseeing various aspects of the shakedowns described in Plaintiffs' complaint. The Defendant Unknown Supervisors include all supervisors identified in the Operational Orders for each of the

shakedowns; the supervisors acting in the role of Assistant Warden of Operations at Illinois River, Big Muddy, and Menard at the time of the shakedowns; all supervisors in the operations chain of command during the shakedowns; all supervisors acting as Command Staff during the shakedowns; and all IDOC regional administrators responsible for overseeing or supervising any aspect of any of the shakedowns described in Plaintiffs' complaint.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.**

38.     Defendant S.A. Godinez was the former Directors of the IDOC. He has been sued in his individual capacity. At the time of events at issue in Plaintiffs' complaint, Defendants Godinez was an employee of the IDOC, and acted under color of law and within the scope of his employment.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Salvador Godinez, but deny he is properly sued in his individual capacity.**

39.     Defendant James Baldwin is the current Director of the IDOC. He is sued in his official capacity as Director of the IDOC. Plaintiffs, on behalf of themselves and all others similarly situated, assert only claims for injunctive relief against Defendant Baldwin. As the Director of the IDOC, Defendant Baldwin acts under color of law.

**RESPONSE: Defendants admit John Baldwin is presently the Director of IDOC. Defendants deny that Plaintiffs are entitled to injunctive relief. Defendants admit that Baldwin acted under the color of state law in his role as Director when performing his duties on behalf of IDOC.**

**Allegations**

40.     In late April 2014, Illinois River was put on lockdown for approximately one week. During the lockdown, Defendant Orange Crush Officers conducted a shakedown of each house at the facility.

**RESPONSE:  Defendants admit that Illinois River was put on lockdown for several days beginning April 21, 2014, and that some Tactical Members from the SORT team conducted shakedowns at Illinois River in April 2014 but deny that all listed Defendants participated.  Defendants deny there is a unit within IDOC titled "Orange Crush" and deny being members of "Orange Crush".  Defendants deny the remaining allegations contained in paragraph 40.**

41.     Upon entering each wing of the facility, Defendant Orange Crush Officers would yell loudly and began making loud "whooping" noises, and hitting their batons on the walls, tables, doors, and railings in the wing.

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush."  Defendants admit generally that the Tactical Unit made noises as they entered the wings of the facility, but deny that Plaintiff accurately describes the actions of each member of the Tactical Team.**

42.     Two of the Orange Crush officers lined up in front of each cell in the wing, and yelled at the men in the wing to "get asshole naked!" Once the prisoners were undressed, they ordered each man to come out of his cell, one at a time. They ordered each prisoner to bend over while facing their cell (leaving their backs to the officers), and spread their buttocks and lift each foot off the ground.

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 42.**

43.     Defendant Orange Crush Officers then ordered the men to turn around to face the officers, and to lift their genitals. Next, they were ordered to open their mouths with their fingers, using the same hands that they had just used to touch their genitals and buttocks. Prisoners who asked to wash their hands before putting them into their mouths were told to "shut the fuck up!" and were threatened with segregation if they did not comply. Some of the Defendant Orange Crush Officers present in the housing unit during the strip search were female.

**RESPONSE: Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 43.**

44.     When Defendant Orange Crush Officers finished strip searching the first group of prisoners in the cells, they ordered them to return to their cell and to get dressed in pants, overshirts, and shoes. They were told that they could not put on any underwear. While those men were putting on the permitted clothing, Defendant Orange Crush Officers repeated the same process with the other men in the cells.

**RESPONSE: Defendants admit the SORT tactical unit limits offenders to pants, overshirts, and shoes for legitimate security reasons. Defendants admit members of the SORT tactical unit searched all offenders before each offender exited his cell. Defendants deny being members of a non-existent group titled "Orange Crush" and deny the remaining allegations in paragraph 44.**

45.     Once all of the strip searches were completed, Defendant Orange Crush Officers ordered the men to face the wall (with their backs to the officers) and to "keep [their] fucking heads down!" Any prisoner who looked at the officers was slammed into the wall and told to "put [his] fucking head down!" Defendant Orange Crush Officers then handcuffed all of the men in a particularly painful way—with the palms of their hands facing outwards and their thumbs pointed up to the sky. The handcuffs were also extremely tight, causing injuries to the prisoners'

wrists, and eliciting complaints from the prisoners. They were told to "shut the fuck up!" and to "keep [their] fucking head[s] down!" and were threatened with segregation if they did not comply. Some of the prisoners asked to see a nurse or other medical staff. Their requests received the same response. All of the prisoners were handcuffed in the same way, regardless of whether they had a "front cuff" permit issued by medical staff (a medical order requiring correctional officers to handcuff men with their hands in front of them, rather than behind).

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush."  Defendants admit that the Tactical Unit would have generally ordered inmates to keep their heads down and to face the wall; however, Defendants deny the remaining allegations contained in paragraph 45.**

46.     The men were ordered to line up and told to keep their heads down. Defendant Orange Crush Officers then lined up next to the prisoners, hitting their batons in their hands, and chanting "punish the inmate." This went on for several minutes.

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 46.**

47.     Once the chanting stopped, Defendant Orange Crush Officers grabbed the back of each prisoner's head and slammed it violently into the back of the prisoner ahead of him in line. Defendant Orange Crush Officers ordered the prisoners to stand in such a way that one man's genitals were in direct contact with the buttocks of the man ahead of him in line—referred to by Defendant Orange Crush Officers as "Nuts to Butts." Mr. Ross's head was slammed down so violently that his glasses broke and fell from his face. He suffered extreme dizziness and lightheadedness as a result.

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 47.**

48.     Defendant Orange Crush Officers then shoved their batons in between each prisoner's legs and jerked upwards, forcing the prisoner to straighten his legs while keeping his back bent over at a 90-degree angle onto the prisoner in front of him. This had the effect of forcing the men to place their genitals directly against the buttocks of the men in front of them. The officers then ordered the prisoners, using several epithets, to march in that formation from their housing wing to the gym at the facility. As the men began marching, the officers yelled that they didn't "want to see any fucking daylight" between any of the prisoners in line.

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 48.**

49.     The march from the housing wing to the gym was long and painful. Every time that a prisoner's head came off of the back of the prisoner in front of him, officers responded with violence. Defendant Orange Crush Officers would slam the prisoner's head into the back of the prisoner in front of him. Some, like Mr. Ross, were violently yanked out of the line, and choked and pulled to the ground while other officers jabbed them in their backs with batons. Each time this occurred, the line would stop moving. The frequent starts and stops of the procession, as well as the inherent difficulty that prisoners had maintaining perfect contact with the prisoner ahead of them in line, forced several prisoners to break contact with the prisoner in front of them, causing them to be attacked by the officers.

**RESPONSE:  Defendants deny being members of a non-existent group titled "Orange Crush" and deny the allegations contained in paragraph 49.**

50.     When the procession of prisoners arrived at the gym, Defendant Orange Crush Officers ordered them to stand facing the wall with their heads down. They remained handcuffed. Many of the officers then left the gym to return to the housing wing. Defendant Albright, however, remained in the gym with the prisoners.

**RESPONSE: Defendants deny being members of a non-existent group titled "Orange Crush." Defendant Albright admits being assigned to the tactical unit that performed shakedowns at Illinois River in April 2014. Defendants admit that members of the Tactical Unit returned to the housing wing to search the cells, but Defendants deny the remaining allegations contained in paragraph 50.**

51.     The prisoners remained standing in this stress position for several hours. During that time, Defendant Albright yelled at the prisoners: "This is punishment for all your sins!" He ordered the prisoners not to ask for medical attention because none would be provided, not to ask for water because none would be given, and not to ask to use the bathroom because they would be denied. He further told the prisoners that if their handcuffs were too tight, they would have to "be a man and take it or get dragged to seg!"

**RESPONSE: Defendants deny the allegations contained in paragraph 51.**

52.     After several hours, the other Defendant Orange Crush Officers returned. They lined up the prisoners in the same formation as before, and again slammed their heads into the backs of the prisoners in front of them. They again ordered the prisoners to march in that formation back to their housing wing. Just as before, if a prisoner broke the line by lifting his head off the back of the person in front of him, Defendant Orange Crush Officers reacted with violence.

**RESPONSE: Defendants deny being members of a non-existent unit titled "Orange Crush" and deny the allegations contained in paragraph 52.**

53.     Defendant Orange Crush Officers laughed at and taunted the prisoners throughout the entire march to and from the gym.

**RESPONSE: Defendants deny being members of a non-existent unit titled "Orange Crush" and deny the allegations contained in paragraph 53.**

54.     When they at last returned to their housing wing, the prisoners found their cells had been "tossed." Many of the prisoners found that non-contraband items had been taken, including legal documents and property that they had legitimately purchased from the commissary at the facility. Although IDOC policies require staff to complete "shakedown slips" to document any property taken from a prisoner, many prisoners did not receive any shakedown slips at all. Those prisoners who did receive "shakedown slips" found that they contained an inaccurate account of what had been taken and also that the slips obscured the officers' names who had confiscated the property. Upon information and belief, this was done intentionally, as policy, to conceal the identity of Defendant Orange Crush Officers who had participated in the shakedown.

**RESPONSE:  Defendants deny being members of a non-existent unit titled "Orange Crush" and deny the allegations contained in paragraph 54.**

55.     One of the prisoners asked an officer to get the warden, Defendant Greg Gossett. In response, the officer laughed and told him that the warden already knew all about what was happening at the facility.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55.**

56.     The prisoners suffered physical injuries as a result of the shakedown at the facility, including severe headaches, dizziness, lightheadedness, blurred vision, and severe pain in their neck and back from the march. Many prisoners complained about these injuries to the officers during the shakedown and march, and upon return to their cells. They were all denied medical attention. Officers instead told them to "submit a grievance like you inmates always do."

**RESPONSE:  Defendants deny the allegations contained in paragraph 56.**

57.     This was neither the first nor the last such shakedown conducted by IDOC officials. In early April 2014, Defendant Orange Crush Officers executed the same shakedown at Menard. In mid-May 2014, they carried out the same shakedown at Big Muddy River. In July 2014, they targeted Lawrence. At each of these facilities, Defendant Orange Crush Officers conducted the same humiliating strip search in front of female members of the Orange Crush team. At each of these facilities, they forced prisoners to march out of their housing units in a "Nuts to Butts" procession. Every time any prisoner in these facilities failed to comply with Defendant Orange Crush Officers' unreasonable demands, Defendants reacted with violence. Throughout all of the shakedowns, Defendant Orange Crush Officers taunted, yelled at, and violently attacked prisoners solely to harass and humiliate them.

**RESPONSE: Defendants deny there is a unit titled "Orange Crush" within the Illinois Department of Corrections. Defendants deny being members of a non-existent unit titled "Orange Crush". Defendants admit a shakedown was conducted at Menard Correctional Center in April 2014. Defendants admit a shakedown of Big Muddy River Correctional Center was conducted in May 2014. Defendants admit a shakedown of Lawrence Correctional Center was conducted in July 2014. Defendants deny the shakedowns were conducted by a unit titled "Orange Crush." Defendants deny that the searches were conducted in the manner alleged by the Plaintiff. Defendants deny the remainder of the allegations contained in paragraph 57.**

58.     On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown procedures at Illinois River, Big Muddy River, Lawrence, and Menard in 2014 pursuant to a policy or practice implemented, overseen, and encouraged by

IDOC supervisors, including Defendants Yurkovich, Gossett, Roeckeman, Duncan, and Butler, among others.

**RESPONSE: Defendants deny the allegations contained in paragraph 58.**

59.     On April 2, 2014, Defendant Butler sent an email to Defendant Gaetz about the shakedown and searches that had occurred at Menard. On May 14, 2014, a staff member from the Uptown People's Law Center wrote to Defendant Godinez, describing the abusive and humiliating shakedowns that were occurring in Southern Illinois. Despite this notice, neither Defendant Gaetz nor Defendant Godinez took any action to prevent the subsequent unconstitutional shakedowns  from occurring.

**RESPONSE: Defendant Butler admits she sent an email to Donald Gaetz on April 2, 2014, regarding the shakedowns at Menard, but denies the email shows any wrongdoing or any knowledge of such. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding whether plaintiffs' law firm sent a letter to Salvador Godinez, but deny such can form the basis of liability. Defendants deny the remaining allegations in this paragraph 59.**

60.     To this day, IDOC prisoners—including prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard—continue to be subjected to shakedown procedures like the ones described in this Complaint. Despite several prisoners' repeated requests for the abuse by Defendants to stop, Defendants continue to maintain and encourage the above-described policy or practice.

**RESPONSE: Defendants deny the allegations contained in paragraph 60.**

**Class Allegations**

61.    Named Plaintiffs Demetrius Ross, Jonathan Tolliver, Kevin Hamilton,  Glen Verser, Zachary Watts, James Dunmore, and Ronald Smith seek to pursue claims both for themselves individually and for a class of others similarly situated (the Class) pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

**RESPONSE:  Defendants admit that plaintiffs purport to bring this action pursuant to Federal Rule 23, but deny that this suit should be certified as a class action.**

62.    Named Plaintiffs Demetrius Ross, Jonathan Tolliver, Kevin Hamilton,  Glen Verser, Zachary Watts, James Dunmore, and Ronald Smith seek to represent a class consisting of the following people: All individuals housed at Illinois River, Big Muddy River, Lawrence, and Menard who were subjected to the 2014 shakedowns, and all prisoners confined to those facilities presently or who may be so confined in the future.

**RESPONSE:  Defendants deny this suit should be certified as a class action.**

63.    The individuals in this class are so numerous that joinder of all members is impractical. According to the IDOC's website, on July 1, 2014, there were 2,073 men housed at Illinois River, 1,878 men housed at Big Muddy River, 2,367 men housed at Lawrence, and 3,757 men housed at Menard.

**RESPONSE:  Defendants deny that this suit should be certified as a class action. Defendants deny any offender was subjected to the type of shakedown outlined or described in this complaint, and therefore deny there is a class of individual so numerous that joinder is impractical. Defendants lack knowledge at this time to admit or deny the allegations regarding the number of offenders housed within the stated facilities on July 1, 2014.**

64.     There are questions of law and fact common to the claims of the Class. Among these common questions are:

a.     Whether the strip search as conducted as Illinois River violated prisoners' rights under the Eighth Amendment;

b.     Whether Defendants violated the constitutional rights of the prisoners by forcing them to march with their heads on the backs or buttocks of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks;

c.     Whether Defendants violated the constitutional rights of the prisoners by violently forcing their heads into the backs of the prisoners ahead of them in line; and

d.     Whether forcing prisoners to stand in stress positions for several hours constituted cruel and unusual punishment.

**RESPONSE:  Defendants deny that this suit should be certified as a class action. Defendants state the instant claim requires significant individualized assessments of facts as applied to each purported class member.  Defendants deny common questions of law or fact predominate among the purported class members.  Defendants deny the searches were conducted in the manner alleged within this complaint as inferred in paragraph 64. Defendants deny any of the statements in subparts (a), (b), (c), or (d) present common questions of law or fact.**

65.     Plaintiffs' claims are typical of the claims of the Class. Mr. Ross was a prisoner at Illinois River, Mr. Tolliver and Mr. Smith were prisoners at Menard, Mr. Hamilton and Mr. Watts were prisoners at Big Muddy, and Mr. Verser and Mr.  Dunmore were prisoners at

Lawrence. All were subjected to the abusive and inhumane shakedown executed by Defendant Orange Crush Officers. Their treatment during the shakedown in late April 2014 is typical of other prisoners throughout Illinois River, and at the other facilities where the Orange Crush team conducted these abusive shakedowns. They seek to prove that the tactics employed by Defendants in conducting the shakedown violated the constitutional rights of the Class, and to obtain an injunction prohibiting Defendants from inflicting that abuse during future searches.

**RESPONSE: Defendants deny the allegations in paragraph 65. Defendants deny that this suit should be certified as a class action.**

66.     Demetrius Ross, Jonathan Tolliver, Kevin Hamilton, Glen Verser, Zachary Watts, James Dunmore, and Ronald Smith will fairly and adequately represent the interests of the Class. They have retained skilled counsel with experience in class actions, and constitutional and prisoners' rights litigation.

**RESPONSE: Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 66 regarding the stated skill of Plaintiff's counsel. Defendants deny the remainder of the allegations in paragraph 66.**

67.     The questions of law and fact common to the Class predominate over any individual issues. In addition, a class action would be the fairest and most efficient way to adjudicate the Class members' claims.

**RESPONSE: Defendants deny the allegations contained in paragraph 67.**

### COUNT I
### 42 U.S.C. § 1983 – Cruel & Unusual Punishment (Eighth Amendment)

68.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

**RESPONSE: Defendants re-state and incorporate the responses provided to each paragraph of the complaint.**

69.     As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on <u>Plaintiffs</u> and other prisoners similarly situated to him. They did so intentionally, wantonly, and/or with malice.

**RESPONSE:  Defendants deny the allegations contained in paragraph 69.**

70.     Alternatively, Defendants knew the risk of harm that their misconduct posed to those prisoners and nevertheless acted with deliberate indifference in executing the shakedowns at Illinois River, Big Muddy River, Lawrence, and Menard.

**RESPONSE:  Defendants deny the allegations in paragraph 70.**

71.     As a result of Defendants' unjustified and unconstitutional conduct, <u>Plaintiffs</u> and other prisoners similarly situated to him suffered pain, emotional distress, and injuries.

**RESPONSE:  Defendants deny the allegations in paragraph 71.**

72.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to the rights of <u>Plaintiffs</u> and other prisoners similarly situated to <u>them.</u>

**RESPONSE:  Defendants deny the allegations in paragraph 72.**

73.     The injuries of <u>Plaintiffs</u> and other prisoners similarly situated to <u>them</u> were proximately caused by the policies and practices of the IDOC Defendants.

**RESPONSE:  Defendants deny the allegations in paragraph 73.**

74.     On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown at Illinois River pursuant to a policy or practice implemented and overseen by Defendant Yurkovich and other IDOC supervisors regarding shakedowns at IDOC facilities. Accordingly, Defendant Yurkovich, who was responsible for supervision and oversight of the Orange Crush team, directly encouraged the very type of misconduct at issue in

this case, failed to provide adequate training and supervision of Defendant Orange Crush Officers, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Yurkovich violated the rights of <u>Plaintiffs,</u> and other prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE: Defendants deny the allegations in paragraph 74.**

75. On information and belief, Defendants Greg Gossett, Zach Roeckeman, Stephen Duncan, Kim Butler, and Joseph Yurkovich had notice of widespread policies and practices of Defendant Orange Crush Officers and other members of the Orange Crush team, pursuant to which prisoners were subjected to unconstitutional and tortious acts of violence and humiliation, as described more fully above. Despite knowledge of these problematic policies and practices, Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich did nothing to ensure that the prisoners at their facilities were treated humanely and in accordance with the rights afforded to them by the United States Constitution. These widespread policies and practices were allowed to flourish because Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of Orange Crush team members. In this way, Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich violated the rights of <u>Plaintiffs,</u> and other prisoners similarly situated to <u>them,</u> by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE: Defendants deny the allegations in paragraph 75.**

76. The above-described policies and practices were able to exist and thrive because Defendants Gossett, Roeckeman, Duncan, Butler, and Yurkovich were deliberately indifferent to the problem, thereby effectively ratifying it.

**RESPONSE: Defendants deny the allegations in paragraph 76.**

77. The injuries of <u>Plaintiffs</u> and those similarly situated to <u>them</u> were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

**RESPONSE: Defendants deny the allegations in paragraph 77.**

78. Defendants continue to this day to perform shakedowns at IDOC facilities, including Illinois River, Big Muddy River, Lawrence, and Menard, using the unconstitutional and cruel methods described more fully above. Accordingly, <u>Plaintiffs,</u> on behalf of <u>themselves</u> and all others similarly situated to him, seek injunctive relief from this Court to stop the continuing constitutional violation.

**RESPONSE: Defendants deny the allegations in paragraph 78.**

79. <u>Plaintiffs,</u> on behalf of <u>themselves</u> and all similarly situated prisoners, also seek actual and punitive damages.

**RESPONSE: Defendants deny the allegations in paragraph 79.**

## COUNT II
### 42 U.S.C. § 1983 – Conspiracy

80. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

**RESPONSE: Defendants re-state and incorporate their answers to each paragraph of the complaint.**

81.     Defendants reached an agreement among themselves to deprive the prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard (including Plaintiffs) of their constitutional rights and to protect one another from liability for depriving the prisoners of their rights, all as described in the various paragraphs of this Complaint.

**RESPONSE:  Defendants deny the allegations in paragraph 81.**

82.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**RESPONSE:  Defendants deny the allegations in paragraph 82.**

83.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to the rights of Plaintiffs and other prisoners similarly situated to them.

**RESPONSE:  Defendants deny the allegations in paragraph 83.**

84.     As a direct and proximate result of the illicit prior agreement referenced above, the rights of the prisoners at Illinois River, Big Muddy River, Lawrence, and Menard (including Plaintiffs) were violated and they suffered injuries, including pain, suffering, and emotional distress.

**RESPONSE:  Defendants deny the allegations in paragraph 84.**

85.     These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

**RESPONSE:  Defendants deny the allegations in paragraph 85.**

86.     Defendants continue to this day to conspire to deprive <u>Plaintiffs,</u> and other prisoners similarly situated to <u>them,</u> of their constitutional rights and to protect one another from liability for the deprivation of those rights, all as described in the various paragraphs of this Complaint. Accordingly, <u>Plaintiffs,</u> on behalf of <u>themselves</u> and all others similarly situated to <u>them,</u> seek injunctive relief from this Court to stop the continuing constitutional violation.

**RESPONSE:  Defendants deny the allegations in paragraph 86.**

87.     <u>Plaintiffs,</u> on behalf of <u>themselves</u> and all similarly situated prisoners, also seek actual and punitive damages.

**RESPONSE:  Defendants deny the allegations in paragraph 87.**

**COUNT III**
**42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)**

88.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

**RESPONSE:  Defendants re-state and incorporate their responses to each paragraph of the complaint.**

89.     As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of the constitutional rights of the prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard (including <u>Plaintiffs)</u> as set forth above had they been so inclined. They failed to do so.

**RESPONSE:  Defendants deny the allegations in paragraph 89.**

90.     Defendants' actions were undertaken intentionally, with malice, and/or with reckless indifference to the rights of the prisoners housed at these facilities.

**RESPONSE:  Defendants deny the allegations in paragraph 90.**

91.     As a direct and proximate result of Defendants' misconduct, the rights of

Plaintiffs, and other prisoners similarly situated to them, were violated and they suffered injuries,

including pain, suffering, and emotional distress.

**RESPONSE:  Defendants deny the allegations in paragraph 91.**

92.     Plaintiffs' injuries, and the injuries of those prisoners similarly situated to them,

were caused by employees of the IDOC, including but not limited to the individually named

Defendants, who acted pursuant to the policies and practices described more fully above.

**RESPONSE:  Defendants deny the allegations in paragraph 92.**

93.     Plaintiffs, on behalf of themselves and all similarly situated prisoners, seeks actual

and punitive damages for Defendants' violation of the constitutional rights of the prisoners at

Illinois River, Big Muddy River, Lawrence, and Menard.

**RESPONSE:  Defendants deny they are liable to plaintiffs or any other prisoner.**

### COUNT IV[1]
### 42 U.S.C. § 1983 – Prison Rape Elimination Act

94.     Plaintiffs incorporates each paragraph of this Complaint as if fully restated here.

95.     By executing and encouraging the shakedowns described more fully above,

Defendants have violated and continue to violate several provisions of the Prison Rape

Elimination Act National Standards, 28 C.F.R. § 115, promulgated by the United States Attorney

General pursuant to the Prison Rape Elimination Act, 42 U.S.C. § 15607.

96.     Defendants have conducted and continue to conduct cross-gender strip searches of

Plaintiffs and all similarly situated prisoners, in violation of 28 C.F.R. § 115.15. There are no

exigent circumstances present during these shakedowns to justify cross-gender strip searches.

---

[1] Count IV has been dismissed with prejudice and therefore no response is required.   To the extent a response is
required, defendants deny.

97.     Despite several prisoners' repeated reports of the sexual abuse and harassment that they have suffered and continue to suffer, Defendant <u>Baldwin</u> refuses to conduct any administrative or criminal investigation into the misconduct committed by Defendant Orange Crush Officers, in violation of 28 C.F.R. §§ 115.22 and 115.71.

98.     On information and belief, Defendant <u>Baldwin</u> has failed and continues to fail to provide adequate training to Defendants and other IDOC staff on any IDOC policy prohibiting sexual abuse and sexual harassment, in violation of 28 C.F.R. § 115.31.

99.     Defendant <u>Baldwin</u> refuses to provide a proper channel for prisoners to report the sexual abuse and harassment that they suffer to any public or private entity not part of the IDOC, in violation of 28 C.F.R. § 115.51. He similarly refuses to provide a proper channel for prisoners to report that sexual abuse and harassment privately within the IDOC.

100.    Instead, when prisoners like <u>Plaintiffs</u> complain about the sexual abuse and harassment that they are suffering, their complaints are referred to the same Defendants who perpetrated the abuse and harassment, in violation of 28 C.F.R. § 115.52.

101.    On information and belief, none of the Defendants has been disciplined for the sexual abuse and harassment that they perpetrated on <u>Plaintiffs</u> and other prisoners subjected to the same sexual abuse and harassment, in violation of 28 C.F.R. § 115.76.

102.    <u>Plaintiffs</u> and other prisoners similarly situated to <u>them</u> have been denied access to medical care, in violation of 28 C.F.R. § 115.82.

103.    In sum, Defendant <u>Baldwin</u> has grossly failed to protect prisoners like <u>Plaintiffs</u> from the sexual abuse and harassment that they have suffered and continue to suffer at the hands of the Orange Crush team. This abuse is precisely the same type of misconduct that the Prison

Rape Elimination Act sought to eliminate. Accordingly, <u>Plaintiffs,</u> on behalf of <u>themselves</u> and all others similarly situated to him, seek injunctive relief from this Court to require Defendants to comply with the Prison Rape Elimination Act National Standards.

## COUNT V
### Intentional Infliction of Emotional Distress

104.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

**RESPONSE:  Defendants re-state and incorporate their responses to each paragraph of the complaint.**

105.     In the manner described more fully above, Defendants engaged in extreme and outrageous conduct. Those actions were rooted in an abuse of power or authority.

**RESPONSE:  Defendants deny the allegations contained in paragraph 105.**

106.     Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

**RESPONSE:  Defendants deny the allegations contained in paragraph 106**.

107.     Defendants' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to the rights of the prisoners housed at Illinois River, Big Muddy River, Lawrence, and Menard.

**RESPONSE:  Defendants deny the allegations contained in paragraph 107.**

108.     The misconduct described in this Count was undertaken by Defendants within the scope of their employment.

**RESPONSE:  Defendants deny the allegations contained in paragraph 108.**

109. As a direct and proximate result of this misconduct, <u>Plaintiffs,</u> and other prisoners similarly situated to <u>them,</u> experienced injuries, severe emotional distress, and suffering.

**RESPONSE: Defendants deny the allegations contained in paragraph 109.**

## Affirmative Defenses

### A. Qualified Immunity

At all times relevant to Plaintiffs' claims, the Defendants acted in good faith in the performance of their official duties without violating clearly established constitutional rights. Defendants are protected from liability by the doctrine of qualified immunity.

### B. Eleventh Amendment Sovereign Immunity

Plaintiff's claims for money damages against Defendants in their official capacities are precluded by the Eleventh Amendment, which bars a damages action in federal court against a State or a State official sued in his or her official capacity.

Plaintiffs' requests for injunctive relief are also barred by the Eleventh Amendment, which precludes the award of injunctive relief against a state actor absent a showing of an ongoing constitutional violation.

### C. Exhaustion

Plaintiff filed this lawsuit concerning prison conditions while in the custody of the Illinois Department of Corrections and failed to properly exhaust administrative remedies as to all claims prior to filing his suit. Plaintiff is therefore barred from continuing with certain claims by 42 U.S.C. 1997e(a).

### D. State Sovereign Immunity

Because Defendants acted in the performance of their official duties, within the scope of their employment, and without malicious intent, Plaintiff's state law tort claims are barred by

sovereign immunity in Federal Court and are required to be brought in the Illinois Court of Claims.

### E. Public Official Immunity

Because, at all times relevant to Plaintiff's complaint, Defendants were performing uniquely governmental duties without malice, Defendants are entitled to public official immunity for claims based on conduct that was a good-faith exercise of governmental or discretionary duties.

### Jury Demand

Defendants demand a trial by jury on all triable issues.

WHEREFORE, Defendants respectfully request that this honorable Court enter judgment in their favor and deny all relief sought by Plaintiff.

Respectfully submitted,

ROBERT ADAMS, et al.,

Defendants,

Susannah J. Price, #6316973
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 557-7081 Phone
(217) 524-5091 Fax
Email: sjprice@atg.state.il.us

LISA MADIGAN, Illinois Attorney General,

Attorney for Defendants,

By:  s/Susannah J. Price
SUSANNAH J. PRICE
Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

DEMETRIUS ROSS, #K52284,      )
                                           )
                Plaintiff,      )
                                           )
     -vs-                   )         No. 15-309-SMY-SCW
                                         )
GREG GOSSETT, et al.,        )
                                         )
             Defendants.   )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2016, the foregoing document, *Answer to Plaintiff's Second Amended Complaint,* was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Sarah Grady | sarah@loevy.com |
| Mike Kanovitz | mike@loevy.com |
| Jon I. Loevy | jon@loevy.com |
| Alan Mills | alanmills@comcast.net |

Respectfully Submitted,

  s/ Susannah J. Price
Susannah J. Price, #6316973
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 557-7081 Phone
(217) 524-5091 Fax
E-Mail:  sjprice@atg.state.il.us