1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ILLINOIS
2

3    DEMETRIUS ROSS, et al.,        )
                                    )
                  Plaintiff,        )
4                                   )
        vs.                         ) No. 15-cv-00309-SMY-SCW
5                                   )
     GREG GOSSETT, et al.,          )
6                                   ) July 20, 2017
                  Defendant.        )
7

8           TELEPHONE DISCOVERY DISPUTE CONFERENCE
          BEFORE THE HONORABLE STEPHEN C. WILLIAMS
9             UNITED STATES MAGISTRATE JUDGE

10                 APPEARANCES (all via phone)

11   **FOR PLAINTIFFS:**            Sarah C. Grady, Esq.
                                    Sam Heppell, Esq.
12                                  Loevy & Loevy
                                    311 N. Aberdeen St.
13                                  Chicago, IL  60607
                                    (312) 243-5900
14

15   **FOR DEFENDANTS:**           Emma D. Steimel, Esq.
                                    Illinois A.G.'s Office
                                    500 South Second St.
16                                  Springfield, IL  62701
                                    (217) 785-4555
17

                                    Matthew T. Fletcher, Esq.
18                                  Illinois A.G.'s Office
                                    100 W. Randolph, 12th Floor
19                                  Chicago, IL  60601
                                    (312) 814-3889
20

     **REPORTED BY:**              Laura A. Esposito, RPR, CRR
21                                  Official Court Reporter
                                    U.S. District Court
22                                  750 Missouri Avenue
                                    East St. Louis, IL  62201
23                                  (618) 482-9481
                                    Laura_Esposito@ilsd.uscourts.gov
24

          Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.

```
 1        (Court convened)

 2            THE COURT:  We're on the record in Ross vs.

 3   Gossett, and we're here for a follow-up, or another

 4   discovery dispute conference on ongoing issues, case

 5   15-309-SMY-SCW.

 6            Laura, can you hear me okay?

 7            COURT REPORTER:  Yes, Judge.

 8            THE COURT:  So we've got Sarah Grady and

 9   Sam Heppell on for the plaintiffs; Emma Steimel, who's going

10   to be entering her appearance tomorrow, she's admitted in

11   the district, she's with the Attorney General's office; and

12   Matthew Fletcher is also on.

13            So the first issue that the Court's going to

14   address -- we hadn't tee'd it up necessarily for today but

15   it's an older issue.  The Court had been provided with

16   unredacted copies of documents that privilege claims were

17   being made on the basis of primarily two things:  One,

18   private information, some of it being medical information,

19   and then security information.

20            So we're going to start -- and many of these

21   categories of documents are repeated, so hopefully the

22   Court's rulings will dictate what happens with the

23   unredacted documents I have not yet been provided.

24            So starting on page 24 of the privilege log, the

25   redactions for documents 10-715 and 10-720 listing inmates
```

1   receiving medical care, this was for a month.  There's

2   nothing on there that would really be of evidentiary value.

3   There's names of inmates but there's nothing regarding dates

4   when they were, so it's not going to be helpful in that

5   particular interest.  So balancing the interest -- and this

6   is a finding the Court makes with this same sort of document

7   again, but the redactions are appropriate for 10-715 and

8   10-720.

9        Now, the next document is 10-735, and it goes to

10   10-736, inmate discipline.  The Court agrees, there's no --

11   there really no privilege to this document at all.  Now, to

12   the extent that there's concern about other inmates or

13   putative class members or named plaintiffs having eyes on on

14   other inmates' discipline, that's a legitimate concern, but

15   otherwise there's no privilege, so the Court overrules that

16   objection and that document should be produced and shall be

17   produced in unredacted form pursuant to the eyes only

18   protective order.

19        As to document 10-752, we've got staff injuries.

20   Again, this is information -- because there's at least some

21   degree of medical information, although it's not a medical

22   document per se, the Court could envision there may again be

23   some concern with the plaintiffs themselves seeing it, but

24   the eyes only protection is sufficient.  And so, again, in

25   evaluating, balancing the interests here, that document the

1    Court is being ordered produced in unredacted form pursuant

2    to the eyes only protective order.

3          Any questions so far?

4          **MR. FLETCHER:**  No, Your Honor.

5          **MS. GRADY:**  Not from plaintiff, Your Honor.

6          **THE COURT:**  Okay.  Next up is document 10-755.  The

7    Court sees this -- again, it's sensitive information as it

8    relates to the alleged perpetrator, but that can be

9    protected by the eyes only protective order.  The Court's

10   real concern is identification of the victims, which is

11   highly sensitive when we're talking about these allegations

12   of sexual assault, and I'm not really -- I can't identify

13   the evidentiary value in identifying the victims, at least

14   not at this stage, and so the Court proposes that -- I'll

15   let you weigh in on this, Ms. Grady, but I think that they

16   should be produced; however, the victim identities can

17   continue to be redacted, and yet it would still be for eyes

18   only.

19         Now I'll let you weigh in on that.  And this is

20   all -- I mean if something comes up during the case that

21   suggests that a particular victim's identity is important,

22   we can revisit the issue.  Ms. Grady?

23         **MS. GRADY:**  Your Honor, I think that that's fine by

24   us for all sexual assaults that predate the shakedowns.  We

25   may take a different position for the month of the shakedown

1    but I agree with that approach for this particular injury

2    and all.

3              **THE COURT:**  I won't have a different view of it for

4    the shakedowns either at this stage but, again, we can

5    revisit that.  Once you look at the documents, if you think

6    there's some particular ones that are important, we can

7    revisit that, okay?  And you know these rulings are without

8    prejudice to you revisiting that.

9              **MS. GRADY:**  Okay.  That sounds like a fine

10   approach, Your Honor.  We don't object to that.

11             **THE COURT:**  Okay.  The list of employees on medical

12   leave in document 10-756, you know, these are folks that

13   just aren't there, and so the -- there doesn't seem to be

14   any evidentiary value to that, and the Court views those

15   redactions as appropriate in that they relate to private

16   information that is not going to be helpful to the case, so

17   that privilege redaction is sustained.  As to 10-757, same;

18   10-772, same.  So those redactions are all sustained.

19             Now, getting to documents 10-782, 10-789, and

20   10-790, these are the same types of documents as on page 24

21   that 10-735 through 10-746 and 10-752.  The Court sees no

22   privilege as to the disciplinary records, and balancing the

23   interests, the employee injuries, which are not very

24   specific in nature anyway, they're not really medical

25   documents, the Court is going to order all of those

1    documents produced unredacted as eyes only documents.  Quite

2    frankly, all of these productions that relate to what's on

3    this privilege log, when the Court orders them produced it's

4    pursuant to the attorney's eyes only.  I view that as a

5    protection that should still apply as to all of these

6    unredacted documents unless we determine otherwise later.

7           10-792, the same ruling applies.  You can continue

8    to redact as to the victims.  The 11-016, 11-021, 11-022,

9    those redactions are all appropriate for the same reasons

10   previously stated relating to the same type of document.

11   The redactions for 11-035 and 11-037 through 50, those

12   should be produced in unredacted form for the same reasons

13   stated previously, attorneys' eyes only.  11-53, you can

14   redact the victims; otherwise produce.  11-65 and 11-071,

15   those documents are properly redacted.

16          11-8083 and 11-095 shall be produced unredacted for

17   the reasons previously stated, pursuant to the eyes only

18   protective order.  11-099, redaction of victims is okay;

19   otherwise, produce unredacted.  11-172, 177, 178, the

20   redactions are appropriate.  11-189 and 11-201 should be

21   produced unredacted pursuant to protective order.

22          11-205 can be produced with the victims' names

23   contained redacted.  Now, we have an interesting one.

24   11-319 and 11-378, the Court looks at this and there's

25   nothing -- these are just numbers.  What is the possible

1    privilege that's being asserted here?  There's nothing

2    indicating in these documents who the people are that are

3    participating in these programs.  It's just numbers.

4          MR. FLETCHER:  Your Honor, do you want me to weigh

5    in there or --

6          THE COURT:  Yeah.  Sorry, I should have asked

7    specifically.  That was a pause that was intended to be a

8    question.  Can you tell me how there's any danger here?

9          MR. FLETCHER:  So, Your Honor, I'm going solely off

10   of what is on our privilege log, and it says that there are

11   inmate names and IDOC numbers that would identify them as

12   participants in a particular IDOC program and that there's

13   also employee names and personal information on there, and

14   that's for 11-319 to 11-378.

15         THE COURT:  Yeah, I didn't see it.

16         MR. FLETCHER:  Okay.

17         THE COURT:  Maybe I missed something, but if you

18   can -- you know, if there's actually personal information,

19   personal identifiers, I'm willing to look at that again.

20   And you guys can, you know, send me an e-mail, CC the other

21   side, and point me to the page number, and I'll revisit it

22   solely as to that, if there's actual identifiers, but I

23   didn't see them.  It looked like just numbers to me.  Maybe

24   I missed it though.

25         MS. GRADY:  Our read was the same as you.  And, in

1    fact, at one point I believe Ms. Price told either us or the

2    Court -- I think it was just us -- that these may have been

3    placeholders for numbers.  I'm not very certain because they

4    look like redactions to me but I certainly don't see any

5    place where there's a name or number either.

6          **THE COURT:**  No.  Again, so unless there's actually

7    a personal identifier that you can point me to that I

8    missed, Mr. Fletcher, the Court's ordering it produced.

9          **MR. FLETCHER:**  Understand.

10         **THE COURT:**  Okay.  Moving on.  Okay.  So the

11   redactions relating -- I'm on page 31, 11-968.  This one's

12   slightly more complicated.  You've got different lists of

13   inmates.  There's actually identifying information about

14   inmates receiving medical treatment.  There is also the

15   dates of hospitalizations that the Court sees as potentially

16   critical to identifying whether or not these individuals

17   are, in fact, potential witnesses.  And aren't we talking

18   about this one with a -- isn't this a relevant timeframe, or

19   no?

20         **MR. FLETCHER:**  Your Honor, can I just clarify, what

21   Bates number are we on?

22         **THE COURT:**  11-968, page 31.  Let's make sure

23   everybody's there.

24         **MS. GRADY:**  Your Honor, to your question about the

25   relevance of the timeframe, this is the month that the

1   shakedowns occurred at Illinois River where this report is

2   from.

3         **THE COURT:**  That's what I was thinking and that's

4   why, to me, those dates of hospitalizations --

5   unfortunately, you already left, I think in this instance,

6   unredacted what they were going there for.  So, you know, it

7   would be easier if it was just so and so's at the hospital,

8   redact why they're there.  But I think what you did is you

9   left unredacted why they were there and redacted their

10  names, so -- but that's spilled milk.  And I understand why

11  you did it that way when you did it, but now it's kind of --

12  we can't unring that, but I think the identities are very

13  important to establishing, all right, this person may not

14  have even been around, so that's helpful to everybody to

15  know that with the volume of witness depositions that are

16  going to be done here.

17        All right.  So the Court's ruling is that those

18  identities of individuals who are shown, particular dates

19  are shown on those documents, those identities need to be

20  disclosed, attorneys eyes only; otherwise, the redactions

21  are appropriate.  So there are portions of those documents

22  where it doesn't show a particular date where someone's

23  gone.  That's okay.  You can continue with those redactions.

24  And the same is true for 11-969.

25        Okay.  Now, on page 32, inmates -- redactions on

```
 1   11-980 are fine.  It doesn't give us any clue as to when
 2   these procedures were performed, so it's not helpful.
 3   11-993, same ruling:  Victim identification can be redacted;
 4   otherwise, produced.  12-019, same ruling, as it would
 5   relate to document 11-968.  Where there is a date of
 6   hospitalization, you must provide the unredacted name for
 7   attorneys eyes only but you can -- otherwise, the redactions
 8   are appropriate.  Redactions on 12-030 are fine.  12-047,
 9   you can redact the victim; otherwise, unredact.  12-069,
10   same ruling.  There are dates of hospitalizations that need
11   to be revealed; otherwise, the redactions are appropriate.
12   So where a date is identifiable to an inmate, the inmate's
13   name and date has to be disclosed.  12-080 is properly
14   redacted.  12-101, 12-160, this is the same as a previous
15   document where we -- the Court's view is we don't have names
16   of particular participants or employees' personal
17   information identified, so those have to be produced;
18   however, again, Mr. Fletcher, same applies for this
19   document.  If you can show the Court where I missed that
20   there is a personal identifier, we can revisit as to that
21   particular redaction.
22         The Court did not have documents 12-163, 12-183, or
23   12-206, and I previously skipped also from, on page 28,
24   11-393 all the way to 11-945.  I did not review those
25   because I didn't have the unredacted copies.
```

1          Okay.  Where are we at now?  12-271, victim ID can

2   be redacted.  Same with 12-300.  12-302, it was -- there's a

3   prisoner's name, and the Court does not see what the

4   privilege is here to be asserted.  And although it shouldn't

5   be disclosed to plaintiffs, attorneys' eyes only is an

6   adequate protection.  Same with 12-304.  The redactions at

7   12-343 and 12-308 are fine.  Oh, I'm sorry, 12-343.  We're

8   not sure what is going on with 12-308.  It looks like it was

9   redacted and nobody can find the unredacted copy.  I'll let

10  you all talk about that further, but obviously I didn't

11  review it, an unredacted copy that doesn't exist.

12          Now we skip the next -- we're back to topics that

13  the Court had were found on page 36, 12-599 and 12-658.

14  Again, there's no personal identifiers.  That should be

15  produced unredacted unless personal identifiers can, in

16  fact, be identified.

17          The redactions at 12-661 are fine.  These are

18  inmate deaths associated with medical care, irrelevant to

19  this case.  Same with 12-664.  And so 12-669, 670, 671, and

20  672, to the extent that it identifies the name with a date,

21  that should be produced; otherwise, the redactions are okay.

22  12-693, 694 should be produced.  12-696, 697 should be

23  produced.  The redactions for 12-715, 12-718, and 12-723 are

24  fine.  I think that is -- those are all the documents that

25  the Court received in unredacted form.  Hopefully that will

```
1    provide a basis of resolving any other disputes once that

2    production is made, and we'll give you 14 days to make the

3    production.

4              Mr. Fletcher, does that work?

5         MR. FLETCHER:  Yes, Your Honor.

6         THE COURT:  Okay.  Great.

7         MR. FLETCHER:  Your Honor, if I could -- at this

8    point I think I'm going to order the transcript just to make

9    sure -- I've been taking notes, but I'm going to order

10   today's transcript.

11        THE COURT:  Okay.

12        MR. FLETCHER:  So that we can cross-check it with

13   what's on the record today.

14        THE COURT:  Yeah.  And we'll summarize this, too.

15   Probably tomorrow we'll enter an order summarizing it.

16        MR. FLETCHER:  Perfect.

17        THE COURT:  But we'll list these.

18             Okay.  All right.  Let's now move on to the issues

19   that were still out there after our last hearing.  We talked

20   last time about issues relating to communications by defense

21   counsel with class members, and it was essentially tabled.

22   We were going to begin some briefing.  Plaintiffs opted to

23   wait 'til they saw the discovery.  And so was the production

24   made of the actual interviews with videos?

25        MR. FLETCHER:  Your Honor, we did turn over all but
```

 1    one of the videos.  I ran them over to Ms. Grady's office on

 2    a flash drive, I can't remember the date, a couple weeks

 3    ago.  But the one outstanding video was just not included in

 4    the list of things to be produced, and it was an oversight

 5    on our part merely because the video is about two minutes

 6    long, it's involving I think an inmate by the name of

 7    Jerome Franklin.  Our attorney, who was speaking with

 8    Mr. Franklin, interviewing him, he was reading from a

 9    prepared statement, and then in the middle of that the video

10    cut out about two minutes in, so it wasn't like the others,

11    and I think it was just a totally innocent oversight on our

12    part, and we're going to correct it today, send that over to

13    Ms. Grady along with some other Bates stamped documents that

14    we had previously produced but that for whatever reason they

15    were having trouble locating.  We're just going to re-send

16    those over to their office today.  So they have the main

17    corpus of the videos.

18              *THE COURT:*  Okay.  All right.  So --

19              *MS. GRADY:*  Your Honor, if I could weigh in for a

20    minute.  This is Sarah Grady for the plaintiffs.

21              We did receive the videos.  I agree with mat that

22    one video was likely an oversight and we don't see any

23    problems getting that, but we are in dispute about further

24    discovery that we are owed on this issue.  They produced

25    simply a list of people that they interviewed that did not

1    reflect when those people were interviewed, who conducted

2    the interviews, or what the substance of the communications

3    were like they had promised when they said that they would

4    supplement discovery.  We have an interrogatory that we sent

5    to you before the last discovery conference that asks for

6    each communication to provide details.  They refused to do

7    that.  They have basically said, here's a list without any

8    dates or locations or contents, and they've refused to

9    supplement their discovery.

10          So, you know, we think that the supplemental

11   discovery is, frankly, incredibly necessary to this issue,

12   both to the question of the defense counsel's ability to

13   contact putative class members in the future and also simply

14   because it's part of their discovery obligations.  They

15   didn't object to this interrogatory, they haven't seasonably

16   supplemented it, and we'd like some responses.  They did

17   produce a script but they have refused to tell us whether

18   they use that script in all interviews or just some of them.

19          **MR. FLETCHER:**  Your Honor, if I could respond?

20          **THE COURT:**  Yeah.

21          **MR. FLETCHER:**  So that's not my understanding of

22   what we had agreed to.  I know we had the dispute about --

23   with Ms. Grady about exactly what we were required to

24   disclose.  And we had met and conferred about this, I think

25   last Friday, and we had reached some agreement on this, that

1    we were going to update our privilege log with some

2    information about dates and locations of interviews and who

3    conducted them.  So it's not my understanding that we've

4    refused to completely disclose any information about these

5    interviews.  I think this is something that we can figure

6    out without the Court's -- I think if we -- maybe there's

7    been a miscommunication but I think this is something that

8    we can figure out without the Court's intervention.

9         *THE COURT:*  Well, maybe so, but so -- but let me

10   get your position on it just because if there's

11   miscommunication we want to clarify where that lies now so

12   that you can crystalize your communications going forward

13   and identify whether or not there is, in fact, a dispute.

14        *MR. FLETCHER:*  Certainly.

15        *THE COURT:*  So what I'm hearing is that you did not

16   believe or intend to represent that you were going to

17   produce all information concerning these interviews, is that

18   correct?

19        *MR. FLETCHER:*  That's correct.  I think that if

20   there was any notes taken by the attorney who conducted the

21   interview, those would be protected by the work product

22   privilege.  But, you know, dates and times, obviously we

23   don't think that there's a privilege as to the date and the

24   time of the interview or the location, you know, the

25   facility that it was taken at.  So those things we can

 1    certainly supplement.  I think one additional --

 2         **THE COURT:**  Well, if you're claiming privilege to

 3    them and we know it's out there, I mean at a minimum the

 4    Court would have -- you know, I'm not sure the Court

 5    understood it the way you're talking about it, but at a

 6    minimum, given where we were at before, the expectation

 7    would be that there would be a privilege log provided that

 8    would identify each of the communications.  And if you're

 9    claiming a privilege as to the content, the only privilege

10    that could possibly apply, quite frankly, to me obviously

11    does apply is work product.  But then, you know,

12    nevertheless, that has to be identified.

13         **MR. FLETCHER:**  Right.  And so I think the only

14    disagreement between the parties is then -- I think the

15    plaintiffs seem to be arguing that we've somehow waived that

16    privilege and we would be arguing that we haven't.

17         **THE COURT:**  Okay.

18         **MS. GRADY:**  Your Honor, if I could just weigh in

19    here on our position.

20         I think that we are identifying and I think the

21    defendants are completing two issues:  The privilege log

22    issue and the privilege over documents like notes, and

23    there's the response to an interrogatory which seeks

24    information.  Defendants -- Miss Price, before she left the

25    AG's office, told us that they were refusing to supplement

1  an interrogatory which asked, not for production of

2  documents, but instead details of information about when

3  communications occurred, where they occurred, who all was

4  present, and what the substance of the communication was.

5  So there has been no supplement either to indicate that

6  there's an objection to provide that information or what

7  possible basis they could have to object to providing that

8  information.

9       *THE COURT:*  I mean he's saying that they're

10  objecting, so whether it's -- I mean there's a claim of

11  privilege.  It applies to the interrogatory, a part of the

12  interrogatory, and that would be to the substance of the

13  conversation.

14       *MS. GRADY:*  Well, that has not been identified in

15  their privilege log.

16       *THE COURT:*  Right.  Have they even given you a

17  privilege log on this yet?

18       *MS. GRADY:*  They produced a supplemental privilege

19  log that had three entries that simply said, *Notes from*

20  *interviews held on December 27th, 2016,* and two other dates,

21  but not detailing who created them or what date they were --

22  or where they were created or anything like that.

23       *THE COURT:*  Okay.  So the -- I mean, Mr. Fletcher,

24  you're going to -- you're agreeing that you're going to tell

25  them -- and this certainly, at a minimum, was the Court's

1    understanding:  You're going to tell them the people you

2    talked to and when you talked to them and who was present,

3    right?

4            **MR. FLETCHER:**  Right.  That's my understanding as

5    well.

6            **THE COURT:**  All right.  So that's going to answer

7    all of the questions except for one, what the substance is,

8    right?

9            **MR. FLETCHER:**  That's my understanding as well.

10           **THE COURT:**  Now, you're going to assert that the

11   substance of those conversations is privileged; is that my

12   understanding?

13           **MR. FLETCHER:**  Yes, Your Honor.  Well, I would say

14   that our notes are privileged, and -- well, and the

15   conversations themselves.  I mean you're asking us to

16   disclose basically the interviews that we conducted.

17           **THE COURT:**  Yes, correct.

18           **MR. FLETCHER:**  Yeah.

19           **THE COURT:**  You know, you may want to take a look

20   at the rules.  That would help everybody.  It addresses this

21   squarely.

22           So in any event, so you need to answer the

23   interrogatory, but it sounds like you're going to provide an

24   answer -- if you're going to claim privilege as to the

25   substance, then the privilege log is going to give all of

1    the remaining information.  It would have to.  It would say,

2    here's who it was, here's who was present; in other words,

3    these are the people that were present and were claiming a

4    privilege.  I mean, you know, if you went and talked to

5    somebody, somebody wrote that up in their notes or

6    something, right?

7              **MR. FLETCHER:**  That would be my guess, yes.

8              **THE COURT:**  I mean somebody documented it

9    somewhere.  So they want to know the -- so my point is, the

10   privilege log should contain everything that they're asking

11   and it should answer that question.  And then if you're

12   going to claim a privilege as to the content, then that's

13   what should be noted in there.  And that's notes.  In

14   addition to that, me telling you what the content of the

15   conversation was.  I mean it's going to cover both of those

16   things.

17         As a matter of simplicity, you should make clear:

18   Is there a physical document, some notes, or a report of

19   some sort?  Is there more than one?  Well, then that -- each

20   of those things has to be logged, but the content -- and

21   then you're objecting also to just orally conveying the

22   content of the conversation.  I mean, you know, the

23   privilege means nothing if you can't -- if in answer to an

24   interrogatory you just have to spell out everything that's

25   in your notes.

1          **MR. FLETCHER:**  Right.  I would agree with that,

2     Your Honor.

3          **THE COURT:**  Now, the issue of whether or not you

4     waived it, I'm not deciding that, at least not right now,

5     because that's -- they're saying they were told they were

6     going to give all of this, and so let's, you know, stay

7     tuned.  I'm not sure that that wasn't what was said at the

8     last hearing, quite frankly.  I'm not sure.  It's a

9     complicated question waiver sometimes, but --

10         **MR. FLETCHER:**  And, Your Honor, if I may.  I think

11    when we turned over the videos I thought it would be more

12    apparent.  The -- some of the information that they're

13    seeking, date stamps, individuals who were present, and

14    obviously it's not as apparent to plaintiffs' counsel, and

15    so we are happy to more clearly articulate that in our

16    privilege log.

17         **MS. GRADY:**  Your Honor, the metadata for the video

18    shows they were created in 2012.  It's clear -- it's not

19    clear from the videos at all when they were created.

20         **THE COURT:**  Okay.  You've got to answer the

21    interrogatory with that information that we've just

22    discussed, and in doing so, you may just be able to

23    reference a proper privilege log, but you got to give them

24    that log because if you're objecting to content, that has to

25    be logged.

```
 1              MR. FLETCHER:  Certainly.

 2              THE COURT:  I don't know how else to say it but

 3    that's the only way we crystalize the issue.  They get to

 4    know all that other stuff.  You already told them for sure

 5    that they were going to get that other stuff, and then the

 6    only question is:  Do they get to have you tell them about

 7    the content of the conversations or not?  And there's the

 8    waiver issue and then there's the rule that explicitly tells

 9    you exactly how you go about analyzing that question when it

10    isn't waived because it's not automatic.

11              MR. FLETCHER:  Certainly.

12              THE COURT:  Okay.  So you need to get that to them

13    so that they can get to the bottom of this further.  I guess

14    the question then is:  Were there interviews that were done

15    that aren't video -- that aren't on a video?

16              MS. GRADY:  Yes, Your Honor.  The majority of the

17    interviews were not videotaped.

18              THE COURT:  So I mean that's a big issue then.

19    There's a whole bunch of interviews out there that you still

20    don't know who was talked to.

21              MR. FLETCHER:  Certainly I will.

22              THE COURT:  There is no doubt that the Court was

23    told that you all were agreeing to produce that.

24              MR. FLETCHER:  And it's my understanding that we

25    had produced a list of all the inmates that we had
```

 1    interviewed.

 2          **THE COURT:**  Okay.  But then if you're going to --

 3    but you're making a privilege assertion as to other issues

 4    there, right?

 5          **MR. FLETCHER:**  Certainly.  I think -- I agree with

 6    the Court that obviously we need to supplement the list and

 7    the information that we've already disclosed, and we will do

 8    that pursuant to the Court's instructions and the rules.

 9          **THE COURT:**  Yeah, and the -- okay.  So is 14 days,

10    is that workable?

11          **MR. FLETCHER:**  That is workable.

12          **THE COURT:**  Okay.  Great.

13          Now, are we -- then in the midst of this we've got

14    a couple issues then that relate to that.  Are the

15    plaintiffs going to seek some sort of relief if they feel

16    like there's been some violation of the rules?  And then

17    we've still got percolating the issue of whether or not

18    these interviews were prohibited in the past or should be

19    prohibited in the future; that is, being made without regard

20    to the claim of whether or not these folks are, in fact,

21    represented.  And then related to that we've got the issue

22    of, at what point was an attorney-client relationship

23    established, thereby invoking the attorney-client privilege

24    as to any particular putative class member that's now had

25    communications with plaintiffs' counsel?

1          So the issues are kind of intertwined but I think

2     plaintiffs are making their assertion that the

3     communications were problematic, whether or not any of these

4     people were, in fact, their clients at the time.  It's just

5     based on their status as putative class members.  And you

6     still need a little more information on that; is that right,

7     Ms. Grady?

8          **MS. GRADY:**  That's correct, Your Honor.

9          **THE COURT:**  Okay.  So do you want to just revisit

10    this?  I'm thinking of talking to you all again the third

11    week of August.  In the meantime, you're -- so you're going

12    to get, in two weeks, more information from them and you're

13    going to be disclosing some additional information with

14    supplemental privilege log on August 11th.  Does that work?

15         **MS. GRADY:**  Yes, Your Honor.  I think at that point

16    we will hopefully be ready to ask for a briefing schedule on

17    those motions.  And I'll add that I anticipate by that time

18    we would be ready to ask for, as part of that motion, to

19    also seek to compel documents or information that defendants

20    are contending is privileged.  That would be tee'd up.

21         **THE COURT:**  Yeah, great.  Okay.  Good.  So that's

22    what we will do, we'll be talking about next time.

23         **MS. GRADY:**  Your Honor, if I could raise just one

24    more issue that I think is related to this topic.

25              Essentially we'd like to ask for an order from

```
 1    Your Honor that -- at the last status hearing we discussed
 2    whether it was appropriate for defendants to continue
 3    interviewing putative class members while this issue remains
 4    unresolved.  If I recall correctly, Your Honor, where you
 5    ended up on this was that the defendants should not contact
 6    people for whom a relationship had been asserted in our
 7    privilege log, but that otherwise putative class members who
 8    we had not asserted an attorney-client privilege may be
 9    contacted by defendants.  So we respect that ruling but we
10    are asking at this point for an order from the Court about
11    timely supplements to identify any prisoners who have been
12    interviewed, and I think that the reason we need this order
13    is because it took eight months for defendants to tell us,
14    and, in fact, not until we approached them did they tell us
15    they had conducted any interviews whatsoever.
16            And also, you know, in terms of videos, this Court
17    set a deadline of September -- or July 7th to produce the
18    videos.  We still didn't get them until four or five days
19    later, so I'm concerned about our ability to continue to
20    discover how these interviews are being conducted if there's
21    no order at least regarding timely supplements.
22            THE COURT:  Well, Mr. Fletcher?
23            MR. FLETCHER:  Your Honor, we would disagree with
24    the entry of that order.  I think the rules already require
25    us to be timely in our supplementations of our discovery
```

1    disclosures and our privilege log.  This is -- and this is

2    not --

3          **THE COURT:**  But you haven't been on this because

4    you didn't make a claim of privilege.

5          **MR. FLETCHER:**  I understand that, Your Honor.  I

6    would also point out though that this is not just a one-way

7    issue; that the plaintiffs themselves have been less than

8    diligent in disclosing attorney-client relationships that

9    they maintain they have with these putative class members

10   that that discovery has been outstanding for quite sometime

11   now as well, so --

12         **THE COURT:**  Did you ask them to disclose who they

13   have an attorney-client relationship with at some point?

14         **MR. FLETCHER:**  I believe we did.  We asked them

15   for -- we asked them for supplementations of their privilege

16   log multiple times on various issues.  I recall specifically

17   Ms. Price raising that issue.  And, similarly, we had a lot

18   of --

19         **THE COURT:**  All right.  Look, these are -- you

20   know, when you have an issue, if you think somebody owes you

21   something and they're not giving it to you, then you bring

22   it to the Court's attention.  That's how it works.  And the

23   reason that we have to just say, that's how you do it, is

24   because it's not -- it doesn't work to say, *Well, you know,*

25   *there have been things they didn't do the right way.*  I mean

1    we would never enforce anything.

2          **MR. FLETCHER:**  I understand that, Your Honor, and

3    I'm not trying to excuse our behavior.

4          **THE COURT:**  Okay.  That's not a defense to late

5    disclosures on anyone's part, *Well, I can point to an*

6    *example of a late disclosure*, because everything's different

7    and each issue the Court is going to have to deal with

8    separately unless -- you know, obviously it's a little

9    different if someone is intentionally gaming the system and

10   it's obvious and it's blatant, but, you know, I don't have

11   any reason to believe that that's going on at this point.  I

12   can't say that it isn't but I don't have reason to believe

13   that it is going on.  I just don't.  Everybody is grappling

14   with, it appears at this point, a difficult, voluminous

15   case.

16         So here's what the Court is simply going to do.

17   I'm just going to remind you that you have a duty to

18   seasonably supplement.  And, yes, there is a rule that

19   addresses that.  Because I don't know what you may have that

20   counts, I can't be any more specific than that.  So,

21   Ms. Grady, that's the best I can do right now.  But the fact

22   is, if you've got something to produce, you got to produce

23   it seasonably, and if you're going to make a claim of

24   privilege as to it, then you got to do that seasonably.

25         All right.  What else, Ms. Grady?

1      *MS. GRADY:*  That's all I have on this issue.  I can

2   report that on ESI issues -- if we're ready to move to the

3   next topics.

4      *THE COURT:*  Well, Mr. Fletcher, you ready to move

5   on to ESI?

6      *MR. FLETCHER:*  Yes, Your Honor.  And I'm happy to

7   let Ms. Grady lead off.

8      *THE COURT:*  Okay.

9      *MS. GRADY:*  I have good news.  The parties

10  conferred and there were terms on the 2015 search and I

11  think we are waiting on DoIT to do some of those searches to

12  see whether we can go ahead and pull e-mails or we need to

13  do further narrowing.

14      On the 2014 search we agreed that the next step in

15  the process on that search is to pull unique identifier

16  information so that we can use that information to see

17  whether there are terms that need revising.  And I also was

18  told by Mr. Fletcher that the 22,000 e-mails from the other

19  custodians that they had agreed to go ahead and produce,

20  that those have been generated by DoIT and I believe are now

21  being reviewed.  We'd ask for some deadline for production

22  of those e-mails.

23      *THE COURT:*  Of the 22,000, okay.

24      *MR. FLETCHER:*  So, Your Honor, the 22,000 e-mails

25  have been uploaded into our system and are ready to be

1    reviewed.  What we're doing right now -- so we are going to

2    have reviewers, not only from the attorneys that are working

3    on this case, but throughout our bureau here in Chicago are

4    going to be assisting in the review to speed that process

5    along.  We need to develop -- and we're using instructions

6    that we generated for a previous production in the *Lippert*

7    case.  We're going to use those instructions to prepare a

8    set of instructions for attorneys who are reviewing these

9    documents, and they're going to attack those in portions so

10    that we can start getting documents out to Ms. Grady.

11          So in terms of that, we expect to be reviewing in

12    the next couple weeks, but we're not reviewing right now.

13    It's just -- it's one last hurdle and then we expect a

14    pretty steady stream of documents to be forthcoming.

15          *THE COURT:*  Okay.  So what the Court's expectation

16    is, is if your -- I understand what you're saying.  I'm

17    not -- we addressed previously that I'm not going to allow

18    the let's wait 'til we've got everything, and it sounds like

19    you're not doing that, so the review needs to begin in the

20    next couple of weeks.  And the Court's order is that there

21    should be production by the time we talk again, something.

22    In other words, you know, if you're going to have a portion

23    to produce, great, and that should have occurred.

24          *MR. FLETCHER:*  Understood.

25          Your Honor, with respect to the other e-mails that

```
 1    are still in dispute, particularly the 2015 block of 95,000
 2    e-mails, Ms. Grady was correct in that we've reached an
 3    agreement on search terms, and I recently got some news
 4    back.  We had some questions about how best to structure
 5    those and what -- basically, per Your Honor's instructions,
 6    we went through and -- for example, on the one term of tac',
 7    I think is a perfect example -- it's T-A-C apostrophe.
 8    We've expanded that into multiple search terms of tac, tact,
 9    and tactical.  And then there was some question about
10    whether we need to isolate that term so that we don't get
11    hits on a term like "contact" or "tactile" or other
12    unrelated words, and so I just got word before I jumped on
13    the call on that issue, and so I'll be sending Ms. Grady a
14    list of search terms based on that by the end of the day,
15    and then hopefully we can get that -- you know, once we meet
16    and confer about that, we can get that search running and
17    have a block of e-mails ready to be reviewed or discussed
18    further in the next couple weeks.
19             THE COURT:  Okay.
20             MR. FLETCHER:  In the meantime we'll, of course,
21    also be reviewing the 20,000 that are ready to go.
22             THE COURT:  All right.  Well, that sounds like a
23    good plan.
24             Ms. Grady, anything further?
25             MS. GRADY:  Two issues.  I'll be brief.  One is
```

1    that Your Honor had ordered defendants to report on whether

2    any responses, e-mails -- whether there were any responsive

3    e-mails from personal e-mail accounts for all of the

4    supervisors.  We haven't heard an update on that for a

5    while.  I'd just like to know if there's a deadline or an

6    expectation about when we can get a report on whether there

7    are any responsive e-mails.

8            **THE COURT:**  I don't remember the last order I

9    entered on that, but, Mr. Fletcher, do you have a comment in

10   response?

11           **MR. FLETCHER:**  Yes.  It's my understanding -- hold

12   on one second, Your Honor.

13           Your Honor, out of the, I think it was 40 or 50

14   supervisory personnel that we were tasked with interviewing,

15   we have five remaining that we've had some trouble getting

16   in contact with and interviewing, and so we can either wait

17   and turn over the full list or we can turn over what we have

18   now and figure out the rest as we go along.

19           **THE COURT:**  Yeah, turn over what you have now.  Can

20   you do that within seven days?

21           **MR. FLETCHER:**  Certainly.

22           **THE COURT:**  All right.  And then give them the

23   explanation as to the other five to the extent you're able

24   to do so without violating any privileges, and work through

25   the others, those five, and you guys can give me an update

 1    on that next time.

 2              **MR. FLETCHER:**  Your Honor, one last thing to update

 3    the Court.

 4              **THE COURT:**  Hang on.  Let me make sure.  Ms. Grady,

 5    does that address the issue?

 6              **MS. GRADY:**  That does address the issue.  The last

 7    one they had is the estates issue, so --

 8              **THE COURT:**  Right.  We'll get to that in a sec

 9    because we've got the pending motion on that, which the

10    Court's going to -- well, the Court grants the motion, so

11    we'll substitute for --

12              **MR. FLETCHER:**  Chamness.

13              **THE COURT:**  Right.

14              **MS. GRADY:**  I believe it's Chamness who's going to

15    be substituted, Your Honor.

16              **THE COURT:**  So that motion's granted.  All right.

17              Mr. Fletcher, you had something else?

18              **MR. FLETCHER:**  Yes, if there's nothing else from

19    Ms. Grady.

20              **MS. GRADY:**  Well, Your Honor, there's one

21    subsequent thing.  Your Honor previously granted our motion

22    to substitute someone for Defendant Gray, but we've never

23    been provided the name of the sister.  We haven't been able

24    to contact her.  And Your Honor said you would wait to

25    actually appoint her until she acknowledged she would accept

1    service.  I think that's happened, but we need the name of

2    that person, obviously, to be in the order.

3          **THE COURT:**  Yeah.

4          **MR. FLETCHER:**  Your Honor, I can give that to you

5    right now.  It is Brandy Steptoe, B-R-A-N-D-Y, and then last

6    name is "S" as in "Sam", T-E-P-T-O-E.

7          **THE COURT:**  Okay.  She's agreed?

8          **MR. FLETCHER:**  Yes, Your Honor.

9          **MS. GRADY:**  So, Your Honor, we have a deadline to

10   serve these folks.  We can get the amended complaint

11   reflecting those new names on file, you know, today or

12   tomorrow, no problem.  We have a current --

13         **THE COURT:**  We don't need to do a new amended

14   complaint.  We'll just enter an order substituting them.

15         **MR. FLETCHER:**  That was going to be my suggestion,

16   Your Honor.  If we don't need to re-serve them, that would

17   save everybody a lot of trouble.

18         **THE COURT:**  We don't need to do an amended

19   complaint.

20         **MS. GRADY:**  That's fine by us, Your Honor, but we

21   do need to serve those two people, and because defendants

22   have -- for Ms. Steptoe they've asked us not to contact her

23   and they've told us they can't accept service on her behalf.

24   We need some way to get her served.  We have a deadline of

25   next Friday, so we're really up against the wall here.

1          **THE COURT:**  Well, I mean they got to contact her to

2     serve her.

3          **MR. FLETCHER:**  Understand, Your Honor.  And we'll

4     get them the contact information, the address by the end of

5     the week.

6          **THE COURT:**  Well --

7          **MR. FLETCHER:**  By the end of the day basically.

8          **THE COURT:**  Ms. Grady, does that give you enough

9     time?

10         **MS. GRADY:**  Yeah.  If we get it by the end of the

11    day we should be able to get a rush server down -- I can't

12    imagine she lives so far away.  And I think the same -- if

13    we can get the same for Kevin Chamness, or Keith, if we can

14    get both of them served within the deadline.

15         **THE COURT:**  Can you do that, Mr. Fletcher, by the

16    end of the day?

17         **MR. FLETCHER:**  Yes, Your Honor.

18         **THE COURT:**  Okay, great.  So orders will just

19    reflect that they're substituted without the necessity of an

20    amended complaint.

21         Anything else?

22         **MS. GRADY:**  Nothing from plaintiff.

23         **MR. FLETCHER:**  Your Honor, I just wanted to update

24    the Court:  On August 2nd, that will be my last day with the

25    Office of the Attorney General, so Ms. Steimel will be

```
 1   taking over the case, and I will --
 2           THE COURT:  Who's going to be helping?
 3           MR. FLETCHER:  What's that?
 4           THE COURT:  Who's going to be helping?
 5           MS. STEIMEL:  Your Honor, this is Emma Steimel.  I
 6   just wanted to chime in there.  We intend to staff this case
 7   up with further AA's G, and I will hopefully have more
 8   information about that definitely by the next status.  I
 9   will be filing my appearance.  I am admitted into the
10   Southern District, and so --
11           THE COURT:  Yeah.  I have no problem.  You've been
12   on other cases with me.  I'm glad that they've identified
13   someone.  But let's face it, this takes more than one --
14   this is not a two-person case, this is a multiple person
15   case and that's how it should be addressed.
16           MS. STEIMEL:  I completely agree, Your Honor, and
17   our current request is to have at least three or four more
18   attorneys staffed up on this case, so I hope to have that
19   solidified by our next status.
20           THE COURT:  Great.  Where you headed, Mr. Fletcher?
21           MR. FLETCHER:  To a firm Dowd & Dowd here in
22   Chicago.
23           THE COURT:  Are they related to the Dowd & Dowd
24   firm here in St. Louis?
25           MR. FLETCHER:  No, I don't believe so.
```

```
 1              THE COURT:  Good luck to you.

 2              MR. FLETCHER:  Thank you, Your Honor.

 3              THE COURT:  All right.  So I'm thinking August 21st

 4     at 3 p.m. for our next get-together by telephone.  Does that

 5     work?

 6              MS. GRADY:  That works for plaintiff, Your Honor.

 7     You said 3 p.m.?

 8              THE COURT:  Yeah.

 9              MS. GRADY:  That works.

10              MS. STEIMEL:  Let me just check my calendar,

11     Your Honor.

12              THE COURT:  Angie, we have that free, correct?

13              MS. STEIMEL:  That should be fine for me.

14              LAW CLERK:  Hang on just a second, Judge.

15              THE COURT:  I think we have that free.  Was that --

16     Ray, do we have that free?

17              LAW CLERK:  Angie's not in here.  Yeah, it looks

18     like on the calendar the only thing set is Abbott in the

19     morning.

20              THE COURT:  Right.  That's what I thought.  Okay,

21     good.  All right.  Fantastic.

22              I'll talk to you -- well, Ms. Steimel and

23     plaintiffs' counsel, I'll talk to you all on the 21st of

24     August.  We are adjourned.

25         (Proceedings adjourned)
```

1                    **REPORTER'S CERTIFICATE**

2

3         I, Laura A. Esposito, RPR, CRR, CCR(MO), Official Court
   Reporter for the U.S. District Court, Southern District of
   Illinois, do hereby certify that I reported in shorthand the
4  proceedings contained in the foregoing 35 pages, and that
   the same is a full, true, correct, and complete transcript
5  from the record of proceedings in the above-entitled matter.

6         Dated this 6th day of October, 2017.

7
                                        Digitally signed by Laura
8                                       Esposito
                                        Date: 2017.10.06 15:11:00
                                        -05'00'
9  _____    LAURA A. ESPOSITO, RPR, CRR, CCR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25