## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| DEMETRIUS ROSS, KEVIN HAMILTON, RONALD SMITH, JONATHAN TOLLIVER, and GLENN VERSER, on behalf of themselves and a class of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 15 C 0309 |
| GREG GOSSETT, et al., | ) ) | Hon. Staci M. Yandle, J. |
| Defendants. | ) | Hon. Stephen C. Williams, M.J. |

## **PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**

Jon Loevy
Michael Kanovitz
Sarah Grady
Sam Heppell
Adair Crosley
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

Alan Mills
Elizabeth Mazur
Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan St.
Chicago, Illinois 60640
(773) 769-1411

**INTRODUCTION**

In their class certification response brief, Defendants concede that the 2014 shakedowns were planned and executed as part of a uniform practice crafted and implemented by the Defendants against whom Plaintiffs seek certification, while at times disputing the contents of that practice and at others denying the unconstitutional effect. But Defendants' concession is significant and demonstrates that this case should proceed as a class action, to be decided based on whether a jury believes Defendants' uniform plan was to conduct a series of abusive and humiliating shakedowns, as Plaintiffs contend, or not, as Defendants contend.

Defendants do not challenge Plaintiffs' showing of ascertainability, numerosity, adequacy of representation by class counsel, or the superiority of adjudicating the case as a class action. They challenge only commonality, typicality, and predominance. Their arguments fail for three reasons. First, their challenge to Plaintiffs' evidence of commonality is factually inaccurate and misleading, and asks this Court to weigh evidence in a manner that is inappropriate at the class certification stage. Second, Defendants fail to comprehend the nature and legal elements of Plaintiffs' failure-to-intervene claim. Third, Defendants have failed to challenge Plaintiff's substantial showing of predominance in any meaningful way.

**ARGUMENT**

**I.    Defendants' Challenge to Plaintiffs' Substantial Evidence of Commonality and Typicality Is Factually Inaccurate and Legally Improper.**

Defendants primarily contend that Plaintiffs have failed to satisfy Rule 23's commonality, typicality, and predominance requirements based on a few cherry-picked examples of putative class members offering statements or testimony that, according to Defendants, contradict the class's account of the 2014 shakedowns. Defendants argue these examples demonstrate that their account of the uniform plan—developed for valid security reasons and

1

executed uniformly in a professional manner—is correct. Dkt. 491 at 14 ("Plaintiffs ignore the significant evidence . . . articulating *the actual uniform policy and practice* used during the shakedowns.") (emphasis added); *id.* at 18-28.

These arguments are meritless. First, Defendants' purported factual inconsistencies are misleading, inaccurate, or flatly contradicted by the evidence. Second, their legal arguments about whether the putative class members' statements support Plaintiffs' or Defendants' account of the uniform plan are irrelevant and this Court may not resolve them at the certification stage.

### A.   Defendants Misconstrue Purported Variances In the Record.

Presumably after scouring the thousands of pages of deposition testimony, Defendants highlight a handful of examples they claim demonstrate divergence so substantial that they defeat commonality. Dkt. 491 at 3. These purported variances range from overly aggressive glosses on ambiguous testimony to outright misrepresentations, and all collapse under scrutiny.

For example, Defendants assert "Samuel Harding testified that no officer touched him during line movement," and "[n]either Jeffrey Miller nor Sergio Cortes was shoved into other inmates during line movement," Dkt. 491 at 9, *id.* at 26, but the testimony directly refutes these claims.[1] And they cherry-pick quotes to assert "Harley T. Miller testified that only his head touched the inmate in front of him," *id.* at 25-26, while the totality of his testimony belies this.[2]

---

[1] *See, e.g.*, Dkt. 481-40 at 131:20-22 ("[M]y head was shoved back down, hit in the back of the neck, and my head slammed back down."); *id.* at 138:14-18 ("I fell out of formation once because I was struck on the back of my neck and my head was shoved into my chest. When I filed into formation I'm shoved back in formation with a stick in my side."); Dkt. 481-45 at 72:17-19 ("[T]his officer . . . came from behind me and pushed my head very hard into this guy's back."); Dkt. 481-38  at 30:19-21 ("They were pushing us so we would walk quickly out of the cell house."); *id.* at 42:10-24 ("Q. Were you touched by any officer . . . ? A. Struck? Yes. . . .").

[2] Dkt. 481-44 at 76:13-78:6 ("Q. How close to the inmate in front of you was your pelvic region or genital region? A. Less than an inch probably. . . . Q. Is it possible that your genital region came into contact with . . . the inmate in front of you in line during those stops and starts [in the line movement]? . . . A. I would say yeah, when I was pushed probably.").

Many of Defendants' proffered examples of variance are red herrings that have no bearing on any questions relevant to Plaintiffs' proposed class. For example, they point to one absent class member's testimony about using an inhaler, Dkt. 491 at 9, but as Defendants acknowledge, Plaintiffs are not seeking class certification regarding access to medical care, *id.* at 2. Defendants also bizarrely emphasize that one named Plaintiff was cuffed in the same painful and uncomfortable manner during other Tact team shakedowns (as if the repeated misconduct somehow negates its culpability or validity as a common element), *id.* at 23, but fail to note that this needlessly cruel cuffing method was *not* used during line movements when the Tact team was not involved, Dkt. 481-32 (Ex. 32, Hamilton Dep.) at 64:4-14. Defendants also state that multiple absent class members testified that Tact team members loosened any handcuffs that were too tight, but fail to cite with specificity to any evidence in the record. Dkt. 491 at 23.

At best for Defendants, they have found a handful of examples where absent class members made equivocal statements, failed to remember certain aspects of the shakedown specifically, or made statements about general practices, which Defendants stretch beyond recognition to fit their contention that the evidence on prisoners' experiences "varies dramatically."[3] *Id.* at 3. Beyond that, Defendants' assertions of variance are predominantly based on the improper assumption that 'absence of evidence is evidence of absence.' In other words, Defendants contend that because certain class members did not discuss certain topics (because

_____

[3] For example, Defendants assert that many prisoners gave statements disputing the "reverse strip search" practice. Dkt. 491 at 21. But under scrutiny, this assertion falls flat. Out of nearly 10,000 putative class members, Defendants claim to have found 20 putative class members who affirmatively state they were strip searched normally. Dkt. 491 at 21. Yet they cite only 17 (their list of 19 interviewees has 18 entries, including 2 sets of duplicates)—and in reality, only 3 of these make an affirmative statement that they experienced a 'top to bottom' strip search. Dkt. 491-1 at 36:5-6; Dkt. 491-7 at 63771-72, 63801-02. This purported variance pales in comparison to the 18 deponents, Dkt. 481 at 11, n.6, 4 interviewees, *id.*, and 26 declarants, Dkt. 481-51, whose affirmative statements that they were subjected to a uniform practice of 'reverse strip' searches are proffered by Plaintiffs.

they were not asked about them by Defendants at depositions or during their *ex parte* interviews), this Court should assume their answer would contradict Plaintiffs' substantial evidence. This is an obvious logical fallacy, and if there were real merit to Defendants' contentions that class members' experiences varied so substantially that class treatment was impossible or inappropriate, one would expect those contentions to be supported by accurate and affirmative evidence. This Court should reject Defendants' improper invitation to speculate about evidence that has *not* been presented and focus on the substantial evidence that Plaintiffs have provided, of a humiliating and abusive shakedown practice that was devised and implemented in uniform fashion by the Defendants against whom certification is sought.

Defendants similarly misconstrue the evidence in arguing against the typicality of the named Plaintiffs. Defendants do not contest the legal standard, that "the typicality requirement is liberally construed," and "[t]ypical does not mean identical." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).[4] They cite *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415 (N.D. Ill. 2003) when they claim the experiences were not "highly similar," Dkt. 491 at 31, but "highly similar" is Plaintiffs' description, *see* Dkt. 481 at 30, *not* the legal standard. In fact, *Ellis* supports Plaintiffs' position. *See* 217 F.R.D. at 428 ("[F]actual variations in claims will not destroy typicality" so long as there is a "common 'core of allegations.'".).

The allegations of the named Plaintiffs *are* highly similar—far exceeding the liberal typicality requirements—and Defendants strain the facts beyond credulity to suggest otherwise. For example, out of 1,929 men housed at Illinois River, Defendants cite five individuals to assert

---

[4] *See also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.").

that Ross's claims are atypical, Dkt. 491 at 31. Even at face value, these minor variations do not

thwart the "common core" of his allegations, and upon scrutiny, any divergence withers further.

Two of three cited prisoners say nothing about the strip search order that differs from Ross,[5]

another does not deny all use of force but simply agrees that the officers did not "beat" him, Dkt.

491-7 at 172, and another has his statement totally misread, *id.* at 91-92.[6] These botched attempts

to nitpick around the edges of Ross's testimony fall far from disproving typicality.

Defendants' efforts to distinguish the experiences of Tolliver, Smith, Hamilton and

Verser are equally unavailing. Dkt. 491 at 32-34. As with Ross, they cite a handful of people out

of between 18 and 3800 affected prisoners at each facility. They cite most of these individuals

for statements they did *not* give, conflating their silence with affirmative evidence that their

experiences were divergent. *Id.* at 32-34. Their only affirmative evidence of divergence is on

minor tangents, quibbling with the specific durations that prisoners were in the holding area,

noting some prisoners were allowed to use the bathroom, and pointing to two who were strip

searched just outside rather than inside their cells. *Id.* Furthermore, while Defendants repeatedly

emphasize that the named Plaintiffs suffered more severe injuries than many other putative class

members, as discussed below the precise injuries suffered need not be identical.

While it is impossible to address each one of Defendants' factual contentions in a short

reply brief, these examples demonstrate a clear pattern of over-hyped variance that fails to defeat

the extensive evidence of commonality and typicality advanced by Plaintiffs. All the more so,

given that the commonality requirement does *not* require perfect uniformity. *See, e.g.*, *Dr. Robert

L. Meinders D.C., Ltd v. Emery Wilson Corp.*, 2016 WL 3402621, at *4 (S.D. Ill. June 21, 2016)

---

[5] One is silent on the issue, Dkt. 481-51 at 77-80, and the other states only that he does not
remember its details, Dkt. 491-7 at 187.

[6] The 20 minute kneeling took place while the prisoner was still in the cellhouse, not the gym.

("'Rule 23(a)(2) does not demand that every member of the class have an identical claim,' and some degree of factual variation will not defeat commonality") (quoting *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011)); *Rench v. TD Bank, N.A.*, 2018 WL 264121, at *3 (S.D. Ill. Jan. 2, 2018) (same); *Braggs v. Dunn*, 317 F.R.D. 634, 656 (M.D. Ala. 2016).

### B. Defendants' Arguments Invite the Court to Make Improper Factual Findings at the Class Certification Stage.

In their response brief, Defendants repeatedly agree with Plaintiffs that the 2014 shakedowns at Menard, Illinois River, Big Muddy, and Lawrence were the result of a uniform practice crafted and executed by the Defendants against whom class certification is sought. Dkt. 491 at 7, 14-18. Nor could they contend otherwise, since 100 percent of the 300 Defendants who provided survey responses, as well as dozens of Defendants who sat for depositions, admitted that a uniform plan for conducting the shakedowns was followed without a single deviation.

This concession is crucial because it proves that the questions Plaintiffs identified in their brief are indeed common (and in some cases, undisputed). First, the parties agree that the question of whether Defendants developed and implemented a uniform plan for the 2014 shakedowns is common to the class, and they further do not dispute that the answer is yes. *See id.* at 14-18. Accordingly, it necessarily follows that that common plan either ran afoul of the Eighth Amendment (in which case Plaintiffs would prevail on their conspiracy claim) or did not (in which case Defendants would prevail)—but either way, class-wide resolution of this question is appropriate. Finally, because the parties agree there was a uniform plan, common to the class and created and implemented by the Defendants against whom certification is sought, if that plan violated the Eighth Amendment then necessarily those Defendants were liable for failing to intervene to prevent the harm from continuing, while if the plan did not violate the Eighth Amendment, they did not fail to intervene.

Viewed in this framework, Defendants' attack is plainly just an argument that Plaintiffs have failed to provide sufficient evidence to permit a jury to answer the admittedly common questions in Plaintiffs' favor. But that is not a question this Court can weigh the evidence to answer at the class certification phase.[7] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "In other words, a court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell v. PNC Bank, N.A.,* 800 F.3d 360, 376-77 (7th Cir. 2015). Indeed, if Plaintiffs' evidence so clearly entitled them to summary judgment—the correct posture for this Court to determine the sufficiency of Plaintiffs' evidence—they should "welcome" class certification, so "all class members who did not opt out of the class action would be bound by the judgment." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013).[8]

---

[7] Accordingly, Defendants' meritless contentions that Plaintiffs have failed to provide sufficient evidence to support the elements of their conspiracy claims, that to prevail Plaintiffs must prove that a policy was "announced," that a conspiracy may be proven only "direct evidence" showing it "in writing or recorded[,]" Dkt. 491 at 16 & 23, are not relevant to resolution of Plaintiffs' motion for class certification—never mind that they are also legally incorrect, *see Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) ("[A] conspiracy certainly may be established by circumstantial evidence."). Likewise, Defendants' efforts to disaggregate Plaintiffs' allegations of a multi-faceted abusive shakedown into stand-alone components, then argue that each in isolation falls short of an Eighth Amendment violation, Dkt. 491 at 18-29, it not only misplaced as a legal matter (the Eighth Amendment requires the cumulative impact of conduct to be evaluated), but is in any event irrelevant at this stage where the sufficiency of the evidence of to send the alleged constitutional violation to a jury is beyond this Court's reach.

[8] Defendants also argue that class certification is only proper in cases where the content of challenged policies are undisputed. Dkt. 491 at 14-15. This argument fails to take account of countless class actions—several of which involve Defendants or their colleagues—that were certified despite contentious disputes about the content of the policies at issue in the litigation. *See, e.g., Lippert v.*

In sum, Defendants contend they created and implemented a common plan that was consistent with the Eighth Amendment, and that if any harm befell prisoners during the 2014 shakedowns, it occurred because of a few bad apples. This is not an argument against class certification: if a jury credits Defendants' position, then they will prevail at trial. If instead a jury credits Plaintiffs' position—that the overwhelming evidence from both class members and Tact team members proves the abuses during the 2014 shakedowns were no mere accident but instead part of a common plan concocted and implemented by the supervisory Defendants—then Plaintiffs will prevail. Either way, both the questions and the evidence required to resolve them are common to the class and focus on the conduct and intent of the 22 Defendants—not the individual Plaintiffs. And the resolution of those questions will determine with one stroke the validity of each class member's claims for conspiracy and failure to intervene. Accordingly, class certification is appropriate.

## II.     Defendants Fail to Comprehend Plaintiffs' Failure-to-Intervene Claim, Which Is Based on Classwide Allegations and Susceptible to Classwide Proof.

Defendants contend that class certification on the failure-to-intervene claim is inappropriate because that claim inherently precludes common questions susceptible to classwide resolution. Dkt. 491 at 29-30, 34-35. This rests on the faulty premise that a defendant can only be liable for failing to intervene if he was physically present at the site of the alleged violation.

But Plaintiffs' claim does not rely on any such proof, nor is such proof required for the class to prevail. Instead, they contend that the 22 Defendants against whom certification is sought failed to intervene to protect the class, despite knowing that other Defendants and Tact team members planned to execute an abusive and humiliating shakedown in violation of the

---

*Baldwin*, 2017 WL 1545672, at *3-5 (N.D. Ill. Apr. 28, 2017); *Holmes v. Godinez*, 311 F.R.D. 177, 218 (N.D. Ill. 2015).

Eighth Amendment, and having a realistic opportunity to take action to prevent it. *See* Dkt. 481 at 24. If true, this would render Defendants liable to the class for failing to intervene to protect them from the planned violation. *See, e.g., Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (officer "may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge"); Seventh Circuit Pattern Instruction No. 7.22 (laying out the elements for a failure-to-intervene claim).

The question of Defendants' failure to intervene is a common one—not whether they failed to intervene to protect a prisoner standing 10 feet in front of them, but rather their failure to intervene to stop the unconstitutional plan from being executed over the course of several months. And the evidence offered both in favor of and in defense against this claim will be common to the class: evidence about what Defendants knew about the uniform shakedown practice, when, and what actions they took (or failed to take) in response. It raises common questions capable of classwide resolution, and will be answered using evidence common to the class, so class certification of Plaintiffs' failure-to-intervene claim is appropriate.

## III.   Defendants Do Not Meaningfully Challenge Plaintiffs' Showing of Predominance.

Finally, although Defendants purport to challenge Plaintiffs' showing of predominance, their four-paragraph discussion simply repackages their commonality argument with the bold assertion that even where plaintiffs do not seek certification on the question of damages, an exact identity of harm must be proven. Dkt. 491 at 35-37.

Defendants have not and cannot dispute that each class member's conspiracy and failure-to-intervene claims against the 22 Defendants will either succeed or fail based on the answer to Plaintiffs' common questions. Dkt. 481 at 35-36. Indeed, the conspiracy claim *must* be based on questions and evidence common to the class since there is no evidence indicating any Defendants

9

formed an agreement before the shakedowns about how to treat one or more prisoners in particular.

Defendants lastly challenge Plaintiffs' discussion about the issue of damages and injuries to class members. It is unclear precisely what Defendants contend Plaintiffs must prove regarding damages and injuries (especially in a case like this one that does not seek certification on the question of damages). Whatever their position is, it is foreclosed by several recent binding appellate decisions on this point. *See* Dkt. 481 at 36-37 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014), among others). Defendants are free to press this point on appeal but may not prevail on it before this Court. Plaintiffs do not seek certification on the question of damages, so the variability of class members' damages has no bearing on whether the class should be certified.

\*       \*       \*

Plaintiffs have demonstrated that their class claims present common questions susceptible to classwide resolution, that those common questions predominate over individualized ones, and that the experience of the named Plaintiffs is typical of the class, and Defendants do not dispute that the proposed class is sufficiently numerous and adequately represented by class counsel, and that proceeding as a class is superior to proceeding individually. Accordingly, this Court should grant Plaintiffs' motion and certify Plaintiffs' requested class.

Respectfully submitted,


/s/ Sam Heppell
Sam Heppell
Counsel for Plaintiffs

Jon Loevy
Michael Kanovitz
Sarah Grady
Sam Heppell
Adair Crosley
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

Alan Mills
Elizabeth Mazur
Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan St.
Chicago, Illinois 60640
(773) 769-1411


## CERTIFICATE OF SERVICE

I, Sam Heppell, an attorney, certify that on December 3, 2018, I caused the foregoing Plaintiffs' Reply in Support of Their Motion for Class Certification to be filed using the Court's CM/ECF system, which effected service on all counsel of record.


/s/ Sam Heppell
Sam Heppell
Counsel for Plaintiffs

11