IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMETRIUS ROSS,** *on behalf of himself and all others similarly situated*, **et al.,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| vs. | ) Case No. 15-CV-309-SMY-MAB ) ) |
| **GREG GOSSETT, et al,** | ) ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Demetrius Ross, Kevin L. Hamilton, Harley Thomas Miller, Marshall McDaniel, Charles Sultan, Sergio Cortes, Zachary Watts, Acacia Brooks (as Special Representative of Brandon Brooks), James E. Dunmore, Glenn Verser, Jammel L. Johnson, Jonathan Tolliver, Ronald Smith, Edward Tenney, Samuel C. Harding, Jeffrey Miller, Clark Truly, Sam Fisher, Ramon Clark, Ted Knox, and Vincent E. Smith, inmates of the Illinois Department of Corrections ("IDOC") who were incarcerated at Illinois River, Big Muddy River, Lawrence and Menard correctional centers during the period April 2014 through July 2014, bring this action individually and on behalf others similarly situated, for violations of their constitutional and statutory rights as alleged in the Second Amended Complaint.

Now pending before the Court is Plaintiffs' Motion for Class Certification (Doc. 481). Defendants filed a Response opposing the Motion (Doc. 491) to which Plaintiffs replied (Doc. 503). For the following reasons, Plaintiffs' Motion is **GRANTED**.

## BACKGROUND

In 2014, IDOC's Chief of Operations, Joseph Yurkovich and Deputy Chief of Operations,

Michael Atchison decided to conduct prison-wide shakedowns in an effort to remove contraband items (Doc. 481-16, pp. 93-94; Doc. 481-67). These shakedowns involved correctional officers from multiple prisons who formed tactical teams supervised by senior IDOC officials, including former Director Salvadore Godinez, other centralized administrators, and head administrators at each of the prisons where the shakedowns occurred (Doc. 481-6, pp 33, 46, 107; Doc. 481-16, p. 100). Yurkovich and Atchison discussed their plan with various personnel, including David White, the Statewide Tactical Commander and Timothy McAllister, the Southern Regional Tactical Commander (Doc. 481-6, p. 47-49; Pl. Doc. 481-68 and 69; Doc. 481-17, pp. 114-115; Doc. 481-71). McAllister and White created "operations orders" which broadly outlined the shakedown schedule and staffing needs (Doc. 481-64, p. 2). McAllister discussed the actual operation of the shakedowns with prison wardens and tactical team commanders prior to each prison-wide shakedown (Doc. 481-17, p. 132; Doc. 481-20, pp. 38-41).[1] McAllister and/or White were present and supervised each tactical team at each facility where the shakedowns occurred (Doc. 481-6, p. 50; Doc. 481-17, p. 188).

Three separate briefings took place prior to each shakedown. White and/or McAllister would first discuss the plan with tactical team commanders, wardens, and assistant wardens, including how duties would be performed, what inmates would wear outside the cells, how inmates would be handcuffed, and how tactical team members would conduct themselves and handle inmates (Doc. 481-10, pp. 71-73, 75; Doc. 481-7, p. 37; Doc. 481-8, p 70; Doc. 481-11, pp. 71-73). Tactical team commanders and assistant commanders then discussed the shakedown plan

---

[1] The following were either Wardens, Assistant Wardens of Operations, tactical team commanders, or assistant tactical team commanders at the four relevant institutions: Jerry Witthoft, Frank Eovaldi, Kim Butler, Alex Jones, Robert Arnett, Brian Piper, Greg Gossett, Stephanie Dorethy, David Hermetz, Chris White, Ken Finney, Zachary Roeckeman, Robert Craig, Michael Gilreath, Timothy McAllister, Stephen Duncan, and Richard Moore. For purposes of this Memorandum and Order, the term "Defendants" refers only to these named parties.

with tactical team members (Doc. 481-11, pp. 65-68; Doc. 481-10, pp. 73-4, 101; Doc. 481-15, p. 73; Doc. 481-14, pp. 40-41). The entire group would then meet and the wardens, along with McAllister or White, would reiterate the plan (Pl. Ex. 8, pp. 75-76; Pl. Ex. 14, p. 40; Pl. Ex. 7, pp. 36-7). The shakedowns and tactical teams were monitored by White and/or McAllister along with the tactical team commanders, assistant commanders, and wardens of each prison. Yurkovich and Atchison communicated with each other and White daily during the shakedowns. Prior to the 2014 shakedowns, tactical teams were typically used in situations where force was required, such as cell extractions and riots (Doc. 481-5, pp. 14751-62).

Tactical team officers wore a distinctive uniform: an orange jumpsuit, vest, gloves, and helmet with face shield (*Id*. at 14796). They carried a baton, pepper spray, flashlight, and radio, among other things (*Id*.) Their uniform made it difficult to identify individual officers and they displayed no identifying insignia or name badge (*Id*.). Inmates referred to the tactical teams as "Orange Crush."

According to Plaintiffs and other inmates housed at the relevant institutions, the following occurred during the tactical team shakedowns (Doc. 481, pp. 10-14): Tactical team officers would enter living units while yelling loudly and banging their batons on the bars and railings of the unit. Once assembled, they would approach the cells and tell inmates to strip and remove their clothing. They would then direct a "reverse" strip search by ordering inmates to manipulate their genitals and buttocks and then direct them to put their hands in their mouths. Inmates were then directed to wear a shirt, pants, and shoes but no underwear. These searches were demeaning and unsanitary.

After they were searched, inmates were handcuffed behind their backs with their thumbs up and palms facing out – a position that was painful and uncomfortable. While their cells were searched, inmates were marched to a holding area in a "nuts to butts" fashion, where their genitals

would come into contact with the backside of the inmate in front of them. While being marched in close formation, they were routinely pushed and shoved by tactical team members to ensure that they came into physical contact with other inmates. They remained in holding areas (which included dining halls, gyms, or chapels) for 1 to 4 hours during which time they remained handcuffed and were either seated with their heads down or standing facing a wall. After the cell searches, they were marched back to their living units in the same "nuts to butts" fashion. All Defendants agree that the shakedowns occurred as planned. They deny however that the actions and events described by Plaintiffs occurred during the shakedowns.

Plaintiffs move for class certification under Rules 23(a) and 23(b)((3) of the Federal Rules of Civil Procedure and seek certification of the following class:[2]

> All prisoners housed at:
> Menard between April 4, 2014 and April 16, 2014;
> Illinois River between April 21, 2014 and April 29, 2014;
> Big Muddy between May 12, 2014 and May 19, 2014; or
> Lawrence between July 7, 2014 and July 11, 2014.

Plaintiffs' proposed class representatives are Jonathan Tolliver and Ronald Smith, who were housed at Menard, Demetrius Ross, who was housed at Illinois River, Kevin Hamilton, who was housed at Big Muddy, and Glenn Verser, who was housed at Lawrence.

## **LEGAL STANDARD**

"The class action is an exception to the usual rule that litigation is conducted by and on

---

[2] Plaintiffs' proposed class seeks certification against the administrative defendants only: Salvador Godinez (Director); Joseph Yurkovich (Chief of Operations); Michael Atchison (Deputy Chief of Operations); David White (Statewide Tact Commander); Anthony McAllister (Southern Regional Tact Commander); Jerry Witthoft (Menard Tact Commander); Frank Eovaldi (Menard Assistant Tact Commander); Robert Arnett (Illinois River Tact Commander); Brian Piper (Illinois River Assistant Tact Commander); David Hermetz (Big Muddy Tact Commander); Chris White (Big Muddy Assistant Tact Commander); Ken Finney (Big Muddy Assistant Tact Commander); Michael Gilreath (Lawrence Tact Commander); Timothy McAllister (Lawrence Assistant Tact Commander); Kim Butler (Menard Warden); Alex Jones (Menard Assistant Warden); Greg Gossett (Illinois River Warden); Stephanie Dorethy (Illinois River Assistant Warden); Zachary Roeckeman (Big Muddy Warden); Robert Craig (Big Muddy Assistant Warden); Stephen Duncan (Lawrence Warden); and Richard Moore (Lawrence Assistant Warden).

behalf of the individual named parties only." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011)). A class must be "identifiable as a class," meaning the class definition must be definite enough that the class can be ascertained. *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659–61 (7th Cir. 2015). Additionally, the plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). The proposed class must also fall within one of the categories set forth in Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

Plaintiffs bear the burden of proving the proposed class satisfies Rule 23 and must do so through evidentiary proof; merely pleading the existence of the required elements will not suffice. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013). However, "[i]t is sufficient if each disputed requirement has been proven by a preponderance of the evidence." *Messner*, 669 F.3d at 811.

## **DISCUSSION**

To show that a class is ascertainable, a plaintiff must offer a definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Mullins*, 795 F.3d at 659–60. A class that is defined too vaguely fails to satisfy the "clear definition"

component. *Id*. at 660. To avoid vagueness, a class definition needs to "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*.

Plaintiffs' proposed class consists of individuals housed at four identified IDOC institutions during the period April 2014 through July 2014. This class definition is straightforward, specific, easily identifiable, and as such, meets the standard for ascertainability.

### Rule 23(a) Requirements
*Numerosity*

For numerosity, Plaintiffs must establish that a sufficient number of class members exist such that joinder would be impractical. A plaintiff is not required to specify the exact number of persons in the class. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). Rather, "[a] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006).

Here, Plaintiffs propose a class consisting of 9,871 men who were housed at the relevant institutions during the relevant time period. Clearly, a class of this size is sufficiently numerous to render joinder impracticable; thereby satisfying Rule 23(a)(1).

*Commonality*

To satisfy commonality, Plaintiff's' "claims must depend on a common contention" and "[t]hat common contention…must be of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Ordinarily, "[w]here the same conduct or practice by the same defendant gives rise

to the same kind of claims from all class members, there is a common question." *Suchanek v Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano*, 633 F.3d at 585; *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir.1992).

Plaintiffs allege Defendants uniformly engaged in conduct and implemented the same or similar procedures at each of the four institutions where the Orange Crush shakedowns took place. Their claims arise under the same constitutional requirements and require resolution of key common factual and legal questions: whether Defendants developed and carried out a uniform policy and practice that had the effect of depriving the putative class members of their Eighth Amendment right to be free from cruel and unusual punishment; whether the shakedowns were executed in the manner Defendants contend or as Plaintiffs claim; whether Defendants engaged in a conspiracy to deprive the putative class members of their constitutional rights through the shakedowns; and whether Defendants knew of, approved, facilitated and /or turned a blind eye to the alleged unconstitutional shakedowns. These questions will generate common answers that will drive the resolution of this lawsuit. In particular, the answer to whether Defendants developed and carried out a uniform policy and practice that had the effect of depriving the putative class members of their Eighth Amendment right to be free from cruel and unusual punishment does not require individualized consideration and will resolve the liability aspect of this litigation and for each of the class claims.

For the most part, Defendants' arguments address the merits of Plaintiffs' claims rather than the sufficiency of the bases for class certification. For example, Defendants argue that their "articulated policy and practice" demonstrated a "constitutional plan to strip search inmates for a

proper penological purpose." They further argue that evidence, including Defendants' sworn statements, documentary evidence, and photographs demonstrate that no unconstitutional conduct occurred, and that sworn statements submitted on Plaintiffs' behalf should not be credited. While Defendants cite to sworn statements and transcripts of unsworn interviews indicating that some inmates did not remember or did not experience one or more of these alleged events, there is sufficient evidence of a common set of operative facts demonstrating uniform conduct towards members of the class. *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir.2009) ("[A] class will often include persons who have not been injured by the defendant's conduct.... Such a possibility or indeed inevitability does not preclude class certification...."). Finally, Defendants argue that only a few inmates filed grievances over the shakedowns, and fewer still exhausted their administrative remedies as to the claims in this lawsuit. Such arguments are appropriately raised on summary judgment; they are not relevant or determinative for class certification purposes. The proposed class meets the requirement for commonality.

### *Typicality*

"There must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). Thus, typicality and adequacy inquiries often overlap. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir.

1999) (holding that if a plaintiff's claim is atypical, he is not likely to be an adequate representative). Typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Rosario*, 963 F.2d at 1018. Typical does not mean identical, and the typicality requirement is liberally construed." *Ladegaard v. Hard Rock Concrete Cutters, Inc*., No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832, *15 (N.D. Ill. Nov. 30, 2000).

In this case, the named Plaintiffs' claims, while not identical, are typical of the class. Each alleges that during uniformly executed shakedowns, they and the putative class members, were subjected to humiliating and unsanitary strip searches and line movements and that they were subjected to uncomfortable and painful handcuffing and extended hours of uncomfortable standing or sitting; in violation of the Eighth Amendment. Typicality is therefore satisfied.

### *Adequacy*

A representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). Plaintiff's Counsel have extensive experience representing plaintiffs in complex litigation and possess the ability, resources and experience necessary to prosecute this litigation, and the Court has no reason to believe they will not fairly and adequately represent the interests of the class.

As to class representatives, the adequacy requirement is satisfied when the named representative has "a sufficient interest in the outcome of the case to ensure vigorous advocacy"

and "[does] not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D.Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010)). The named Plaintiffs are sufficiently interested in the outcome of the case and there's been no suggestion that they will not fairly and adequately represent the interests of the class. Further, a review of the record reveals no apparent adverse interests between the named Plaintiffs and the putative class members. The adequacy requirement is therefore satisfied.

### Rule 23(b) Requirements

Plaintiffs proceed under Rule 23(b)(3) which allows for certification upon a finding that "questions of law or fact common to members of the class predominate over any questions affecting only individual members," and also that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3).

*Predominance*

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). "If, to make a *prima facie* showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a *prima facie* showing, then it becomes a common question." *Id*. (quotation omitted). Predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, (1997).

In cases claiming the existence of widespread or uniform practices, courts have routinely found that common questions predominate. *See, e.g., Suchanek*, 764 F.3d at 756 ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009) ("When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation."); *Young v. County of Cook*, 2007 WL 1238920, at *7 (N.D. Ill. April 25, 2007) (same); *see also Hill v. County of Montgomery*, 2018 WL 3979590, at *14 (N.D.N.Y. Aug. 20, 2018) ("where plaintiffs are allegedly aggrieved by a single policy of the defendants' and there is a strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited" (internal quotation marks omitted)); *Snead v. CoreCivic of Tenn., LLC*, 2018 WL 3157283, at *16-17 (M.D. Tenn. June 27, 2018) (certifying Rule 23(b)(3) class of prisoners who alleged the existence of a widespread practice of denying certain medical care); *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) (certifying Rule 23(b)(3) class of prisoners who claimed they suffered unconstitutional conditions of confinement).

And, while the class members' particular experiences may vary to some degree, any such variation would primarily impact the type and amount of recoverable damages, assuming Defendants' liability is proven. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, (2016) (citation and quotation marks omitted).

Defendants contend however that individual factual questions defeat Plaintiffs' claim of the existence of a uniform policy and/or practice and that those questions predominate over common issues. Specifically, Defendants argue that individualized inquiries into whether particular inmates were subjected to none, one, or more of the alleged offending actions; whether each Defendant was aware of these actions with respect to a particular Plaintiff; and whether each Defendant had the opportunity to intervene will be required. But once again, these questions go to the merits of the *common* constitutional claims. This Court finds that the common questions inherent in Plaintiffs' Eighth Amendment claims predominate over individualized questions.

*Superiority*

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Given the number of putative class members and the common questions of law and/or fact that predominate over individual issues, a class action will certainly serve the economies of time, effort and expense and prevent possibly inconsistent results. Conversely, deciding each claim separately would be an extremely inefficient use of both judicial and party resources. Thus, class action is the superior method for adjudicating Plaintiffs' claims.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. 481) is **GRANTED** and the Court **CERTIFIES** the following class pursuant to Federal Rule of Civil Procedure 23:

> All prisoners housed at:
> Menard Correctional Center between April 4, 2014 and April 16, 2014;
> Illinois River Correctional Center between April 21, 2014 and April 29, 2014;
> Big Muddy Correctional Center between May 12, 2014 and May 19, 2014; or
> Lawrence Lawrence Correctional Center between July 7, 2014 and July 11, 2014.

The Court **APPOINTS** Johnathan Tolliver (Menard), Ronald Smith (Menard), Demetrius Ross (Illinois River), Kevin Hamilton (Big Muddy), and Glenn Verser (Lawrence) as Class Representatives and **APPOINTS** Sarah Grady, Jon Loevy, Michael Kanovitz, Sam Heppell, Adair Crosley and the law firm of Loevy & Loevy; and Alan Mills, Elizabeth Mazur, Nicole Schult and the Uptown People's Law Center as Class Counsel.

**IT IS SO ORDERED.**

**DATED:** March 26, 2020

**STACI M. YANDLE**
**United States District Judge**