**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ILLINOIS**

DEMETRIUS ROSS, et al., on behalf of          )
themselves and all others similarly situated,  )
                                               )
                                               )
            Plaintiffs,                        )
                                               )
            v.                                 )          Case No. 15 C 0309
                                               )
GREG GOSSETT, et al.,                          )
                                               )
            Defendants.                        )          Hon. Staci M. Yandle


**PLAINTIFFS' RESPONSE TO SUMMARY JUDGMENT ORDER REGARDING**
**THEIR CLAIMS AGAINST THE NON-SUPERVISORY DEFENDANTS**

## INTRODUCTION

On January 8, 2025, this Court denied summary judgment to 20 of the 22 supervisory Defendants who planned and oversaw the prison-wide shakedowns at Menard, Illinois River, Big Muddy River, and Lawrence Correctional Centers in 2014. ECF 716 at 24-25. The Court further directed Plaintiffs to provide a response to Defendants' motion for summary judgment as to most of the non-supervisory Defendants, rejecting Plaintiffs' request to defer decision on the matter until after the March 31 trial on the class's claims. *Id.* at 24.

Defendants have sought summary judgment for the majority of the non-supervisory Defendants because in their view–barring nine officers[1]–there is no evidence that any of them participated in the unconstitutional conduct that took place during the 2014 shakedowns at the four prisons in issue. But as detailed below, Plaintiffs have identified several additional non-supervisory Defendants against whom there is more than sufficient evidence to support a verdict against them. Specifically, in addition to the nine Defendants who did not move for summary judgment, Plaintiffs have adduced evidence that would permit a reasonable jury to find liability for Plaintiffs and against the following non-supervisory Defendants (listed on the following page):

---

[1] Defendants have not moved for summary judgment as to Defendants Bradley Clark, Steven Conrad, Justin Eckelberry, Jason Furlow, Brandy Steptoe (as Special Representative for James Gray), Marcus Jenkins, Brian Livingston, John Maragni, and Carson Winters. *See* ECF 642 at 47 n.6. Accordingly, Plaintiffs do not discuss all of their evidence they have amassed against these nine Defendants in this response brief.

| | | | |
|---|---|---|---|
| — | Richard Harrington | — | Eric Weber |
| — | Eric Wenzel | — | Gary Perkins |
| — | Kenneth Hamilton | — | Akeem Hamilton |
| — | Steve Albrecht | — | Kyle Brooks |
| — | Sarah Arnett | — | Russell Goins |
| — | Ashley Thompson | — | Dale Martin |
| — | Michael Stufflebeam | — | Brad Stuck |
| — | Andrew Bottrell | — | Edwin Gladney |
| — | Shane Smith | — | Jeremy Alwerdt |
| — | Nick Nalley | — | James Berry |
| — | Ayla Heinzmann | — | Samuel Shehorn |
| — | Christopher Sherrod | — | Richard Moore |
| — | Timothy Conrad | — | Robert Walsh |
| — | Jerry Tanner | — | David Moore |

The evidence in this case establishes that these Defendants either personally participated in the mistreatment of the class representatives and consolidated case plaintiffs, or else was identified as being personally present in view of the mistreatment as it was occurring without taking any action whatsoever to intervene. Accordingly, summary judgment as to these Defendants should be denied.

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS ("PSMF")**

For brevity, Plaintiffs hereby incorporate their responses to Defendants' statements of material fact, as well as their statements of additional material facts, as laid out in their prior summary judgment response brief. *See* ECF 671 at 1-42. For example, Plaintiffs do not discuss the wealth of evidence they have amassed regarding the abusive and humiliating components of the 2014 shakedown that they experienced in uniform fashion. Instead, Plaintiffs focus on the evidence that is particularly focused on the presence or involvement of any of the non-supervisory Defendants who moved for summary judgment.

**A.      Plaintiff Ronald Smith**

1.      Plaintiff Ronald Smith was incarcerated at Menard Correctional Center in April of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 642-30 (Ronald Smith Dep.) at 36. The shakedown of Mr. Smith's housing unit occurred on April 8, 2014. *Id.*

2.      Mr. Smith testified that Defendant Richard Harrington stood to the left of the line movement that included Mr. Smith and others at Menard, observing the "nuts to butts" movement pattern and failing to intervene to stop his mistreatment. *Id.* at 26-30.

**B.      Plaintiff Edward Tenney**

3.      Plaintiff Edward Tenney was incarcerated at Menard Correctional Center in April of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 642-41 (Edward Tenney Dep.) at 12. The shakedown of Mr. Tenney's housing unit occurred on April 12, 2014. *Id.* at 28-29.

4.      Mr. Tenney testified that during the shakedown, multiple tact team officers jabbed him in the side with their wooden batons on multiple occasions, including one tact team officer of short stature whose name Mr. Tenney could not recall but who he remembered worked at Menard but left after being incarcerated for a vehicular homicide-type crime. *Id.* at 53-56. Defendant Eric Wenzel was an officer from Menard on the tact team who participated in the April 2014 shakedowns at the prison and was subsequently incarcerated after being convicted of an aggravated DUI following a fatal car accident. *See* Ex. 1 (Apr. 18, 2014 Email from J. Witthoft) at Bates 031917 (including Defendant Wenzel as one of the Menard tact team members who participated in the April 2014 shakedowns at Menard); *see also* "Randolph County Case Updates," *Harrisburg      Register*,      Nov.      13,      2017,      *available      at*

3

https://www.dailyregister.com/20171113/news/randolph-county-case-updates/ (last visited Mar. 9, 2025) (noting that Defendant Wenzel was sentenced to a term of incarceration in October 2017). A reasonable jury could thus conclude that Defendant Wenzel is the individual Mr. Tenney testified "poked" him. ECF 642-41 at 55.

5.      Mr. Tenney also testified that Defendant Richard Harrington could "without a doubt" observe the "nuts to butts" movement and repeated unjustified uses of force that Defendants were imposing on Mr. Tenney as he was marched between his housing unit and Randolph Hall—the common area Defendants used at Menard to hold the prisoners whose housing unit was being shaken down that day—and did not intervene to stop his mistreatment. *Id.* at 22-23.

**C.      Plaintiff Ted Knox**

6.      Plaintiff Ted Knox was incarcerated at Menard Correctional Center in April of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-42 (Ted Knox Dep.) at 9. The shakedown of Mr. Knox's housing unit occurred on April 14, 2014. *Id.* at 31.

7.      Mr. Knox testified that Defendant Kenneth Hamilton ordered Mr. Knox and his cellmate to perform a reverse strip search, forcing Mr. Knox to manipulate his genitals before putting his hands into his mouth. *Id.* at 36-39. When Mr. Knox protested putting his hands in his mouth after touching his genitals, Defendant K. Hamilton told Mr. Knox that if he did not obey, he would "get dragged out of the cell." *Id.* at 41.

8.      After the strip search, Mr. Knox told Defendant K. Hamilton that he had a medical permit for double handcuffs and presented his permit to Defendant K. Hamilton. *Id.* at 40, 46. But Defendant K. Hamilton refused to honor the permit, instead telling Mr. Knox that he

"didn't want to hear that shit." *Id.* at 46-47. When Mr. Knox asked to see a supervisor, Defendant K. Hamilton rejected his request, telling Mr. Knox that if he "didn't hurry up and cuff up, he's going to take [Mr. Knox] to segregation." *Id.* at 47. Defendant K. Hamilton then restrained Mr. Knox in a single pair of handcuffs that were unnecessarily tight, contrary to his medical permit. *Id.* at 46, 50.

9.    After Mr. Knox exited his cell, Defendant K. Hamilton struck him on multiple occasions with his wooden baton on Mr. Knox's back and the back of his head. *Id.* at 52. Along the way, Defendant K. Hamilton ordered Mr. Knox to "keep [his] fucking head down." *Id.* at 53.

10.    As Mr. Knox was walking down the stair from his cell, Defendant K. Hamilton again hit Mr. Knox with his baton, causing him to fall down approximately one flight of stairs. *Id.* at 55-58. Defendant K. Hamilton then yanked Mr. Knox upwards by his handcuffs and his arms. *Id.* at 59.

11.    Once Mr. Knox came out of his housing unit, another tact team officer grabbed Mr. Knox's double-cuff permit out of his shirt pocket and threw it on the ground. *Id.* at 62-63. Mr. Knox was then ordered to line up "nuts to butts." *Id.* at 63. All of these interactions occurred in Defendant K. Hamilton's presence. *Id.* at 62-63.

12.    Mr. Knox also testified that Defendant Richard Harrington was present in the chapel while Mr. Knox was being beaten by Defendant Carson Winters and others. *Id.* at 74-75. Mr. Knox called out to Defendant Harrington by name, but he did not respond (or intervene) and instead simply continued to look on. *Id.* at 74-76, 92.

### D.    Plaintiff Demetrius Ross

13.    Plaintiff Demetrius Ross was incarcerated at Illinois River Correctional Center in April of 2014 when Defendants conducted the facility-wide shakedown at the prison. ECF

481-31 (Demetrius Ross) at 9. The shakedown of Mr. Ross's housing unit occurred on April 25, 2014. *Id.* at 149.

14.    After Defendants had moved Mr. Ross and the other men in his housing unit from their unit to the gymnasium—the common area Defendants used at Illinois River to hold the prisoners whose housing unit was being shaken down that day—Defendant Steve Albrecht ordered Mr. Ross and others to remain standing and facing the wall, and not to look around or talk. *Id.* at 102-104. Mr. Ross heard other men in the gym ask Defendant Albrecht to use the bathroom and heard at least one man ask Defendant Albrecht for medical attention. *Id.* at 104-105. Defendant Albrecht's response was simply, "shut the fuck up." *Id.*

15.    Approximately 30 minutes after arriving to the gym, as Mr. Ross and the other men were standing facing the wall, Defendant Albrecht told them that this was "punishment for all your sins." *Id.* at 109.

16.    Although Mr. Ross did not recognize Defendant Albrecht by name, Mr. Ross testified that his cellmate, Mr. Osborne, told him that the man was Defendant Albright. *Id.* at 127. And the IDOC's own records confirm that Defendant Albrecht did, in fact, participate in the shakedown at Illinois River on April 25, 2014. ECF 481-76 (Tact Activation Roster for Illinois River) at Bates 007475.

###    E.    Plaintiff Gloria Luckett (as Special Representative for Ramon Clark)

17.    Ramon Clark was incarcerated at Illinois River Correctional Center in April of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-36 (Ramon Clark Dep.) at 28-29. The shakedown of Mr. Clark's housing unit occurred on April 22, 2014. Ex. 2 (Ramon Clark's Verified 2d Am. Compl.) at 9.

18.    Ramon Clark testified that Defendants Sarah Arnett and Ashley Thompson were present outside his cell during his strip search, ordered Mr. Clark and others to line up "nuts to butts[,]" and never intervened to stop his mistreatment. ECF 481-36 at 59-60, 88-90, 175.

19.    Mr. Clark further testified that Defendants Mike Stufflebeam and Andrew Bottrell were present in the gymnasium—the common area Defendants used at Illinois River to hold the prisoners whose housing unit was being shaken down that day—and either participated in or heard tact team members order Mr. Clark and others to stand in stress positions, with their heads against the wall, and not to ask to use the bathroom, for water, or to sit down. *Id.* at 108-117. Despite this, neither Defendant Stufflebeam nor Defendant Bottrell intervened to stop Mr. Clark's mistreatment. *Id.*

**F.    Plaintiff Kevin Hamilton**

20.    Plaintiff Kevin Hamilton was incarcerated at Big Muddy River Correctional Center in May of 2014 when Defendants conducted the facility-wide shakedown at the prison. ECF 481-32 (Kevin Hamilton Dep.) at 9. The shakedown of Mr. Hamilton's housing unit occurred on May 13, 2014. *Id.* at 37.

21.    Defendant Jason Furlow conducted the search of Mr. Hamilton's cell on May 13, 2014. Ex. 3 (Kevin Hamilton Shakedown Slip). Although Defendant Furlow documented that neither Mr. Hamilton nor his cellmate had any contraband in the cell, Defendant Furlow took and/or destroyed several items of Mr. Hamilton's property, including his commissary. Ex. 3; ECF 481-32 at 33, 84-85.

**G.    Plaintiff Zachary Watts**

22.    Plaintiff Zachary Watts was incarcerated at Big Muddy River Correctional Center in May of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF

481-35 (Zachary Watts Dep.) at 13-14. The shakedown of Mr. Watts's housing unit occurred on May 13, 2014. *Id.* at 33-34.

23.    Zachary Watts testified that he encountered Defendants Shane Smith and Nick Nalley in tactical team gear as he was being transported from his cell to holding at Big Muddy, enforcing the "nuts to butts" movement pattern, failing to intervene to stop Mr. Watts's mistreatment, and instead ordering Mr. Watts to "put [his] fucking head down!" (along with other aggressive remarks). *Id.* at 25-29.

24.    Defendants Shane Smith and Nick Nalley both signed a "tactical training roster" on May 13, 2014, which Defendants have acknowledged reflected the tact team members from Big Muddy River Correctional Center that participated in the shakedown at the prison on May 13. Ex. 4 (Tactical Sign-In Sheets at Big Muddy River for May 12-16, 2014) at Bates 007185; Ex. 5 (Defs.' Supp. Resp. to Pl.'s 2d Req. for Prod.) at 11-12; *see also* Ex. 6 (May 9, 2014 Email from D. Hermetz) at Bates 032172 (listing Defendants Nalley and Smith as participating in the shakedown at Big Muddy River on May 13, 2014).

25.    Mr. Watts also testified that Defendant Ayla Heinzmann was part of the tactical team that shook down his cell block, was present for his strip search, and failed to intervene to stop his mistreatment. ECF 481-35 at 38-39; *see also* Ex. 6 at Bates 032172.

**H.    Plaintiff Samuel Fisher**

26.    Plaintiff Samuel Fisher was incarcerated at Big Muddy River Correctional Center in May of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-39 (Samuel Fisher Dep.) at 11. The shakedown of Mr. Fisher's housing unit occurred on May 13, 2014. *Id.* at 33.

27.    Defendant Christopher Sherrod conducted the search of Mr. Fisher's cell on May 13, 2014. Ex. 7 (Samuel Fisher Shakedown Slip); *see also* Ex. 8 (Defs.' Notice of Compliance) at 1-2 (noting that Defendant Sherrod confirmed his signature on Mr. Fisher's shakedown slip). Although Defendant Sherrod documented that neither Mr. Fisher nor his cellmate had any contraband in the cell, Defendant Sherrod took and/or destroyed several items of Mr. Fisher's property, including his commissary. Ex. 7; ECF 481-39 at 48-49.

### I.    Plaintiff Glen Verser

28.    Plaintiff Glen Verser was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-33 (Glenn Verser Dep.) at 10. The shakedown of Mr. Verser's housing unit occurred on July 10, 2014. *Id.* at 67.

29.    Mr. Verser testified that Defendant Dale Martin ordered Mr. Verser to perform a reverse strip search, forcing Mr. Knox to manipulate his genitals before putting his hands into his mouth. *Id.* at 74-76, 80-81, 97, 104; Ex. 9 (Glen Verser Shakedown Slip). As Defendant Martin was restraining Mr. Verser, Mr. Verser informed Defendant Martin that he had a medical permit to have his hands restrained in front of his body, and in response, Defendant Martin punched Mr. Verser and restrained him behind his back with handcuffs that were unnecessarily tight, contrary to his medical permit. ECF 481-33 at 80-82, 105.

30.    Once in the dining area—the common area Defendants used at Lawrence to hold the prisoners whose housing unit was being shaken down that day—Mr. Verser again informed an officer that he had a medical permit to be cuffed in front. *Id.* at 104-105. Defendant Timothy Conrad either punched Mr. Verser in the stomach and kneed him in the groin, or else watched while another officer did so. *Id.* at 104-106, 110. Defendant Jerry Tanner also assaulted Mr.

Verser. *Id.* at 109-110. Mr. Verser testified that Defendants Eric Weber, Gary Perkins, Akeem Hamilton, and Kyle Brooks were present in the dietary during the beating. *Id.* at 108, 163, 166-167. None intervened or tried to prevent Mr. Verser's beating.

31.　　Mr. Verser testified that he informed Defendant Brad Stuck and Defendant Russell Goins that his front-cuff permit was not honored and that he needed to see a doctor. *Id.* at 131-132. Both Defendants "brushed [him] off." *Id.* at 132.

32.　　Defendant Martin conducted the search of Mr. Verser's cell on July 10, 2014. Ex. 9. Although Defendant Martin documented that neither Mr. Verser nor his cellmate had any contraband in the cell, Defendant Martin took and/or destroyed items of Mr. Verser's property, including his commissary. Ex. 9; ECF 481-33 at 121-123.

**J.　　Plaintiff Acacia Brooks (as Special Representative for Brandon Brooks)**

33.　　Brandon Brooks was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. Ex. 10 (Brandon Brooks's Verified Compl.) at 6; Ex. 11 (Brandon Brooks Shakedown Slip). The shakedown of Mr. Brooks's housing unit occurred on July 7, 2014. Ex. 11.

34.　　As Mr. Brooks and the other men from his housing unit were being moved back to their cells from the dining area, Defendant Edwin Gladney violently slammed Mr. Brooks's head into the shoulder of the prisoner ahead of him in line and yelled at him, "I don't give a fuck, put yo[ur] damn head on his back!" Ex. 10 (Brandon Brooks's Verified Compl.) at 6; Ex. 12 (Marques Boyd Decl.) at 2.

35.　　Mr. Brooks expressed a laugh and another tact team member told Defendant Gladney, "Ed, he's laughing at you" and "He thinks [you're] funny." Ex. 10 at 6-7; *see also* Ex.

12 at 2. Defendant Gladney told Mr. Brooks, "[oh,] you think I'm funny bitch" and "do something bitch!" Ex. 10 at 7; *see also* Ex. 12 at 2.

36.      Either Defendant Gladney or the other tact team member forcefully pinched Mr. Brooks on one side, while the other one (either Defendant Gladney or the unidentified tact team member) violently poked Mr. Brooks in the side with his large baton. Ex. 10 at 7; Ex. 12 at 2.

37.      Either Defendant Gladney or the other tact team member then pushed Mr. Brooks twice, causing him to fall and hit his head while he was still handcuffed (and thus had no ability to use his hands to break his fall). Ex. 10 at 7; Ex. 12 at 2. Mr. Brooks then urinated on himself. Ex. 10 at 7.

38.      Although Mr. Brooks and Mr. Boyd could only identify Defendant Gladney by his first name, "Ed," IDOC's records show that the only person with the first name "Ed" is Defendant Edwin Gladney. *See, e.g.,* Ex. 13 (July 14, 2014 Email from J. Witthoft) at Bates 031992 (identifying Defendant Gladney as a tact team member from Menard who participated in the shakedowns at Lawrence on July 7, 2014); *see also* ECF 217 at 13-14 (admitting that, but for some specifically named officers, the tact team members identified in paragraph 16 participated in the 2014 shakedowns at Lawrence, of which Defendant Gladney is the only "Ed").

**K.      Plaintiff Yolanda Sulton (as Special Representative for Charles Sultan)**

39.      Charles Sultan was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-47 (Charles Sultan Dep.) at 38. The shakedown of Mr. Sultan's housing unit occurred on July 7, 2014. *Id.* at 53.

40.      Charles Sultan testified that shortly after he was strip searched in reverse fashion and handcuffed in or near his cell, Defendant Akeem Hamilton struck him in the back of the

neck when Mr. Sultan asked another tactical team member to loosen his handcuffs. *Id.* at 63-64, 68-70, 73-74. Mr. Sultan further testified that Defendant A. Hamilton told Mr. Sultan, "keep [your] head down" and that Mr. Sultan was not as smart as "they told [Defendant A. Hamilton he] was." *Id.* at 73.

41.     As Mr. Sultan and the other men from his housing unit were being moved and assembled outside of their unit, he raised his head off the back of the prisoner ahead of him in line, at which point Defendant A. Hamilton forcefully struck him again, this time using his baton to strike Mr. Sultan on the left side of his abdomen. *Id.* at 74-76, 78-79.

42.     When Mr. Sultan and the other men arrived at the dining area, Defendant A. Hamilton ordered Mr. Sultan and the other men not to ask for water or medical treatment "because you will get no medical treatment." *Id.* at 86-87. Defendant A. Hamilton told Mr. Sultan and others, "this is the price that you pay for your sins" and that the men should "take [their] punishment" and "not to ask for [anything] or else [they] would be dragged off to segregation." *Id*.

43.     Defendant Edwin Gladney conducted the search of Mr. Sultan's cell on July 7, 2014. Ex. 14 (Charles Sultan Shakedown Slip). Although Defendant Gladney documented that neither Mr. Sultan nor his cellmate had any contraband in the cell, Defendant Gladney took and/or destroyed several items of Mr. Sultan's property, including his razor, hot pot, and beard trimmer. *Id.*; ECF 481-47 at 113-114.

**L.    Plaintiff Clark Truly**

44.     Plaintiff Clark Truly was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-5

(Lawrence List of Prisoners) at Bates 009259. The shakedown of Mr. Truly's housing unit occurred on July 9, 2014. ECF 481-37 (Clark Truly Dep.) at 40.

45.     Defendant Jeremy Alwerdt conducted the search of Mr. Truly's cell on July 9, 2014. Ex. 15 (Clark Truly Shakedown Slip). Although Defendant Alwerdt documented that only a single long-handled toothbrush was taken from Mr. Truly's cell (with no disciplinary report written), Defendant Alwerdt took and/or destroyed multiple items of Mr. Truly's property, including his pens and envelopes. *Id.*; ECF 481-37 at 95-97. Defendant Alwerdt also trashed Mr. Truly's cell, leaving his and his cellmate's property in a big, co-mingled pile. *Id.*

**M.    Plaintiff Samuel Harding**

46.     Plaintiff Samuel Harding was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-40 (Samuel Harding Dep.) at 9. The shakedown of Mr. Harding's housing unit occurred on July 7, 2014. *Id.* at 73.

47.     Mr. Harding testified that Defendant James Gray was one of the tact team officers who conducted the strip search of Mr. Harding and his cellmate. *Id.* at 89-91. Defendant Gray ordered Mr. Harding and his cellmate to perform a reverse strip search, forcing Mr. Harding to manipulate his genitals before putting his hands into his mouth. *Id.* at 93-95. Defendant Gray also used his baton to make contact with Mr. Harding's buttocks and inserted his finger into Mr. Harding's anus. *Id.* at 95-102.

48.     After Defendant Gray removed Mr. Harding from his cell, Defendant Gray struck Mr. Harding in the back of his neck and rammed his head into his neck, yelling at him to "keep [his] fucking head down[.]" *Id.* at 118-119.

49.     After Mr. Harding was handcuffed and placed in line with other men from his housing unit, another officer in Defendant Gray's presence then rammed his baton into Mr. Harding's side so hard that he fell out of the line. *Id.* at 157-158.

50.     Defendant Gray also conducted the search of Mr. Harding's cell. Ex. 16 (Samuel Harding Shakedown Slip). Although Defendant Gray documented only that two long-handled toothbrushes were taken from Mr. Harding's cell (with no disciplinary report written), Defendant Gray took and/or destroyed multiple items of Mr. Harding's property, including some of his commissary and legal documents. *Id.*; ECF 481-40 at 181.

51.     Mr. Harding also testified that he saw Defendant James Berry (who worked at Lawrence) present and participating in the shakedowns inside of his housing unit and outside where Defendants were ordering Mr. Harding and the other men from his housing unit to march "nuts to butts" from the housing unit to the dining area. *Id.* at 71, 149-150, 212; *see also* ECF 481-77 (Lawrence Tactical Training Roster) at Bates 007554 (reflecting that Defendant Berry participated in the shakedown at Lawrence on July 7, 2014).

52.     Mr. Harding also recognized an officer from Lawrence he knew as "Sharron" or "Sharon" who Mr. Harding knew to be on the tact team. *Id.* at 150-154. This officer was present in the dining area where Mr. Harding and the other men were being held while their cells were being searched, and where Mr. Harding was hit in the back of his neck by another member of the tact team. *Id.* at 150-154.

53.     Although IDOC's records do not reflect any officer with a last name of Sharon who was present for the shakedowns at Lawrence on July 7, 2014, the Lawrence tact team sign-in sheet for that day does reflect that Defendant Samuel Shehorn participated in the

shakedown that day and a reasonable jury could thus conclude that Mr. Harding saw Defendant Shehorn in the dining area. ECF 481-77 at Bates 007554.

54.     Finally, Mr. Harding also saw Defendant Richard Moore in his housing unit, approximately 15 feet away, while Defendant Gray was abusing him. ECF 481-40 at 175-176. Although Mr. Harding asked Defendant R. Moore to talk with him, they did not respond to intervene to stop Mr. Harding's mistreatment. *Id.* at 175-176, 194-195.

**N.     Plaintiff Sergio Cortes**

55.     Plaintiff Sergio Cortes was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-38 (Sergio Cortes Dep.) at 7. The shakedown of Mr. Cortes's housing unit occurred on July 10, 2014. Ex. 17 (Sergio Cortes Shakedown Slip). At the time, Mr. Cortes spoke very limited English. ECF 481-38 at 37.

56.     Defendant Robert Walsh conducted the search of Mr. Cortes's cell. Ex. 17. Although Defendant Walsh documented that neither Mr. Cortes nor Douglas Taylor (his cellmate) had any contraband in the cell, Defendant Walsh destroyed several items of Mr. Cortes's and Mr. Taylor's property, including their deodorant. Ex. 18 (Douglas Taylor Decl.) at 4.

**O.     Plaintiff James Dunmore**

57.     Plaintiff James Dunmore was incarcerated at Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at that prison. ECF 481-34 (James Dunmore Dep.) at 10. The shakedown of Mr. Dunmore's housing unit occurred on July 7, 2014. *Id.* at 58.

58.     Defendant Jerry Tanner conducted the search of Mr. Dunmore's cell on July 7, 2014. Ex. 19 (James Dunmore Shakedown Slip); *see also* ECF 481-77 at Bates 007554

(reflecting that Defendant Tanner participated in the July 7, 2014 shakedown at Lawrence). Although Defendant Tanner documented that neither Mr. Dunmore nor his cellmate had any contraband in the cell, Defendant Tanner took and/or destroyed several items of Mr. Dunmore's property, including photographs of Mr. Dunmore's family, supplies for his typewriter, commissary materials, and court documents. Ex. 19; ECF 481-34 at 110-111.

### P.     Plaintiff Vincent Smith

59.     Plaintiff Vincent Smith was incarcerated Lawrence Correctional Center in July of 2014 when Defendants conducted the facility-wide shakedown at the prison. ECF 481-5 (Lawrence List of Prisoners) at Bates 009238. The shakedown of Mr. Smith's housing unit occurred on July 7, 2014. Ex. 20 (Vincent Smith Shakedown Slip).

60.     Defendant David Moore conducted the search of Mr. Smith's cell on July 7, 2014. *Id*. Although Defendant D. Moore documented that neither Mr. Smith nor his cellmate had any contraband in the cell, Defendant D. Moore took and/or destroyed his television, legal papers, grievances, hot pot, food items, and other property. ECF 481-46 (Vincent Smith Dep.) at 68-69. Defendant D. Moore further ripped open Mr. Smith's unopened packages of clothing and poured chili and other food in Mr. Smith's shoes and on his bed. *Id.* at 71-73.

### LEGAL STANDARD

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). "A party asserting that a fact...is genuinely disputed must support the assertion by...citing to particular materials in the record, including depositions, documents...or other materials". Fed. R. Civ. P. 56(c)(1)(A). "Credibility determinations, the weighing of evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a...motion for summary judgment...The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *see also Ingram v. Campbell*, 2020 WL 4219957, at *3 (S.D. Ill. Jul. 23, 2020) (in a "'he said, she said' case [that] boils down to a credibility determination", the case "must be decided by a jury").

## ARGUMENT

**I.    Plaintiffs Present a Genuine Issue of Material Fact Against the    28 Non-Supervisory Defendants on Counts I and III**

This Court already addressed and rejected Defendants' arguments that no reasonable jury could conclude that the 2014 shakedowns violated the rights of class members, and that a reasonable jury could find that Defendants who participated in those shakedowns or failed to intervene to stop the abuse liable pursuant to 42 U.S.C. § 1983. See, e.g., Dkt. 716 at 20-22. Accordingly, there can be no doubt that, if there is evidence that one or more non-supervisory Defendants participated in the abuse directed at Plaintiffs and/or witnessed it but failed to intervene, the Court's prior summary judgment ruling would undoubtedly apply to them in equal force. Indeed, Defendants concede this by acknowledging that as to nine non-supervisory Defendants, summary judgment is not appropriate.

But contrary to Defendants' assertions, it is not true that "only nine of [the non-supervisory] defendants were ever named by any named or consolidated plaintiff as having personally engaged in any specific conduct that plaintiffs assert is unconstitutional." ECF 642 at 47. Rather, as clearly provided above, the evidence shows that 28 additional non-supervisory Defendants were personally present for or participants in the abuse inflicted on the class representatives and consolidated case plaintiffs.

In a motion for summary judgment, "the movant's initial burden may be discharged by showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case. Upon such a showing, the nonmovant must then make a showing sufficient to establish the existence of an element essential to that party's case." *Modrwoski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (internal quotations and citations omitted). Plaintiffs have done that here through sworn testimony, Defendants' own written statements, and other IDOC documents reflecting the non-supervisory Defendants' interactions with Plaintiffs. Summary judgment is thus inappropriate as to the following non-supervisory Defendants (in addition to the nine who did not move for summary judgment):

| | |
|---|---|
| – Richard Harrington | – Eric Weber |
| – Eric Wenzel | – Gary Perkins |
| – Kenneth Hamilton | – Akeem Hamilton |
| – Steve Albrecht | – Kyle Brooks |
| – Sarah Arnett | – Russell Goins |
| – Ashley Thompson | – Dale Martin |
| – Michael Stufflebeam | – Brad Stuck |
| – Andrew Bottrell | – Edwin Gladney |
| – Shane Smith | – Jeremy Alwerdt |
| – Nick Nalley | – James Berry |
| – Ayla Heinzmann | – Samuel Shehorn |
| – Christopher Sherrod | – Richard Moore |
| – Timothy Conrad | – Robert Walsh |
| – Jerry Tanner | – David Moore |

## II. Whether A Defendant "Personally" Acted Against an Individual Plaintiff Is Not Relevant in a Claim of Conspiracy

Defendants rely heavily on *Stockton v. Milwaukee County*, 44 F.4th 605 (7th Cir. 2022), to argue that any Defendant that did not "personally" do something to an individual Plaintiff is entitled to summary judgment, even as they admit that each of the 432 non-supervisory Defendants "participated in the 2014 facility-wide searches at one or more of the four facilities at issue here." ECF 642 at 48. But Defendants grossly mischaracterize *Stockton* and, in doing so, threaten to render the very idea of conspiracy liability under 42 U.S.C. § 1983 a dead letter.

In *Stockton*, a detainee in the county jail died after facility staff failed to diagnose a serious heart infection. *Stockton*, 44 F.4th at 610-12. His estate brought an action against the administrators of the jail for his death on a theory of supervisory liability, but the court rejected this claim on the grounds that the estate had not developed evidence that the administrators' conduct directly contributed to the lack of medical care. "[S]upervisory liability cannot attach under § 1983 absent a showing the officer is personally responsible for the deprivation of a constitutional right. To maintain an action for supervisory liability…[plaintiff] cannot rely on a theory of respondeat superior but, instead, must present evidence that defendants violated the Constitution through their own conduct." *Id*. at 619. *Stockton* does not, then, stand for the proposition that participants in a conspiracy are excused from liability unless they personally acted against an individual plaintiff. Rather, it ensures that supervisors are liable under § 1983 for their own conduct only and not the conduct of their subordinates. *Stockton* was not a conspiracy case. If Defendants' reading of *Stockton* were credited, conspiracy liability under § 1983 for any planner or coordinator of systemic civil rights violations could never attach unless each such planner or coordinator "personally" abused a specific, named plaintiff. This is not what the *Stockton* Court held.

Far from requiring "personal" violation of a plaintiff's rights, the well-established elements of a conspiracy claim under § 1983 are (1) an agreement to deprive the plaintiff of their rights and (2) the taking of an act in furtherance of that deprivation. *See Scherer*, 840 F.2d at 442. Here, Defendants admit that all 432 non-supervisors "participated in the 2014 facility-wide searches at one or more of the four facilities at issue here." ECF 642 at 48. Their participation in the plan—i.e. the agreement—to perform reverse strip searches, palms-out-behind-the-back cuffing, "nuts to butts" marches across these facilities, and ransacking of cells—is the agreement

to violate Plaintiffs' Eighth Amendment rights contemplated by Count II and upheld by this Court. *See* ECF 716 at 21-22. And Defendants admit that each of the 432 non-supervisors took acts in furtherance when they admit that all "participated". ECF 642 at 48.[2] This record precludes granting Defendant summary judgment here.

## CONCLUSION

For the reasons set forth in this memorandum, Plaintiffs respectfully request that this Court deny Defendants' motion for summary judgment.


Dated: March 10, 2025                          Respectfully submitted,

                                               /s/ Lewis Kaminski
                                               Lewis Kaminski
                                               Attorney for Plaintiffs

Sarah Grady
Terah Tollner
KAPLAN & GRADY LLC
2071 N. Southport Ave., Suite 205
Chicago, IL 60614
(312) 852-2184
sarah@kaplangrady.com

Lewis Kaminski
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900

Nicole Schult
Shireen Jalali-Yazdi
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan
Chicago, IL 60640
(773) 769-1411

---

[2] We note in closing that, should Plaintiffs prevail on their claims against the supervisors at trial, their damages would be fully addressed by a favorable judgment, and so this Court may not need to reach questions of liability for each non-supervisor.