# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEMETRIUS ROSS, et al., on behalf of themselves and all others similarly situated,

     Plaintiffs,

vs.

GREG GOSSETT, et al.,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 15-cv-309-SMY

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiffs Demetrius Ross, Kevin L. Hamilton, Ronald Smith, Jonathan Tolliver, and Glenn Verser, current and former inmates of the Illinois Department of Corrections ("IDOC"), brought this class action on behalf of themselves and all others similarly situated for violations of their constitutional rights as alleged in the Second Amended Complaint. Plaintiffs' claims concerned the constitutionality of facility-wide shakedowns that occurred at Illinois River, Big Muddy River, Lawrence, and Menard correctional centers during the period April 2014 through July 2014. The Court certified a class of approximately 10,000 prisoners housed at the four prisons on three claims against 22 supervisory Defendants.[1]

The case proceeded to a jury trial commencing on March 31, 2025. Following 2-weeks of

---

[1] The supervisory defendants are Salvador Godinez (Director); Joseph Yurkovich (Chief of Operations); Michael Atchison (Deputy Chief of Operations); David White (Statewide Tact Commander); Anthony McAllister (Southern Regional Tact Commander); Jerry Witthoft (Menard Tact Commander); Frank Eovaldi (Menard Assistant Tact Commander); Robert Arnett (Illinois River Tact Commander); Brian Piper (Illinois River Assistant Tact Commander); David Hermetz (Big Muddy Tact Commander); Chris White (Big Muddy Assistant Tact Commander); Ken Finney (Big Muddy Assistant Tact Commander); Michael Gilreath (Lawrence Tact Commander); Timothy McAllister (Lawrence Assistant Tact Commander); Kim Butler (Menard Warden); Alex Jones (Menard Assistant Warden); Greg Gossett (Illinois River Warden); Stephanie Dorethy (Illinois River Assistant Warden); Zachary Roeckeman (Big Muddy Warden); Robert Craig (Big Muddy Assistant Warden); Stephen Duncan (Lawrence Warden); and Richard Moore (Lawrence Assistant Warden).

evidence, the jury returned a verdict in favor of all Defendants.  Plaintiffs now move for a new trial against Defendants White and McAllister under Federal Rule of Procedure 59, asserting the jury's verdict was against the manifest weight of the evidence (Doc. 827).  Defendants oppose the motion (Doc. 835).  For the following reasons, the motion is **DENIED**.

### Discussion

Under Rule 59(a), a court "may, on motion, grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "When considering whether the verdict was against the manifest weight of the evidence, 'the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial.' "  *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (quoting *Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011)).  The court is bound by the same evidence the jury considered in ruling on the motion for new trial and cannot grant a new trial just because it believes the jury got it wrong.  *Whitehead*, 680 F.3d at 928.  A verdict will be set aside as contrary to the manifest weight of the evidence only if "no rational jury" could have rendered the verdict.  *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (quoting *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)).

Plaintiffs argue the overwhelming evidence was in Plaintiffs' favor and showed the shakedowns were conducted for the purpose of abusing and humiliating class members and not in furtherance of any legitimate penological goal.  To succeed on their direct supervisory liability claims, Plaintiffs were required to prove by a preponderance of the evidence that: (1) Plaintiffs were subjected to shakedowns that were executed in an abusive and humiliating manner that did not further any legitimate penological purpose; (2) White and McAllister knew that the Plaintiffs

were subjected to such abusive and humiliating shakedowns; (3) White and McAllister approved of, assisted with, condoned, or purposely ignored such misconduct; and, (4) Plaintiffs were harmed as a result (Doc. 818, at p. 23).

Plaintiffs contend that White and McAllister made numerous admissions during trial including: (1) prohibiting Plaintiffs from wearing underwear during the shakedowns; (2) forcing Plaintiffs to line up touching one another; (3) entering the housing units in an aggressive manner that was intended to intimidate Plaintiffs; and (4) restraining Plaintiffs' handcuffs for prolonged periods of time.  According to Plaintiffs, both White and McAllister's testimony was impeached at various points during trial, casting serious doubts on their credibility.  Plaintiffs also contend that the photographs of class members' line movements along with the testimony of various witnesses established that they were forced to walk so close to each other that they were made to touch.  As for the use of restraints, Plaintiffs maintain that there were no penological justifications for requiring class members to be cuffed for hours at a time.  Plaintiffs argue no reasonable jury could conclude that the shakedowns were conducted for legitimate penological reasons considering these aspects of the shakedowns as a whole.

Plaintiffs' arguments ignore countervailing evidence in the record and assume the jury was required to find that a lack of underwear, close touching in line formation, and entering cells loudly were abusive and humiliating tactics that constituted cruel and unusual punishment in violation of the Eighth Amendment.  However, the jury was free to find against Plaintiffs on element one of the Court's Burden Instruction based on a rejection of Plaintiffs' theory.

White and McAllister (and other named Defendants) defended their actions and denied Plaintiffs' accusations that the purpose of the shakedowns was to harass and humiliate Plaintiffs. Both White and McAllister testified that the line formations served penological interests – mainly

that class members were lined to move in a tight formation to allow tactical team members to form a box around the persons in custody and to prevent them from looking around.  Regarding the loud entrances to cell wings, McAllister testified that he believed the element of surprise was important because the tactical team was attempting to catch inmates in possession of contraband before they could throw it out on the gallery.  Although Plaintiffs testified that tactical members taunted and chanted as they entered the cell wings, White and McAllister denied instructing the tactical team to chant or taunt inmates.  It was within the jury's province to determine which witnesses to believe.  Similarly, there was conflicting testimony regarding how class members were restrained.  Defendants' testimony was consistent that palms out and thumbs up was the standard way of cuffing in IDOC.

The defense also presented evidence showing inconsistencies with class members' testimony regarding the shakedowns, including class members' written grievances, deposition testimony, and the testimony of individual tact team officers at the scene during the shakedowns.  That the jury credited Defendants' testimony rather than Plaintiffs' was not unreasonable.  Whether this Court would have made the same findings is immaterial, as a court "cannot grant a new trial just because it believes the jury got it wrong" especially where a verdict turns on the credibility of witnesses.  *Whitehead,* 680 F.3d at 928.

Plaintiffs next argue the manifest weight of the evidence supported their failure to intervene and conspiracy claims against White and McAllister.  Both the failure to intervene and conspiracy claims required Plaintiffs to prove they were subjected to shakedowns that were executed in an abusive and humiliating manner that did not further any legitimate penological purpose (Doc. 818, pp. 24-25).  Because the evidence supported the jury's determination that there was no underlying

constitutional violation, the jury's verdict on the failure to intervene and conspiracy claims were not contrary to the manifest weight of the evidence.

### Conclusion

After weighing all the evidence presented at trial, the Court does not find no rational jury could have rendered the verdict.  Because the verdict was not against the manifest weight of the evidence, Plaintiffs' Motion for a New Trial (Doc. 827) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 10, 2026**

**STACI M. YANDLE**
**Chief United States District Judge**